**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| OMNI HEALTHCARE INC.; INTERVENTIONAL SPINE INSTITUTE OF FLORIDA; CRAIG DELIGDISH, MD; C. HAMILTON BOONE, PA; BRIAN DOWDELL, MD; RICHARD GAYLES, MD; STAN GOLOVAC, MD; LANCE GRENEVICKI, MD; ALEKSANDER KOMAR, MD; SCOTT SEMINER, MD; INSTITUTE OF FACIAL SURGERY INC.; THE PAIN INSTITUTE INC. d/b/a/ FLORIDA PAIN; and PHYSICIAN ASSISTANT SERVICES OF FLORIDA, L.L.C., | CASE NO. 6:13-CV-01509-RBD-DAB |
| *Plaintiffs*, | |
| vs. | |
| HEALTH FIRST, INC.; HOLMES REGIONAL MEDICAL CENTER, INC.; HEALTH FIRST PHYSICIANS INC.; HEALTH FIRST HEALTH PLANS, INC.; MICHAEL D. MEANS, and JERRY SENNE, | |
| *Defendants*. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT
MOTION TO DISMISS THIRD AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Plaintiffs[1] file this Response in Opposition to Defendants'[2] Joint Motion to Dismiss

Third Amended Complaint or, in the Alternative, For a More Definite Statement [ECF No. 58,

filed June 4, 2014] and respectfully show the Court as follows.

---

[1] "Plaintiffs" are OMNI Healthcare Inc. ("OMNI"), Interventional Spine Institute of Florida, Craig Deligdish, MD, C. Hamilton Boone, PA, Brian Dowdell, MD, Richard Gayles, MD, Stan Golovac, MD, Lance Grenevicki, MD, Aleksander Komar, MD, Scott Seminer, MD, Institute of Facial Surgery Inc., The Pain Institute Inc., and Physician Assistant Services of Florida ("PAS").

[2] "Defendants" are Health First, Inc. ("HF Inc."), Health First Health Plan, Inc. ("HF Health Plans"), Holmes Regional Medical Center Inc. ("Holmes RMC"), Health First Physicians, Inc. ("HF Physicians"), Michael D. Means, and Jerry Senne.

# TABLE OF CONTENTS

I.   Introduction and Background ...........................................................................1

II.   Motion to Dismiss Standard.............................................................................2

III.   Arguments and Authorities ..............................................................................4

    A.   Plaintiffs' Antitrust Claims Are Facially Plausible ..................................4

        1.   Plaintiffs have pleaded sufficient facts to establish that
            Defendants are liable for monopolization and attempted
            monopolization of several healthcare markets..............................4

        2.   Plaintiffs' have alleged a plausible conspiracy...........................7

        3.   Plaintiffs have  pleaded sufficient facts to establish
            that they have antitrust standing ...................................................9

    B.   Plaintiffs' Claims That Defendants Violated
        Florida State Law Are Facially Plausible ..............................................14

        1.   The Complaint sufficiently alleges how Defendants violated FDUTPA...14

        2.   The Complaint sufficiently alleges how Defendants tortiously
            interfered with Plaintiffs' business relationships.......................15

    C.   The Individual Plaintiffs' Injuries Are Distinct and Separate
        From the Injuries of Their Medical Practices .........................................16

    D.   The Court Should Exercise Supplemental Jurisdiction Over
        Mr. Boone's and PAS's State Law Claims............................................17

    E.   Mr. Senne and Mr. Means Are Not Immune From Antitrust Liability.................18

    F.   Defendants Are Not Entitled to a More Definite Statement .................19

IV.   Conclusion ................... ................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ...................................................................................9

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
  758 F.2d 1486 (11th Cir. 1985) .................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................2, 3

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ...................................................................................................9

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) .................................................................................................12

*Austin v. BlueCross & BlueShield of Ala.*,
  903 F.2d 1385 (11th Cir. 1990) .................................................................................9

*In re Automotive Parts Antitrust Litig.*,
  No. 2:12-cv-101, 2013 WL 2456584 (E.D. Mich. Jun. 6, 2013) ...................3, 8, 19

*Aventis Environmental Science USA LP v. Scotts Co.*,
  383 F. Supp. 2d 488 (S.D.N.Y. 2005) .....................................................................10

*Aventura Cable ZCorp. v. Rifkin/Narragansett S. Fla. CATV LP*,
  941 F. Supp. 1189 (S.D. Fla. 1996) ...........................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................2, 3, 7

*Blair v. Wachovia Mortg. Corp.*,
  No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ..........14

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982) .................................................................................................10

*Bluesky Greenland Env'tl Solutions, LLC v. 21st Century Planet Fund, LLC*,
  Case No. 12-81234-CIV, 2013 WL 6247442 (S.D. Fla. Dec. 4, 2013) ...................16

*Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
  527 F. Supp. 2d 1355 (M.D. Fla. 2007) ...................................................................15

*Brown Shoe v. United States*,
  370 U.S. 294 (1962) ...................................................................................................6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)...................................................................................9

*Buckner v. Lower Florida Keys Hosp. Dist.*,
   403 So. 2d 1025 (Fla. 3d DCA 1981), *review denied*, 412 So. 2d 463 (Fla. 1982)................15

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   767 F. Supp. 2d 880 (N.D. Ill. 2011) ......................................................18

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
   846 F. Supp. 2d 1335 (N.D. Ga. 2012) ......................................................3

*E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.*,
   No. 8:10-CV-1870-T-27AEP, 2011 WL 4343790 ..............................................15

*Erickson v. Pardus*,
   551 U.S. 89 (2007)..................................................................................2

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005)...............................................................................17

*Feldman v. Palmetto Gen. Hosp., Inc.*,
   980 F. Supp. 467 (S.D. Fla. 1997) .........................................................14

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....................................................8

*Florida Seed Co. v. Monsanto Co.*,
   105 F.3d 1372 (11th Cir. 1997) ..........................................................9, 10

*FTC v. Staples, Inc.*,
   970 F. Supp. 1066 (D.D.C. 1997) ............................................................6

*Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*,
   479 F.3d 1310 (11th Cir. 2007) ..............................................................4

*Hairston v Pac.-10 Conference*,
   893 F.Supp. 1485 (W.D. Wash. 1994)......................................................17

*Harper v. Lawrence Cty*,
   592 F.3d 1227 (11th Cir. 2010) ...............................................................3

*HealthAmerica Penn., Inc. v. Susquehanna Health Sys.*,
   143 F. Supp. 2d 496 (M.D. Pa. 2001) ......................................................6

*Hennegin Co. v. Arriola*,
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) ...................................................15

*Hinds Cty. v. Wachovia Bank, N.A.,*
  700 F. Supp. 2d 378 (S.D.N.Y. 2010) ........................................................................8

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.,*
  425 U.S. 738 (1976) ....................................................................................................3

*In re Infant Formula Antitrust Litig.,*
  No. MDL 878, 1992 WL 503465 (N.D. Fla. Jan. 13, 1992) ........................................3

*Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.,*
  262 F.3d 1152 (11th Cir. 2001) ................................................................................15

*Jackam v. Hosp. Corp. of Am. Mideast, Ltd.,*
  800 F.2d 1577 (11th Cir. 1986) ..................................................................................3

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
  626 F.3d 1327 (11th Cir. 2010) ..................................................................................4

*Levine v. Cen Fla Med. Affiliates, Inc.,*
  864 F. Supp. 1175 (M.D. Fla. 1994) ........................................................................14

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.,*
  334 U.S. 219 (1948) ..................................................................................................10

*Monarch Marking Systems, Inc. v. Duncan Parking Meter Maintenance Co., Inc.,*
  No. 82 C 2599, 1986 WL 3625 (N.D. Ill. Mar. 13, 1986) ........................................18

*Murray v. Nat'l Football League,*
  No. Civ A 94-5971, 1996 WL 363911 (E.D. Pa. June 28, 1996) ..............................18

*Newcal Indus. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) ................................................................................4, 6

*In re Nexium (Esomeprazole) Antitrust Litig.,* No. 12-md-02409, 2013 WL 4832176
  (D. Mass. Sept. 11, 2013) ..........................................................................................4

*In re Nissan Motor Corp. Antitrust Litig.,*
  430 F. Supp. 231 (S.D. Fla. 1977) ............................................................................18

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.,*
  311 F. Supp. 2d 1048 (D. Colo. 2004) ......................................................................20

*In re OSB Antitrust Litig.,*
  No. 07-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ..........................................8

*Ostrofe v. H.S. Crocker Co., Inc.,*
  740 F.2d 739 (9th Cir. 1984) ....................................................................................10

*Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*,
   604 F.3d 1291 (11th Cir. 2010) ..................................................13

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
   619 F. Supp. 2d 1260 (M.D. Fla. 2009) ......................................14

*Pintando v. Miami-Dade Housing Agency*,
   501 F.3d 1241 (11th Cir. 2007) ..................................................18

*In re Pool Prods. Distr. Market Antitrust Litig.*,
   940 F. Supp. 2d 367 (E.D. La. 2013) ............................................6

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
   No. CV-08-42, 2013 WL 6481195 (E.D.N.Y. Sept. 20, 2013) .........9, 10

*R.C. Bigelow, Inc. v. Unilever N.V.*,
   867 F.2d 102 (2d Cir. 1989) .......................................................13

*R C Dick Geothermal Corp. v. Thermogenics, Inc.*,
   890 F.2d 139 (9th Cir. 1989) ......................................................10

*Radovich v. NFL*,
   352 U.S. 445 (1957) ..................................................................17

*Safeway Stores, Inc. v. FTC*,
   366 F.2d 795 (9th Cir. 1966) .......................................................9

*Santa Cruz Medical Clinic v. Dominican Santa Cruz Hosp.*,
   No. C 93-20613, 1995 WL 150089 (N.D. Cal. Mar. 28, 1995) ................6

*SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*,
   48 F.3d 39 (1st Cir. 1995) ..........................................................10

*Sidibe v. Sutter Health*,
   No. C 12-04854 LB, 2013 WL 5956315 (N.D. Cal. Nov. 7, 2013) .........5

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.*,
   715 F.2d 1079 (6th Cir. 1983) ....................................................11

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) .......................................8, 19

*Sullivan v. Tagliabue*,
   25 F.3d 43 (1st Cir. 1994) ..........................................................10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1059 (N.D. Cal. 2007) ..........................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................................20

*Third Party Verification, Inc., v. Signaturelink, Inc.*,
   492 F. Supp. 2d 1314 (M.D. Fla. 2007) ...................................................................14

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ...............................................................................4, 5

*Todorov v. DCH Healhcare Auth.*,
   921 F.2d 1438 (11th Cir. 1991) (affirming summary judgment where neurologist did
   not suffer antitrust injury by being denied privilege to perform CT scans at one
   hospital) ..............................................................................................................14

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
   7 F.3d 986 (11th Cir. 1993) .....................................................................................4

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ..............................................................................................17

*United States v. Consolidated Packaging Corp.*,
   575 F.2d 117 (7th Cir. 1978) ...................................................................................8

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) ...............................................................................10, 11

*W.S. Badcock Corp. v. Myers*,
   696 So.2d 776 (Fla.1st DCA 1996) .........................................................................15

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*,
   648 F.3d 452 (6th Cir. 2011) .................................................................................19

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984) .....................................................................................6

*White v. Addante*,
   498 F. Supp. 2d 1109 (N.D. Ill. 2007) ....................................................................17

*Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*,
   No. 96-1336, 1997 WL 225966 (D. Kan. Apr. 8, 1997) ...............................................6

*Wilchombe v. TeeVee Toons, Inc.*,
   555 F.3d 949 (11th Cir. 2009) ...............................................................................16

*Wilcox v. Stout,*
    637 So.2d 335 (Fla. DCA 1994) ............................................................................16

*Williamson Oil Co., Inc. v. Philip Morris USA,*
    346 F.3d 1287 (11th Cir. 2003) .............................................................................8

**STATUTES**

28 U.S.C. § 1367(a) .....................................................................................................17

Fla. Stat. § 501.212(4)..................................................................................................15

**Florida State Law**...................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 10(c) .....................................................................................................1

Rule 8(a) of the Federal Rules of Civil Procedure.......................................................2

## I.    INTRODUCTION AND BACKGROUND

Defendants, having successfully become the dominant players in virtually all healthcare-related markets in Southern Brevard County, have sought to maintain and extend that market power, and excluded all who stood in their way. They have done this in the following ways:

- Requiring physicians to refer their patients to Defendants' hospitals, facilities, and healthcare professionals for services, and offering benefits to physicians who did so. (*See, e.g.*, Complaint[3] ¶¶ 2, 125-29.)

- Punishing physicians who do not refer a sufficient volume of patients by excluding them from their exclusive health insurance networks. (*See, e.g.*, Complaint ¶¶ 2, 134-52.)

- Merging with the largest multi-specialty physician group in the area, Melbourne Internal Medicine Associates (MIMA), and picking off non-compliant members of other practices (including OMNI). (*See, e.g.*, Complaint ¶¶ 260-74.)

Plaintiffs, the targets of this exclusionary conduct, filed this lawsuit to recover for the injuries caused to themselves and their practices by Defendants' unlawful conduct.

In their Motion,[4] Defendants take a narrow view of healthcare markets that is at odds with their interrelated nature, where every discrete service—be it a routine check-up or cancer therapy—can trigger, and exert control over, a host of other related services and interactions.

Consider a pre-diagnosis breast cancer patient: she goes to her primary care physician, who detects a lump and refers her to a radiologist, who performs a breast scan at a radiology center. After the radiologist reviews the breast scan, the patient sees an oncologist, who may perform surgery—at a hospital—and refer the patient to radiation therapy. The patient will also require the services of a pathologist, who will utilize the services of a testing lab. And actively overseeing all of this care is the patient's health insurance carrier.

---

[3] "Complaint" refers to Plaintiffs' Third Amended Complaint, May 22, 2014 [ECF No. 57].

[4] "Motion" refers to Defendants' Joint Motion to Dismiss Third Amended Complaint or, in the Alternative, For a More Definite Statement, June 4, 2014 [ECF No. 58].  The Motion raises similar arguments to those raised in Defendants' prior motions. Plaintiffs incorporate by reference their Consolidated Opposition to Defendants' Motions to Dismiss Second Amended Complaint, Mar. 20, 2014. [ECF No. 46] as if set forth herein.  *See* Fed. R. Civ. P. 10(c).

If the patient lives in Southern Brevard County, every single one of those functions may be performed by Defendants. The patient's primary care physician has significant influence over the identity of all of the other actors involved through his recommendation and referrals. (Compl. ¶ 58.) And as explained in the Complaint, if that physician participates in Defendant HF Health Plans' physician network, Defendants require that all of those referrals go to physicians and entities that Defendants control. (*Id.* ¶¶ 136-41.) The patient will be seen exclusively by physicians and specialists affiliated with HF Physicians, and all ancillary services will be performed at facilities owned by Defendants, regardless of quality or price. (*Id.*)

Defendants' market power and control over hospital services and patient referrals has allowed them to demand exclusivity in referrals from physicians, and to punish physicians, like Plaintiffs, who do not comply. By refusing network participation status to any physician who will not refer patients exclusively to its facilities and physicians, Defendants both reduced the competition that they face in all of the healthcare services markets and have injured each Plaintiff's business. As explained below, Defendants' conduct violates numerous federal antitrust laws and Florida state laws, and their Motion should be denied.

## II.    MOTION TO DISMISS STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Neither specific facts nor detailed factual allegations are required. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need only be plausible—that is, it must contain enough factual content, accepted as true, to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The Court need not find proof of Plaintiffs' claims to be probable; a complaint need only contain enough facts "to nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Harper v. Lawrence Cty*, 592 F.3d 1227, 1233 (11th Cir. 2010). As recently explained in an antitrust case, assessing the sufficiency of a complaint "boils down to consideration as to whether the [complaint] includes allegations that inform [defendants] what wrongdoing they are alleged to have committed and whether the allegations in the [complaint] enable [the defendants] to respond." *See In re Automotive Parts Antitrust Litig*., No. 2:12-cv-101, 2013 WL 2456584, at *5 (E.D. Mich. Jun. 6, 2013).

Thus, the standard on a motion to dismiss is only whether the allegations in the Complaint are sufficient to allow Plaintiffs to conduct discovery in an attempt to prove their allegations. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd*., 800 F.2d 1577, 1579 (11th Cir. 1986). And in complex antitrust litigation, plaintiffs should be given ample opportunity for discovery because proof is largely in defendants' hands. *In re Delta/AirTran Baggage Fee Antitrust Litig*., 846 F. Supp. 2d 1335, 1363 (N.D. Ga. 2012); *see also In re Infant Formula Antitrust Litig*., No. MDL 878, 1992 WL 503465, at *2 (N.D. Fla. Jan. 13, 1992) (holding that "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly" (quoting *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976)).

The Complaint plausibly alleges how Defendants' conduct violated the federal antitrust laws and Florida state law, and puts Defendants on notice of the wrongdoing they are alleged to have committed. Nothing more is required at the pleading stage.

3

### III.   ARGUMENTS AND AUTHORITIES

#### A.   Plaintiffs' Antitrust Claims Are Facially Plausible

##### 1.   Plaintiffs have pleaded sufficient facts to establish that Defendants are liable for monopolization and attempted monopolization of several healthcare markets.

Defendants seek dismissal on the basis that the Complaint inadequately alleges market definition. (Motion at 13-16.)[5] But market definition is a question of fact, *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993), and is typically established through expert testimony based on economic analyses performed on data obtained in discovery. *See, e.g., Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 479 F.3d 1310, 1313 (11th Cir. 2007) (holding that relevant market must be established by expert testimony based on sufficient economic analysis). Market definitions also need not be pled with specificity. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1044-45 (9th Cir. 2008). Therefore, courts generally will not dismiss a case for failure to adequately plead the relevant market prior to discovery. *Id.* at 1045; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market."). Dismissal can be appropriate only if the complaint fails "even to attempt a plausible explanation as to why a market should be limited in a particular way." *See Todd*, 275 F.3d at 200; *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336-39 (11th Cir. 2010). That is not the case here.

---

[5] As an initial matter, Plaintiffs are not required to define a relevant market where, as here, direct evidence of market power is available. (Compl. ¶¶ 44, 302.) *See In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409, 2013 WL 4832176, at *12 n.19 (D. Mass. Sept. 11, 2013) (noting that allegations of relevant market serve merely as proxies for market power where direct evidence is unavailable; "[w]here direct evidence of market power is available, however, a plaintiff need not attempt to define the relevant market") (citing P.E. Areeda & H. Hovenkamp, Antitrust Law ¶ 531f, at 241 (3d ed. 2007)).

The Complaint devotes over fifty paragraphs to defining the relevant markets. (Compl. ¶¶ 44-97.) It discusses both the relevant geographic market (*id*. ¶¶ 84-97) and the relevant product markets (*id*. ¶¶ 46-83), as well as the cross-elasticity of demand with other products and services (*id*. ¶¶ 46, 55, 65, 73, and 80). It also describes in detail how Defendants are leveraging their market power in the inpatient acute care market to gain dominance in related healthcare markets, including the market for physician services and ancillary services. (*Id*. ¶¶ 164-68.) This is sufficient at the motion to dismiss stage. *See, e.g.*, *Todd*, 275 F.3d at 201-05 (reversing dismissal of complaint where defined markets were allegedly over- and under-inclusive because the proffered market definition was "plausible on its face").

Defendants contend that Plaintiffs fail to "allege any facts to support the relevant geographic market for any of the secondary markets." (Motion at 14.) But the Complaint alleges that Southern Brevard County is the relevant geographic market because, as Holmes RMC itself acknowledged, it is a natural market that corresponds to a local trade area as a result of its unique geography, and the specific population dynamics within Brevard County dictate such a market. (*Id*. ¶¶ 96-97.) Defendants' only legal support is a case that alleged the existence of six different geographic markets, but failed to actually identify or describe them. *See Sidibe v. Sutter Health*, No. C 12-04854 LB, 2013 WL 5956315, at *11 (N.D. Cal. Nov. 7, 2013).

Defendants next contend that the product markets alleged in the Complaint are too broad. (Motion at 15-16.) This argument fails for at least two reasons. First, such factual determinations are inappropriate on a motion to dismiss. *See Todd*, 275 F.3d at 201-05 (reversing dismissal of complaint where defined markets were allegedly over- and under-inclusive because the proffered market definition was "plausible on its face"); *Aventura Cable Corp. v. Rifkin/Narragansett S. Fla. CATV LP*, 941 F. Supp. 1189, 1193 (S.D. Fla. 1996) (holding that "reasonable

5

interchangeability of use" is a factual question "best left for a later stage of the proceedings"). Second, and more importantly, other courts have held that complaints alleging similar relevant markets are sufficient at the motion to dismiss stage. *See, e.g., HealthAmerica Penn., Inc. v. Susquehanna Health Sys.*, 143 F. Supp. 2d 496, 500 (M.D. Pa. 2001) (denying motion to dismiss involving alleged tying violation between "hospital services" and "physician services" market); *Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*, No. 96-1336, 1997 WL 225966, at *3 (D. Kan. Apr. 8, 1997) (holding that "hospital services" and "physician services" markets were sufficient since validity of a market is a fact question for jury); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C 93-20613, 1995 WL 150089, at *3 (N.D. Cal. Mar. 28, 1995) (holding that alleged product market for "physicians and physician services" was sufficient for purposes of motion to dismiss).

Defendants incorrectly focus on the product markets from the patient's perspective—arguing that patients do not consider x-rays and blood work to be substitutes—but "consumers do not define the boundaries of the market; the products or producers do." *Newcal Indus.*, 513 F.3d at 1045 (citing *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)). "Where [ ] several goods or services are generally offered by the same providers, it is not unreasonable for a jury to conclude that the market for antitrust purposes includes all of those goods or services." *Weiss v. York Hosp.*, 745 F.2d 786, 826 (3d Cir. 1984) (citations omitted). Thus, although diving boards and pool pumps, and paper clips and desk chairs, may not be substitutes, courts have accepted market definitions of "pool products" and "consumable office supplies." *See In re Pool Prods. Distr. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 380-81 (E.D. La. 2013); *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1073 (D.D.C. 1997). Similarly, ancillary service providers offer blood tests

and x-rays; multispecialty physician groups offer oncological and pediatric services. These products can plausibly be considered part of the same relevant product markets.

For these reasons, Defendants' relevant product and geographic market arguments should be rejected and their Motion should be denied.[6]

### 2.   Plaintiffs' have alleged a plausible conspiracy.

The Complaint alleges a complex, multifaceted scheme to restrain competition in multiple healthcare service markets in Southern Brevard County. (Compl. ¶¶ 124-168.) At the center of the scheme is a series of agreements between Defendants and various physicians in Southern Brevard County, including those at MIMA, to collectively refer their patients exclusively to Health First's hospitals, physician specialists, and ancillary service providers, and to blacklist those physicians that refuse to do the same. (*Id*.)

The plausible existence of these agreements does ***not*** rest only on allegations of parallel conduct and the cessation of referrals to Plaintiffs. Defendants unsuccessfully solicited multiple Plaintiffs to enter these same agreements and join the conspiracy. (*See, e.g.,* Compl. ¶¶ 207, 222-25.) Thus, Plaintiffs do not speculate about the existence of those agreements: they were explicitly made aware of them, and asked to join them, by Defendants.

MIMA's alleged participation in the scheme also does not rest solely on the fact that its physicians do not refer patients to Plaintiffs. Standing alone, Health First's offer to enter into the same anticompetitive agreements with certain Plaintiffs is sufficient to "nudge [Plaintiffs'] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, as it can be logically inferred that those physicians whose behavior conformed with the agreement proposed to Plaintiffs, in fact, agreed to the same terms proposed to Plaintiffs. Other allegations—

---

[6] In the Motion, Defendants challenge only market definition, not their possession of market power in the inpatient acute care services market and their leveraging that market power to become dominant in related healthcare markets.

including the suspicious timing of when Dr. Dowdell stopped receiving referrals from MIMA physicians (Compl. ¶ 226), MIMA's economically irrational decision to terminate its relationship with Aetna, which, absent a conspiracy, would be against MIMA'a unilateral self-interest (*id*. ¶¶ 130-31), and the fact that MIMA refers less than 1% of all of its patients to Wuesthoff-Melbourne (*id*. ¶ 269)—further support the reasonable inference that MIMA participated in the conspiracy that Plaintiffs themselves rejected. *See e.g., Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1301 (11th Cir. 2003) (discussing "plus factors" used to support an inference that parallel conduct is the result of collusion as opposed to unilateral conduct, and noting that taking actions contrary to a firm's economic self-interest is one such plus factor).

Plaintiffs need not plead their allegations on a defendant-by-defendant basis. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903-04 (N.D. Cal. 2008); *In re OSB Antitrust Litig.*, No. 07-826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007). Nor are Plaintiffs required to provide detailed allegations regarding each Defendant's particular involvement. *Auto Parts*, 2013 WL 2456584, at *7.[7] The Complaint need only plead sufficient allegations to plausibly suggest that each Defendant participated in the scheme in some way. *SRAM*, 580 F. Supp. 2d at 904; *see also OSB*, 2007 WL 2253419, at *5 (requiring a plaintiff to only "allege that each individual defendant joined the conspiracy and played some role in it"). Once a common scheme has been plausibly alleged, very little is required at the pleading stage to connect a particular defendant. *See United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978) ("That same testimony also put [defendant], not deep into the

---

[7] *See also Hinds Cty. v. Wachovia Bank, N.A.*, 700 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (plaintiffs are not required to plead details about each individual defendant's conduct in furtherance of the conspiracy); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1142 n.7 (N.D. Cal. 2009) (denying several defendants' motions to dismiss despite argument that no specific allegations were directed at their particular company)

conspiracy, but at least into its outer crust. Once the conspiracy has been established, slight evidence is needed to connect a particular participant.").[8]

The Complaint alleges a plausible scheme and describes each Defendant's involvement in that scheme. (Compl. ¶¶ 169-195.) As the cases discussed above demonstrate, nothing more is required at this early pleading stage. The Complaint alleges sufficient facts to make the existence of the conspiracy, as well as the participation of MIMA and its physicians, plausible.

### 3. Plaintiffs have pleaded sufficient facts to establish that they have antitrust standing.

The Eleventh Circuit applies a two-pronged test to determine antitrust standing: (1) did the plaintiff suffer "antitrust injury"; and (2) is the plaintiff an "efficient enforcer" of the antitrust laws? *Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). The first prong determines if Plaintiffs' injuries are "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. The second prong determines if Plaintiffs are within the "target area" of the misconduct—*i.e.*, "in the sector of the economy which is the target of the antitrust violation" and "a foreseeable victim of the anti-competitive conduct." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1494 (11th Cir. 1985) (citations omitted); *see also Austin v. BlueCross & BlueShield of Ala.*, 903 F.2d 1385, 1388-89 (11th Cir. 1990).[9]

---

[8] *See also Safeway Stores, Inc. v. FTC*, 366 F.2d 795, 801 (9th Cir. 1966) ("Once the existence of the common scheme is established, very little is required to show that defendant became a party."); *Precision Assocs., Inc. v. Panalpina World Transport, (Holding) Ltd.*, No. CV-08-42, 2013 WL 6481195, at *34 (E.D.N.Y. Sept. 20, 2013) holding that, although plaintiffs "have barely alleged [defendant's] participation in the conspiracy," this was enough at pleading stage since only slight evidence is needed to connect a defendant once a common scheme is established).

[9] In lieu of bright line rules, the Supreme Court has identified six factors, adopted by the Eleventh Circuit, to assist in determining whether a plaintiff's injury is direct enough to be an efficient enforcer. *Amey*, 758 F.2d at 1494-95 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536-45 (1983)). No single factor is decisive, and the Court need not find each factor in Plaintiffs' favor to find antitrust standing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1059, 1065 (N.D. Cal. 2007) (citing *Amarel v. Connell*, 102 F.3d 1494,

Contrary to Defendants' assertion, antitrust standing is not limited to consumers or competitors; in fact, the Supreme Court has explicitly rejected such a bright-line rule:

> The statute does not confine its protections to consumers, or to purchasers, or to competitors, or to sellers. Nor does it immunize the outlawed acts because they are done by any of these. The Act is comprehensive in its terms and coverage, ***protecting all who are made victims of the forbidden practices by whomever they may be perpetrated.***

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948) (emphasis added) (internal citation omitted); *see also Blue Shield of Va. v. McCready*, 457 U.S. 465, 482 (1982); *Precision Assocs.*, 2013 WL 6481195, at *13.[10] Similarly, there is also no bright-line rule against antitrust standing for suppliers. *See, e.g., Aventis Environmental Science USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 498 (S.D.N.Y. 2005).

While consumers and competitors are most often the ones who suffer antitrust injuries, they are not the only ones. *See SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 48 F.3d 39, 45 (1st Cir. 1995). For example, an individual whose injury is "'inextricably intertwined' with the injury the conspirators sought to inflict" on the relevant market or its participants has antitrust standing. *See McCready*, 457 U.S. at 483-84.[11] Thus, individuals "whose injuries are the means by which the defendants seek to achieve their anticompetitive ends" have antitrust standing.  *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010). This is to protect those, like Plaintiffs, who were used as a "fulcrum, conduit or market force to injure competitors

---

1507 (9th Cir. 1996); *R C Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989)). These factors weigh in favor of Plaintiffs' status as an efficient enforcer. (*See* Pls' 1st Opp. to MTD at 20-21.)

[10] *Florida Seed*, on which Defendants rely, is not to the contrary. *See* 105 F.3d at 1374. After describing the target area test, the court stated, in dicta, that "***[b]asically,***" a plaintiff must show it is a consumer or competitor to meet this standard.  In reality, *Florida Seed* applied the same "target area" test described above. 105 F.3d at 1374.

[11] *See also Sullivan v. Tagliabue*, 25 F.3d 43, 50 (1st Cir. 1994) (extending antitrust standing "to parties who can establish that their injury was a 'necessary step' and the 'means' employed by the conspirators to achieve their illegal ends, regardless of the parties' direct market participation"); *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 745-46 (9th Cir. 1984) (antitrust injury established where, although not a consumer or competitor in the relevant market, injury to plaintiff was a necessary means to achieve Defendants' anticompetitive ends).

or participants in the relevant product and geographical markets." *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 404 (6th Cir. 2012) (quoting *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086 (6th Cir. 1983)).

Plaintiffs here unquestionably have antitrust standing. Access to patients is essential to success, and patient access is controlled in two ways: referrals from other physicians and status as an in-network provider with the most popular health plans, and especially with health plans that have no out-of-network benefits. To achieve their anticompetitive goals, Defendants deprived Plaintiffs of both. (Comp. ¶¶ 142-52.)[12] These injuries are sufficient to confer antitrust standing. *See W. Penn Allegheny Health Sys.*, 627 F.3d at 109 (recognizing that preclusion of referrals to a competitor was exclusionary conduct); *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270, 276 (1987) (conferring antitrust standing on dental benefit plan that dentists conspired to drive from the market by concertedly refusing to contract with or permit to perform quality control inspections).

Defendants' misplaced emphasis on how to categorize Plaintiffs' participation in the relevant markets stems from Defendants' attempt to improperly conflate "anticompetitive effects" (*i.e.*, the market effects caused by Defendants' conduct) with "antitrust injury" (*i.e.*, the injuries sustained by Plaintiffs as a result of Defendants' conduct). For example, Defendants incorrectly state that Plaintiffs are alleging antitrust injury in the form of higher prices and fewer alternatives in the relevant markets. (Motion at 11.) But Plaintiffs are not arguing that they are injured by higher prices. While the Complaint describes how prices are higher and the quality of

---

[12] Exclusion from Defendants' provider network also prevented Plaintiffs from participating in the markets at issue because a patient pays more—often significantly more—to use an out-of-network provider. Indeed, for Medicare Advantage plans, a patient cannot see a provider who does not participate in his or her network. The same is true for many HMO plans as well. Thus, excluding Plaintiffs from its networks prevented them from treating Defendants' Medicare Advantage patients at all. (*See* Complaint ¶ 164 (alleging that HF Health Plans has a dominant share of the Medicare Advantage market in Southern Brevard County).)

care lower in the various relevant markets as a result of Defendants' conduct, (Compl. ¶¶ 196-98, 275-77), it separately describes how that same conduct directly harmed Plaintiffs (*id.* ¶¶ 199-259, 278-90). In other words, Plaintiffs' injuries do not stem from the anticompetitive effects of Defendants' conduct on the relevant markets; they stem from the anticompetitive practices which caused those effects. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (holding that plaintiff's injuries must "stem[] from a competition-reducing aspect *or* effect of the defendant's behavior") (emphasis added).

That is why Plaintiffs also qualify as "efficient enforcers" of the antitrust laws: while consumers in the various markets may be directly harmed by higher prices, no one is more directly harmed by their exclusion as a part of Defendants' scheme than Plaintiffs. (Compl. ¶¶ 124-68.)  *See, e.g., Pa. Dental Ass'n*, 815 F.2d at 277 (holding that "individual subscriber overcharges resulting from balance billing are relatively insignificant; hence, [patients] have only the slightest incentive to launch costly antitrust litigation in the public interest. Blue Shield, in contrast, ***as the immediate target of the organized dentists' conspiracy***, is obviously the preferred private attorney general. Blue Shield is the victim whose self-interest would normally motivate it to vindicate the public interest in antitrust enforcement" (emphasis added, internal quotation and alteration marks omitted)).

Defendants' Motion also contends, with respect to Count 1, that the Complaint does not explain how the MIMA Acquisition will reduce competition in any of the relevant markets. (Motion at 4.) This is incorrect: The Complaint describes how the MIMA Acquisition increased Health First's market power in the physician services market in Southern Brevard County (Compl. ¶ 260), how Health First was able to use that market power to raise its rivals costs by negotiating higher rates for its own physicians (*id.* ¶ 261-63, 270), and how the merger gave

12

Health First greater control over patient referrals by giving it greater power to monitor and police the MIMA physicians' compliance with the exclusive dealing arrangements (*id*. ¶¶ 264-66). [13]

Defendants also argue that competitors generally do not have standing to challenge mergers because the harm to competitors (*i.e.*, lower prices) benefits consumers and vice versa. (Motion at 6). But as already explained, Plaintiffs are not injured as a result of higher prices; the MIMA Acquisition injures Plaintiffs because it enhances Defendants' ability to exclude Plaintiffs from the physician and ancillary services markets by denying them patient referrals. (Compl. ¶¶ 4, 260-74.) *See R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 111 (2d Cir. 1989) (holding that plaintiff had antitrust standing to challenge merger of two competitors where the merger would likely reduce plaintiff's access to supermarket shelf space for its products).

With respect to Count 2, Defendants argue that restraining competition from Wuesthoff-Melbourne, not from Plaintiffs, was the purpose of their exclusionary conduct. (Motion at 8.) This is simply irrelevant: whether Defendants intended to drive Wuesthoff out of business does not preclude them from also excluding other providers, like Plaintiffs, from the market. (Compl. ¶¶ 122, 152.) Defendants also argue, without support, that Plaintiffs' recovery would be duplicative of Defendants' settlement with Wuesthoff. This is also incorrect: Wuesthoff suffered (and was presumably compensated for) harm Defendants inflicted on it; that damage, however, does not duplicate the lost income suffered by Plaintiffs. *See Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1306 (11th Cir. 2010) (noting that various parties harmed

---

[13] Defendants also argue that there can be no harm to competition in the relevant markets or to Plaintiffs insofar as MIMA was already conspiring with Health First prior to the merger. (Motion at 5.) It would turn the antitrust laws on their head to permit a merger likely to reduce competition simply because the parties were conspiring before the merger. And, as illustrated by Dr. Grenevicki's experience, the merger made monitoring and policing the conspiracy easier. Thus, prior to the merger some MIMA Physicians would occasionally refer patients to Dr. Grenevicki; but after the merger, these exceptions went from rare to never. (Compl. ¶ 243.)

by anticompetitive conduct can suffer different injuries, and a party seeking to recover due to diverted patients may be best-suited to calculate its damages).[14]

For these reasons, Plaintiffs' allegations are sufficient to establish their antitrust standing.

**B.      Plaintiffs' Claims That Defendants Violated Florida State Law Are Plausible**

**1.      The Complaint sufficiently alleges how Defendants violated FDUTPA.**

The Complaint alleges both "traditional" and *per se* violations of the Florida Deceptive and Unfair Trade Practices Act. (Compl. ¶¶ 395, 396.) A *per se* violation of FDUTPA stems from the violation of any law proscribing unfair methods of competition. *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at *2-3 (M.D. Fla. Mar. 14, 2012). Thus, Defendants have violated FDUTPA for the same reasons they violated the antitrust laws.

To state a claim under the traditional prong of FDUTPA, a party must plead: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages or aggrievement. *Third Party Verification, Inc.*, *v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). A business practice is deemed unfair under FDUTPA if it "offends established public policy and [] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.*

The same business practices that Plaintiffs allege violate the federal antitrust laws—*e.g.*, excluding doctors and physician assistants for refusing to support Defendants' anticompetitive scheme—can also be characterized as "unfair." (Compl. ¶¶ 199-253, 398.) And these unfair

---

[14] Defendants' reliance on a series of physician-privilege cases is also irrelevant: none of those cases involved the exercise of market power or a vertically integrated healthcare system. (Motion at 8.) Nor did any of those cases plead or prove harm to competition, rather than harm to the individual competitors involved, and half were decided on summary judgment, only after the benefit of full discovery. *See Todorov  v. DCH Healhcare Auth.*, 921 F.2d 1438 (11th Cir. 1991) (affirming summary judgment where neurologist did not suffer antitrust injury by being denied privilege to perform CT scans at one hospital); *Feldman v. Palmetto Gen. Hosp., Inc.*, 980 F. Supp. 467, 469 (S.D. Fla. 1997) (dismissing action alleging denial of hospital privileges where injuries were not connected to any showing of an adverse effect on competition); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1276-78 (M.D. Fla. 2009) (dismissing action alleging denial of hospital privileges where only injury, the inability to practice at one hospital, did not coincide with any harm to competition"); *Levine v. Cen Fla Med. Affiliates, Inc.*, 864 F. Supp. 1175, 1183-85 (M.D. Fla. 1994) (affirming summary judgment where the only injury to plaintiff was the inability to share monopoly profits).

14

practices directly caused Plaintiffs harm in the form of lost referrals and, ultimately, lost income. (*Id.* ¶¶ 399-405.) Such damages are precisely the kind that previous courts have deemed sufficient to allege "actual damages" or "aggrievement" under FDUTPA. *See, e.g., E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.*, No. 8:10-CV-1870-T-27AEP, 2011 WL 4343790, at *7-8 (M.D. Fla. Aug. 10, 2011) (finding the allegation that plaintiff had suffered lost sales, lost business goodwill and reputation, and lost business opportunities was sufficient to confer standing for a claim under FDUTPA), and they "directly flow from the alleged deceptive act or unfair practice." *Hennegin Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).[15]

### 2. The Complaint sufficiently alleges how Defendants tortiously interfered with Plaintiffs' business relationships.

"Claims for tortious interference do not have to be pled with specificity." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.,* 527 F. Supp. 2d 1355, 1368 (M.D. Fla. 2007)). To state a claim for tortious interference with a business relationship, a party must allege: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).

Plaintiffs' tortious interference claims rest on the Defendants' conspiracy. Under Florida law, conspiracy for tortious interference requires a combination of two or more persons, having a common purpose, seeking to accomplish the underlying tort of interference. *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981), *review denied*, 412 So. 2d

---

[15]     Defendants also argue that HF Health Plans is immune from FDUTPA liability because it is regulated by the Office of Insurance Regulation. (Motion at 19.) But as Defendants concede, this exception applies only where the acts complained of are regulated. (Id. (citing *W.S. Badcock Corp. v. Myers*, 696 So.2d 776, 782-83 (Fla.1st DCA 1996)).) The Office of Insurance Regulation does not regulate the exclusive dealing agreements which underlie Plaintiffs' claims. (Compl. ¶¶ 199-253, 398.) Thus, Fla. Stat. § 501.212(4) does not apply, and HF Health Plans is not entitled to immunity.

463 (Fla. 1982). For purposes of a tortious interference claim, once a Plaintiff establishes a conspiracy, "every act and declaration of each member of the conspiracy [is] the act and declaration of them all" and "each conspirator is liable for and bound by the act and declaration of each and all of the conspirators done or made in furtherance of the conspiracy even if not present at the time." *Wilcox v. Stout*, 637 So.2d 335, 337 (Fla. 2d DCA 1994). Plaintiffs have pled a plausible conspiracy and each Defendant's participation therein; this is sufficient, and pleading defendant-by-defendant is unnecessary. (*See* Section III(A)(2), *supra*.)

Defendants baldly assert that they are interested parties in each of the three types of relationships described in the Complaint. (Motion at 21.) In addition to being unsupported, this is beyond the four corners of the Complaint and is not the proper subject of a motion to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'") (citation omitted). Defendants also argue that a contract that is terminable at will cannot be interfered with. (Motion at 21 n.15.) Defendants fail to mention that this only applies where they can establish the competition privilege, which requires a showing, *inter alia*, that the interference was not employed improperly or to restrain competition. *Bluesky Greenland Env'tl Solutions, LLC v. 21st Century Planet Fund, LLC*, Case No. 12-81234-CIV, 2013 WL 6247442, at *8-9 (S.D. Fla. Dec. 4, 2013). Neither of these can be said here. Thus, Defendants' Motion should be denied.

## C. The Individual Plaintiffs' Injuries Are Distinct and Separate From the Injuries of Their Medical Practices

As addressed in prior briefing,[16] where employees allege injuries that are distinct and separate from their employer's injuries, the employees' injuries do not constitute derivative harm

---

[16] Plaintiffs incorporate by reference as if set forth herein its earlier briefing on this argument. (Pls' 1st Opp'n to MTD at 40-42; Pls' Opp'n to Senne MTD at 15.)

and do not preclude a finding of antitrust injury. *Hairston v Pac.-10 Conference*, 893 F. Supp. 1485, 1491 (W.D. Wash. 1994); a*ccord Radovich v. NFL*, 352 U.S. 445, 453-54 (1957) (finding that professional football player could bring antitrust claims where he, not his team, were personally blacklisted in attempt to boycott the All-America Conference and its players).

The Complaint explicitly describes how each Plaintiff was harmed by the conduct underlying each count. (Compl. ¶¶ 298-99; 309-14; 322- 27; 333-40; 348-53; 361-66; 374-79; 387-92; 398-405; and 408-22.) As these allegations amply demonstrate, the Individual Plaintiffs each suffered injuries separate and apart from those of their medical practices. (*Id*.) Dismissing their claims because they are also employees or shareholders would be improper.

> **D.    The Court Should Exercise Supplemental Jurisdiction Over Mr. Boone's and PAS's State Law Claims**

This Court has supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," including those "that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). A case arises out of the same case or controversy if they involve a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

The fact that Mr. Boone's and PAS's federal claims have been dismissed does not require dismissal of their claims. "[O]ne plaintiff [may] rely on another plaintiff's presence in federal court for supplemental jurisdiction." *White v. Addante*, 498 F. Supp. 2d 1109, 1112 (N.D. Ill. 2007) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005)). Here, the remaining Plaintiffs are properly before this Court, and Mr. Boone's and PAS's claims arise out of the same common nucleus of facts as the other Plaintiffs.[17]

---

[17] Defendants' reliance on *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241 (11th Cir. 2007) is misplaced as that case did not involve multiple plaintiffs, some of whom were still properly before that court, and whose claims arose out of the same case or controversy.

Although not physicians or physician practices, Mr. Boone and PAS were likewise excluded from the above-described interrelated healthcare market for failing to cooperate with Defendants' anticompetitive scheme and, as a result, were similarly injured in their business and property. (Compl. ¶¶ 254-259, 405.) Thus, Mr. Boone's and PAS's claims substantially overlap with those of the other Plaintiffs such that prosecuting their state claims separately in state court would be a waste of judicial resources and potentially result in contradictory findings of fact.

### E.     Mr. Senne and Mr. Means Are Not Immune From Antitrust Liability

Plaintiffs are not required to establish that Mr. Means or Mr. Senne acted outside the scope of their employment to hold them personally liable under the antitrust laws. A corporate officer or director can be held liable for antitrust violations whenever he participates in the unlawful acts, or acquiesces or ratifies the actions of others who do. *Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co., Inc.*, No. 82 C 2599, 1986 WL 3625, at *1 (N.D. Ill. Mar. 13, 1986) (cited approvingly by *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 908 (N.D. Ill. 2011)); *Murray v. Nat'l Football League*, No. Civ. A 94-5971, 1996 WL 363911, at *23 (E.D. Pa. June 28, 1996).

Defendants argue that the allegations concerning Mr. Senne's and Mr. Means's participation in the conspiracy within the statute of limitations are conclusory. (Motion at 22.) But Plaintiffs are not required to plead specific acts by Mr. Senne or Mr. Means within the limitations period, as they are responsible for the acts of their co-conspirators "regardless of the exact time [they] became a member or the extent of [their] participation." *In re Nissan Motor Corp. Antitrust Litig.*, 430 F. Supp. 231, 232 (S.D. Fla. 1977). *See also Watson Carpet & Floor Covering, Inc. v. Mohawk Indus.*, 648 F.3d 452, 460 (6th Cir. 2011) (defendants liable for future acts of their coconspirators until their affirmative withdrawal from the conspiracy). Thus, once a

plausible common scheme has been alleged, the Complaint need only provide sufficient allegations to plausibly suggest that Mr. Means and Mr. Senne participated in the scheme in some way. *SRAM*, 580 F. Supp. 2d at 904. (*See also* discussion at III(A)(2), *supra*.) "[D]etailed allegations about the involvement of each Defendant are not needed." *See, e.g., Auto Parts,* 2013 WL 2456584, at *7.

Plaintiffs allege, *inter alia*, that Mr. Senne invited at least one Plaintiff to join the conspiracy, that Mr. Means defiantly told Health First's only hospital competitor in the relevant geographic market to "stay out of South [Brevard] County," and that Mr. Means told another group that he did not have to invest in an improved health information system because "he was a monopolist"; (Compl. ¶¶ 114, 190, 194, 207.) Such allegations are sufficient to plausibly establish that Mr. Means and Mr. Senne have participated in the conspiracy alleged.

**F.    Defendants Are Not Entitled to a More Definite Statement**

It is hard to imagine a more factually detailed complaint than the Complaint. Defendants' Motion essentially concedes as much: except with respect to Mr. Means and Mr. Senne, it does not even argue that the Complaint fails to put each Defendant on notice of their respective roles in the alleged scheme. Indeed, each count in the Complaint unequivocally states which Defendants are being named, as well as Plaintiffs' basis for including them. (Compl. ¶¶ 291-422.) For example, the First Claim for Relief (Unlawful Merger) names only "Health First Inc. and HF Physicians," and it specifically describes the basis for doing so: Health First Inc. was the entity that legally acquired MIMA, and HF Physicians was the entity with which MIMA's assets and physicians were merged. (*Id*. ¶¶ 291-99.) Moreover, the use of group pleading terms such as "Health First" or "Defendants" is perfectly acceptable in antitrust cases, so long as the complaint separately alleges each defendant's participation in the scheme. *In re TFT-LCD (Flat Panel)*

19

*Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[P]laintiffs need not plead each defendant's involvement in the alleged conspiracy in elaborate detail, but must simply include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy.").

In addition, Defendants have a complete unity of interest and their actions are guided by one corporate consciousness. (Compl. ¶ 169.) These entities collectively hold themselves out as "Health First," negotiate with third parties as "Health First," and many of their boards of directors substantially overlap. (*Id*. ¶¶ 170-72.) Defendants cannot fault Plaintiffs for disregarding corporate forms that Defendants themselves have disregarded, especially since Health First Inc. uses each of its subsidiaries as an agent to further its anticompetitive goals.[18] (*Id.* ¶ 370.) For example, when Mr. Senne approached OMNI to join the conspiracy, he was not wearing a name tag that said "Holmes RMC" or "HF Health Plans," as he was acting on behalf and in the interest of the entire "Health First" enterprise.[19] Asking Plaintiffs to plead which entity Mr. Senne was representing during that conversation is not only unrealistic, it is legally inconsequential as each Health First subsidiary was acting as an agent of the parent. (*Id*.)

For these reasons, Defendants' request for a more definite statement should be denied.

## IV.   CONCLUSION

Plaintiffs have sufficiently pled plausible violations of federal and state law, as well as each Defendant's participation in those violations. Furthermore, each of the Plaintiffs has also established their standing to challenge these violations. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion in all respects.

---

[18] *See Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1069 (D. Colo. 2004) (parent company cannot direct and require anticompetitive conduct of its subsidiaries just as a principal would in directing the conduct of its agents, and then escape liability by hiding behind its separate incorporation status).

[19] *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184-85 (N.D. Cal. 2009) (allegations that conspiracy was organized at the highest level of defendant organizations and implemented by their subsidiaries, and that meeting participants failed to distinguish between corporate family members, were sufficient to allege each defendant's participation in the conspiracy, as well as a factual basis for agency).

June 23, 2014                                  Respectfully submitted,


                                                 /s/ Manuel J. Dominguez
                                               Manuel J. Dominguez (FL Bar 54798)
                                               Cohen Milstein Sellers & Toll PLLC
                                               2925 PGA Boulevard
                                               Suite 200
                                               Palm Beach Gardens, FL 33410
                                               Telephone: (561) 515-1431
                                               Facsimile:  (561) 515-1401
                                               jdominguez@cohenmilstein.com

                                               Matthew W. Ruan
                                               Cohen Milstein Sellers & Toll PLLC
                                               88 Pine Street
                                               14th Floor
                                               New York, NY 10005
                                               Telephone: (212) 838-7797
                                               Facsimile: (212) 838-7745
                                               mruan@cohenmilstein.com


                                               *Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 23rd day of June 2014, a true and correct copy of

the foregoing has been electronically filed with the Court via CM/ECF, which will send a notice

of electronic filing to counsel for Defendants, Jerome W. Hoffman, Holland & Knight LLP, 315

South Calhoun Street, Suite 600, Tallahassee, Florida 32302 [jerome.hoffman@hklaw.com].


    /s/ Manuel J. Dominguez