**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

OMNI HEALTHCARE INC.; INTERVENTIONAL SPINE INSTITUTE OF FLORIDA; CRAIG DELIGDISH; C. HAMILITON BOONE, PA; BRIAN DOWDELL; RICHARD GAYLES; STAN GOLOVAC; LANCE GRENEVICKI; ALEKSANDER KOMAR; SCOTT SEMINER; INSTITUTE OF FACIAL SURGERY, INC.; THE PAIN INSTITUTE INC.; and PHYSICIAN ASSISTANT SERVICES OF FLORIDA, LLC,

Plaintiffs,

v. Case No. 6:13-cv-1509-Orl-37DCI

HEALTH FIRST, INC.; HOLMES REGIONAL MEDICAL CENTER, INC.; HEALTH FIRST PHYSICIANS, INC.; HEALTH FIRST HEALTH PLANS, INC.; MICHAEL D. MEANS; and JERRY SENNE,

Defendants.

---

**ORDER**

This cause is before the Court on the following:

1. Whatley Kallas, LLP’s Motion to Compel Arbitration, Response to Emergency Motion of the Boone Plaintiffs, and Incorporated Memorandum of Law (Doc. 346), filed November 21, 2016;

2. Plaintiffs’, Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, MD, Brian Dowdell, MD, Richard Gayles, MD, Stanley Golovac, MD, Scott [Seminer], MD, and The Pain Institute, Inc., Motion to

      Exclude the Testimony of Michael H. Slotkin (Doc. 358), filed December 22, 2016;

3. Plaintiffs C. Hamilton Boone, P.A., Lance Grenevicki, M.D., Aleksander Komar, M.D., the Institute of Facial Surgery, Inc.; and Physician Assistant Services of Florida, LLC['s] Response to Motion in Limine to Exclude Dr. Slotkin's Testimony and Incorporated Memorandum of Law (Doc 364), filed December 30, 2016;

4. Omni Plaintiffs' Motion to Modify Court's Order on Defendants' Emergency Motion for Order Preventing Distribution of Settlement Proceeds and Opposition to that Motion and Incorporated Memorandum of Law (Doc. 361), filed December 29, 2016;

5. Health First Defendants' Memorandum in Opposition to Plaintiffs' Motion to Modify Court's Order on Defendants' Emergency Motion for Order Preventing Distribution of Settlement Proceeds (Doc. 368), filed January 12, 2017;

6. Plaintiffs', Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, MD, Brian Dowdell, MD, Richard Gayles, MD, Stanley Golovac, MD, Scott [Seminer], MD, and The Pain Institute, Inc., Motion for Sanctions (Doc. 355), filed December 20, 2016;

7. Plaintiffs C. Hamilton Boone, P.A., Lance Grenevicki, M.D., Aleksander Komar, M.D., the Institute of Facial Surgery, Inc., and Physician Assistant Services of Florida, LLC['s] Response to Motion for Sanctions and Incorporated Memorandum of Law (Doc. 362), filed December 30, 2016;

8. Plaintiffs C. Hamilton Boone, Lance Grenevicki, Aleksander Komar, Institute of Facial Surgery, and Physician[] Assistant Services of Florida's January 5, 2017 Hearing Brief for Plaintiffs' Distribution of Proceeds (Doc. 353), filed December 9, 2016;

9. Plaintiffs' (Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, MD, Brian Dowdell, MD, Richard Gayles, MD, Stanley Golovac, MD, Scott [Seminer], MD, and The Pain Institute, Inc.) Trial Brief, Witness List[,] and Exhibit List (Doc. 359), filed December 22, 2016; and

10. Other matters heard at the Court's January 5, 2017 evidentiary hearing (*see* Doc. 367).

**BACKGROUND**

Plaintiffs initiated the instant antitrust action on September 27, 2013. (Doc. 1.) On the morning of the second day of trial, the parties announced in open court that they had reached a settlement ("**Settlement Announcement**"). (*See* Doc. 326.) That same day, the Court dismissed the action—subject to the right of any party to move the Court within sixty days for the purpose of entering a stipulated form of final order or judgment or, on good cause shown, to reopen the case for further proceedings. (Doc. 329 ("**Sixty Day Order**").) After moving to extend the deadline set forth in the Sixty Day Order multiple times (Docs. 331, 333, 336), a subset of Plaintiffs ("**the Boone Plaintiffs**")[1] moved the

[1] The Boone Plaintiffs include physician assistant C. Hamilton Boone ("**Mr. Boone**"), Lance Grenevicki, M.D. ("**Dr. Grenevicki**"), Aleksander Komar, M.D. ("**Dr. Komar**"), the Institute of Facial Surgery, Inc. ("**IFS**"), and Physician Assistant Services of Florida, LLC ("**PAS**"). (Doc. 338, p. 1.) IFS is a medical practice founded by Dr. Grenevicki. (Doc. 57, ¶ 22.) Mr. Boone is the only remaining physician assistant at PAS. (*Id.* ¶ 258.)

Court for equitable distribution of the settlement proceeds, indicating that extra-judicial efforts to resolve this issue had broken down. (Doc. 338 (“**Motion for Equitable Distribution**”).)

The Court held a status conference on the matter on December 1, 2016 (“**Status Conference**”). (*See* Doc. 348.) At the Status Conference, the remaining Plaintiffs (“**the Omni Plaintiffs**”)[2] represented that all Plaintiffs had agreed to distribute the settlement proceeds in proportion to the damages set forth in the report of Plaintiffs’ expert Hal J. Singer, Ph.D (“**Dr. Singer**”) (“**Allocation Agreement**”), while the Boone Plaintiffs denied the existence of any binding Allocation Agreement. To resolve the dispute, the Court ordered additional briefing and set an evidentiary hearing for January 5, 2017 (“**Evidentiary Hearing**”). (*See* Docs. 348, 350.)

The primary issue for resolution at the Evidentiary Hearing was whether the parties had reached a binding Allocation Agreement. If not, the Court was poised to consider additional evidence on equitable damages from the Boone Plaintiffs’ retained damages witness—Michael H. Slotkin, Ph.D. (“**Dr. Slotkin**”). At the Evidentiary Hearing, the Boone Plaintiffs also testified that they never agreed to settle the case prior to the Settlement Announcement. The Court took these matters under advisement.

## STANDARDS

“Settlement agreements are favored as a means to conserve judicial resources[,] [and] [c]ourts will enforce them when it is possible to do so.” *Spiegel v. H. Allen Holmes,*

---

[2] The Omni Plaintiffs include OMNI Healthcare, Inc. (“**Omni**”), Interventional Spine Institute of Florida, Craig Deligdish, M.D. (“**Dr. Deligdish**”), Brian Dowdell, M.D., Richard Gayles, M.D., Stanley Golovac, M.D., Scott Seminer, M.D. (“**Dr. Seminer**”), and The Pain Institute, Inc.

*Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002). "Oral settlement agreements are enforceable under both federal and Florida law," *Skrtich v. Thorton*, No. 3:99-cv-742-J-25HTS, 2003 WL 24845555, at *2 (M.D. Fla. Mar. 28, 2008), and a district court may enforce such agreements in causes of actions pending before it, *H&R Block E. Enters., Inc. v. Perkins*, No. 1:06cv93-SPM/WCS, 2007 WL 1020118, at *7 (N.D. Fla. Mar. 30, 2007); *see also Kent v. Baker*, 815 F.2d 1395, 1396 (11th Cir. 1987). "The determination as to whether a binding settlement agreement was reached by the parties is governed by Florida contract law principles." *Perkins*, 2007 WL 1020118, at *7.

The party seeking to compel enforcement of a settlement agreement must ordinarily demonstrate two things—(1) first, "that [the opposing party's] attorney had clear and unequivocal authority to enter into the settlement agreement," *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994); and (2) second, that the opposing party assented to all the essential terms of the agreement, *Spiegel*, 834 So. 2d at 297. In assessing whether the propounding party has made the requisite showing, courts use an objective standard, under which "[t]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—[that is,] not on the parties having meant the same thing but on their having said the same thing." *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (1957) (quoting Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 HARV. L. REV. 457, 464 (1897)).

"Where material facts concerning the existence or terms of an agreement to settle are in dispute, or where there is a material dispute about the authority of an attorney to enter a settlement agreement on behalf of his client, the parties must be allowed an evidentiary hearing." *Murchison*, 13 F.3d at 1485. "The standard of proof required to

enforce a settlement agreement, provided one is found to exist, is merely a preponderance of the evidence." *Perkins*, 2007 WL 1020118, at *7.

## DISCUSSION

### I. Agreement to Settle the Action

Though the Boone Plaintiffs attempted to disavow the existence of any agreement to settle the case, this issue was not properly before the Court at the Evidentiary Hearing. Importantly, at the Status Conference, the Court directed Plaintiffs to submit written briefs setting forth the issues, witnesses, testimony, and exhibits that they intended to present at the Evidentiary Hearing. (Doc. 350, p. 4.) In doing so, the Court advised the parties that "[a]ny undisclosed issues, witnesses, or documents [would] not be heard, permitted to testify, or admitted." (*Id.* at 4–5.)

Notably, in their hearing brief ("**Boone Brief**"), the Boone Plaintiffs admit that "Plaintiffs settled this action with the Defendants but have not been able to agree as to how distribute the economic proceeds." (Doc. 353, p. 5.) The Boone Brief also states that "[t]he sole issue for determination at [the Evidentiary Hearing] [was] how to distribute any remaining proceeds to each of the Plaintiffs after payment of reasonable attorneys' fees, costs, and repayment of the capital provider." (*Id.*) The Omni Plaintiffs' brief sets forth the same issue for determination.[3] (*See* Doc. 359) (arguing that the Allocation Agreement be enforced).

Had the existence of a settlement been properly raised and briefed by the parties, the Court would have rejected the matter without an Evidentiary Hearing. A similar issue

---

[3] Additionally, the Omni Plaintiffs request an award of costs and fees incurred as a result of the Boone Plaintiffs' contentions. (Doc. 359, p. 18.)

was presented to the U.S. Court of Appeals for the Eleventh Circuit in *Murchison v. Grand Cypress Hotel Corporation*, 13 F.3d 1483 (11th Cir.1994), where "[a]fter acquiescing to a settlement agreement [that] was read in open court, the [a]ppellant . . . contend[ed] that he did not consent to the agreement and that his attorney was not authorized to enter into the settlement agreement." 13 F.3d at 1484. Here, as in *Murchison*, the existence of an agreement to settle is not in genuine dispute. Rather, both parties represented in open court—without objection—that an agreement to settle had been reached. Thus, an evidentiary hearing with respect to the existence of a settlement was not required. *See Murchison*, 13 F.3d at 1487 (reaching the same conclusion "where both parties represented that an agreement had been reached, and the agreement was read into open court without objection from either party").

Moreover, in *Murchison*, the Eleventh Circuit disagreed with the appellant's contention that "it was inappropriate for the district court to assume that his silence indicated approval." *Id.* In rejecting this argument, the court pointed out that: (1) Murchison was an educated man who understood the terms of the settlement agreement; (2) he was present when the agreement was announced in open court; and (3) "[i]f he was unhappy with the settlement agreement, then he should have objected at the time that it was read into open court." *Id.* Though the instant action presents slightly different circumstances—as the terms of the settlement agreement were not read into the record—the principles laid out in *Murchison* are readily applicable here. Most importantly, settlement was announced in open court. Had the Boone Plaintiffs not agreed to settle, nothing prevented them from communicating their disagreement to the Court. Indeed, simple logic belies the contention that the Boone Plaintiffs, as educated medical

practitioners, did not understand the ramifications of such an announcement.

## II. Allocation Agreement

As to the Allocation Agreement dispute, the Omni Plaintiffs were charged with demonstrating—by a preponderance of the evidence—that the Boone Plaintiffs had assented to all essential terms of the agreement. *See Perkins*, 2007 WL 1020118, at *7. To meet their burden, the Omni Plaintiffs called several witnesses to testify to the existence of the Allocation Agreement, including attorneys Joe Whatley, Damien Prosser, and Deborah Winegard, who had served as counsel for all Plaintiffs in this action. Drs. Deligdish and Seminer also testified that all Plaintiffs had assented to the Allocation Agreement. In rebuttal, the Boone Plaintiffs presented testimony from Mr. Boone,[4] Dr. Komar, and Dr. Grenevicki, who denied the existence of a *final* Allocation Agreement.

Most notably, the Omni and Boone Plaintiffs elicited testimony regarding an e-mail chain sent between the individual Plaintiffs[5] in November of 2015 ("**November 2015 E-mail Chain**"). The portion of the November 2015 E-mail Chain submitted to the Court contains four e-mails sent by: (1) Dr. Deligdish on November 19, 2015 ("**First E-mail**"); (2) Mr. Boone on November 20, 2015 ("**Second E-mail**"); (3) Dr. Komar on November 20, 2015 ("**Third E-mail**"); and (4) Dr. Deligdish on November 20, 2015 ("**Fourth E-mail**"). In the First E-mail, Dr. Deligdish wrote:

> This is what I plan to send to the attorneys. Any edits or suggested changes?
>
> The clients met tonight with John Kancilla and agreed to the

[4] Mr. Boone was also called to testify during the Omni Plaintiffs' presentation of evidence.

[5] The term "individual Plaintiffs" excludes the entity Plaintiffs. Each entity, however, was represented in this action by an individual Plaintiff who either owned or operated the attendant medical practice.

following:

> They will mediate as a group and settle as a group based on the overall percentage of their damages determined by Hal Singer's reports. The plaintiffs would like to know how much has been expended thus far in fees and costs and how much will need to be recovered for them to net 100% of their damages. They would like to know the sum total of the damages, and each plaintiff would like to know his percentage of the total. Additionally, the plaintiffs would like to meet with the attorneys at 8am on the day of mediation to discuss strategy.

Mr. Boone responded with the Second E-mail, saying: "Looks good. How about meeting over breakfast?"

In the Third E-mail, Dr. Komar wrote:

> I would like to include that settlement should require unanimous decision . . . Also, I would suggest little different formula than simple percentage of the damages. Since we all accepted the risk of litigation, I would recommend formula of x% of base plus percentage of damages. Open to discussion.

Finally, Dr. Deligdish responded with the Fourth E-mail, stating:

> I agree we should discuss. I think there is room for compromise, i.e. a super majority i.e. 80% of the entities and 80% of the damages. There are some folks who want to participate in HFHP, as well, as a potential condition, for settlement. Others may have other wishes, i.e. conduct that does not restrict competition.

While the Omni Plaintiffs proffered the First and Second E-mails as evidence of Mr. Boone's assent to the Allocation Agreement, the Boone Plaintiffs focused on the Third and Fourth E-mails as evidence that no final agreement had been reached between Plaintiffs regarding how to allocate the damages upon settlement. The witnesses gave the following testimony with respect to the intended meaning of such e-mails.

- With respect to the Second E-mail, Mr. Boone testified that he only intended to

signify that the First E-mail was a good starting point for future discussions, such that Dr. Singer's report could be used as a base line for determining how to allocate damages.

- When questioned about the Third E-mail, Dr. Deligdish reiterated that Dr. Komar: (1) assented to the Allocation Agreement in multiple meetings witnessed by counsel and the other Plaintiffs; (2) directly communicated such assent to Dr. Deligdish; and (3) never discussed the issues raised in the Third E-mail again. Dr. Seminer corroborated this testimony.
- On direct examination regarding the Third E-mail, Dr. Komar testified that although he had engaged in several discussions with the other Plaintiffs as to how eventual proceeds would be divided, he never agreed to divide proceeds based solely on the allocation of damages in Dr. Singer's report.
- Dr. Deligdish testified that the Fourth E-mail referenced his suggestions for: (1) requiring only a supermajority for agreement to settle rather than unanimity; and (2) the non-financial conditions of settlement.

As articulated by the Florida Supreme Court, it is of no moment what subjective meaning the parties attributed to such e-mails if their outward manifestation indicated otherwise. *Gendzier*, 97 So. 2d at 608 ("The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—[that is,] not on the parties having meant the same thing but on their having said the same thing."). As such, Mr. Boone's response in the Second E-mail evidences his assent to the Allocation Agreement, as it is devoid of any qualifying language. And while the Third and Fourth E-mails may evidence an intention to continue discussions

concerning allocation approaches, five witnesses testified that all Plaintiffs communicated unequivocal assent to the Allocation Agreement after November 20, 2015.

Thus, upon consideration, the Court finds that the greater weight of the evidence establishes the existence of a binding Allocation Agreement between all Plaintiffs. In accordance with the testimony presented at the Evidentiary Hearing, the Court also finds that Plaintiffs modified the Allocation Agreement to allocate damages in proportion to the midpoint of the damage ranges set forth Dr. Singer's report. In so concluding, the Court finds that, given the weight of the evidence supporting the existence of the Allocation Agreement—inclusive of the corroborating E-mails in the November 2015 E-mail Chain—the contrary evidence presented by the Boone Plaintiffs was not credible. [6]

## III. Battle of the Experts

Having determined the existence of an enforceable Allocation Agreement based on Dr. Singer's report, the Court declines to consider evidence from the Boone Plaintiffs' competing expert, Dr. Slotkin. Accordingly, the Omni Plaintiffs' pending motion in limine is due to be denied as moot. The Court writes separately only to note that Dr. Singer's report memorializes *his* opinion of the damages to be attributed to each Plaintiff; it is not necessary that everyone agree with his opinion. The Boone Plaintiffs' untimely, after-the-fact criticisms of Dr. Singer's report are nothing short of Monday morning quarterbacking and are entirely irrelevant to the existence of an Allocation Agreement. At the end of the day, the Allocation Agreement reflects a compromise inherent in

[6] Also pending before the Court is Whatley Kallas, LLP's motion to compel arbitration of matters raised by the Motion for Equitable Distribution. (Doc. 346 ("**Motion for Arbitration**").) Upon review, the Court finds that these matters have been now been resolved. As such, the Motion for Arbitration is due to be denied as moot.

settlement—that some will gain at the expense of others to reach an outcome that outweighs the cost of litigation. In this regard, the Boone Plaintiffs' post-settlement regrets are reminiscent of the unsavory squabbling of dissatisfied heirs over the inheritance of the departed. As aptly expressed by the Eleventh Circuit, courts "favor and encourage settlements in order to conserve judicial resources [and] cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the settlement." *Murchison*, 13 F.3d at 1487.

However, the Court is mindful of the Boone Plaintiffs' concerns with respect to the potential double counting of damages between Dr. Deligdish, Dr. Seminer, and Omni—issues also alleged to have been addressed in Dr. Singer's report.[7] To the extent that the parties cannot agree on the resolution of this issue, the parties shall submit such disagreement to Judge Gary A. Fees, with each party to bear his own cost and fees.

**IV. Miscellaneous Matters**

Next, the Court wishes to address a number of meritless arguments advanced in the Boone Brief. First, the Boone Plaintiffs argued that they were entitled to an equal one-thirteenth share of the settlement proceeds after payment of counsel, costs, and the capital provider ("**Equal Distribution Argument**"). (Doc. 353, p. 5.) However, given the disparity between Plaintiffs' damages in this action, this argument strains credulity and, at the Evidentiary Hearing, counsel for the Boone Plaintiffs conceded this point. At bottom, such an allocation would never have come to fruition had this action proceeded through trial and would not have been just under the circumstances.

[7] (*See also* Doc. 199-1, pp. 32–33 (providing Dr. Singer's deposition testimony in response to Defendants' inquiries as to the double counting of damages).)

Second, the Boone Plaintiffs argued that the Allocation Agreement was barred by Florida's Statue of Frauds because it was incapable of being performed within one year ("**SOF Argument**"). (*Id.* at 6–7.) But according to the testimony adduced at the Evidentiary Hearing, Plaintiffs assented to the Allocation Agreement just prior to participating in mediation on December 2, 2015. Thus, had the parties settled at mediation, the Allocation Agreement could have been performed within a year. And but for the instant proceeding, the Allocation Agreement could have been performed shortly after the Settlement Announcement on August 16, 2016—well within a year's time. Under Florida law, if it is *possible* to perform an oral contract of indefinite duration within one year of its inception, then it falls outside the statute of frauds. *Browning v. Poirier*, 165 So. 3d 663, 666 (Fla. 2015). Not only did the Boone Plaintiffs fail to address this binding Florida precedent in their hearing brief, they demonstrated no reasonable basis for avoiding it. Rather, the Boone Brief contains one conclusory statement—unsupported by either argument or fact—that "none of the Plaintiffs could have reasonably believed that this action could possibly be completed in one year." (Doc. 353, p. 6.) This is insufficient to render their SOF Argument anything but frivolous on its face.

Consistent with the Court's prior Order, the Boone Plaintiffs—as the losing party—will be obligated to pay the costs and fees associated with the Evidentiary Hearing. (Doc. 350, p. 5.) To this end, the Omni Plaintiffs have moved for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, contending that the Boone Plaintiffs: (1) knowingly advanced frivolous factual claims; and (2) unreasonably and vexatiously multiplied the proceedings. (Doc. 355 ("**First Motion for Sanctions**").)[8] The Boone

[8] On January 19, 2017, Plaintiffs collectively filed a second motion for sanctions

Plaintiffs responded to the First Motion for Sanctions on December 30, 2016. (Doc. 362.) At this juncture, the Court elects to defer ruling on the Omni Plaintiffs' First Motion for Sanctions until it has received briefing on the costs and fees associated with the Evidentiary Hearing. The Omni Plaintiffs shall submit this briefing within fourteen days of this Order.[9] Such expenses shall be measured from **November 15, 2016**—the date that the Boone Plaintiffs filed their Motion for Equitable Distribution. Thereafter, the Boone Plaintiffs will have fourteen days to respond. The Boone Plaintiffs' brief should also respond to the Court's conclusion that the Equal Distribution and SOF Arguments lack merit on their face, as this finding may also form the basis for sanctions against counsel.

## V. Authorization for Distribution of Settlement Proceeds

As a final matter, additional disputes have arisen between the parties with respect to the authorization required for distribution of the settlement proceeds. Following the Status Conference, the Court directed Defendants to transfer the settlement proceeds to an escrow agent agreed to by the parties. (Doc. 350, p. 4.) Implicit in this Order was the understanding that such funds would be held in escrow pending resolution of the allocation dispute.

Arguing that the settlement of this action was contingent on the settlement of a

---

against Defendants Health First, Inc., Health First Physicians Inc., Health First Health Plans, and Holmes Regional Medical Center, Inc. ("**Corporate Defendants**"). (*See* Docs. 370, 371.) The Court will take up this motion after a response is filed.

[9] The Omni Plaintiffs, however, are not permitted to seek reimbursement for fees associated with their motion in limine, which is largely premised on the contention that the Boone Plaintiffs failed to comply with the requirements of Rule 26 prior to proffering Dr. Slotkin's testimony. (Doc. 358 ("**Motion in Limine**").) Rule 26 is applicable to trial—not evidentiary hearings; further, the Boone Plaintiffs discussed the possibility of expert testimony at the Status Conference, without objection from the Court. As such, the Court finds that the Motion in Limine was an unnecessary expenditure and should not be included in any request for reimbursement.

related *qui tam* action[10] (“***Qui Tam* Action**”), on December 15, 2016, the Corporate Defendants filed a motion requesting that the settlement proceeds be held in escrow pending resolution of a *separate* dispute in the *Qui Tam* Action. (Doc. 354 (“**December 15 Motion**”).) In an abundance of caution, the Court granted the December 15 Motion in part and prohibited the escrow agent from distributing any funds without a Court Order. (Doc. 356 (“**December 21 Order**”).) It was later revealed that, under the terms of the parties’ settlement agreement, the settlement funds could be withdrawn or distributed from the escrow account upon “stipulation of the [P]laintiffs or further order of the Court” (“**Distribution Provision**”) (Doc. 361-1, p. 361.) As such, the Omni Plaintiffs moved for modification of the December 21 Order due to its conflict with the Distribution Provision. (Doc. 361.)

As stated at the Status Conference, the Court rejects the Corporate Defendants’ contention that the settlement of this action was in any way contingent on the settlement of the *Qui Tam* Action. Indeed, at the time of the Settlement Announcement, such contingency was never communicated to the Court. Thus, while the purpose of the December 21 Order was to maintain the status quo pending the resolution of the allocation dispute, it was not the Court’s intention to suggest that its embargo on the distribution of settlement funds was necessarily coextensive with the ultimate resolution of disputes in the *Qui Tam* Action.

Notwithstanding the Distribution Provision, however, prudence dictates that the Court maintain the status quo until further notice. Hence the settlement proceeds shall remain in escrow until all strings are tied in this action, including the resolution of the First

[10] *See United States ex rel. John Doe v. Health First, Inc.*, 6:14-cv-501-Orl-37DCI.

Motion for Sanctions any any disagreement over the double counting of damages for Dr. Deligdish, Dr. Seminer, and Omni.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. A preponderance of the evidence establishes that Plaintiffs agreed to allocate settlement proceeds in proportion with the damages assigned to each Plaintiff in Dr. Hal Singer's damages report. Pursuant to their agreement, where a range of damages appears in the report, Plaintiffs shall allocate their damages at the midpoint of such range.

2. To the extent that Plaintiffs are unable to resolve their dispute regarding the alleged double counting of damages, Plaintiffs are **DIRECTED** to submit this dispute to Judge Gary A. Fees.

   a. Each party shall bear its own costs and fees.

   b. Plaintiffs are **DIRECTED** to notify the Court: (1) once this dispute is resolved; or (2) if it is no longer at issue.

3. Whatley Kallas, LLP's Motion to Compel Arbitration, Response to Emergency Motion of the Boone Plaintiffs, and Incorporated Memorandum of Law (Doc. 346) is **DENIED AS MOOT**.

4. The Court **DEFERS RULING** on Plaintiffs', Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, MD, Brian Dowdell, MD, Richard Gayles, MD, Stanley Golovac, MD, Scott [Seminer], MD, and The Pain Institute, Inc., Motion for Sanctions (Doc. 355) pending receipt of:

   a. the Omni Plaintiffs' submission of the costs and fees associated with

                the Evidentiary Hearing;

      b.     the Boone Plaintiffs' response to submission of the Omni Plaintiffs' costs and fees; and

      c.     the Boone Plaintiffs' response to the Court's findings on the merits of their Equitable Distribution and SOF Arguments.

      d.     The parties are **DIRECTED** submit such briefing in accordance with the timeline set forth in this Order.

5. Plaintiffs', Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, MD, Brian Dowdell, MD, Richard Gayles, MD, Stanley Golovac, MD, Scott [Seminer], MD, and The Pain Institute, Inc., Motion to Exclude the Testimony of Michael H. Slotkin (Doc. 358) is **DENIED AS MOOT**.

6. Omni Plaintiffs' Motion to Modify Court's Order on Defendants' Emergency Motion for Order Preventing Distribution of Settlement Proceeds and Opposition to that Motion and Incorporated Memorandum of Law (Doc. 361) is **GRANTED IN PART AND DENIED IN PART**.

      a.     The Court **CLARIFIES** that its embargo on the withdrawal of settlement proceeds from escrow is not coextensive with the resolution of pending matters in the related *Qui Tam* Action.

      b.     In all other respects, the motion is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 24, 2017.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record