UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OMNI HEALTHCARE INC.;
INTERVENTIONAL SPINE INSTITUTE
OF FLORIDA; CRAIG DELIGDISH;
C. HAMILTON BOONE, PA; BRIAN
DOWDELL; RICHARD GAYLES; STAN
GOLOVAC; LANCE GRENEVICKI;
ALEKSANDER KOMAR; SCOTT
SEMINER; INSTITUTE OF FACIAL
SURGERY INC.; THE PAIN INSTITUTE
INC., and PHYSICIAN ASSISTANT
SERVICES OF FLORIDA, LLC,

    Plaintiffs,

v.                                            Case No. 6:13-cv-1509-Orl-37DCI

HEALTH FIRST, INC.; HOLMES
REGIONAL MEDICAL CENTER, INC.;
HEALTH FIRST PHYSICIANS, INC.;
HEALTH FIRST HEALTH PLANS,
INC.; MICHAEL D. MEANS; and
JERRY SENNE,

    Defendants.

## **ORDER**

As the old—and equally vexatious—children's song goes, this action has become "the song that never ends."[1] Though it was purportedly settled at the outset of a three-week trial *last* August (*see* Doc. 326), it has gone on and on due to infinite

---

[1] SHARI LEWIS, *The Song That Never Ends*, on LAMB CHOP'S SING-ALONG, PLAY-ALONG (A&M Records 1992).

disagreements and continuous motions—namely between two groups of Plaintiffs.[2] As a result, all settlement proceeds remained in escrow until a recent Order disbursing undisputed amounts. (Doc. 386 ("**Disbursement Order**").)

But before the Disbursement Order issued, it appears that at least one of the Omni Plaintiffs had had enough. On April 3, 2017, Plaintiff Craig Deligdish, M.D. ("**Dr. Deligdish**"), took it upon himself to offer the Boone Plaintiffs $375,000 to settle their disputes before the Undersigned ruled on the then-pending motions for attorney fees (*see* Doc. 374), sanctions (Doc. 355), and disbursement (Doc. 380) ("**Offer**"). (*See* Doc. 390-1, p. 1.) The Boone Plaintiffs accepted the Offer the following day. (*Id.* at 2.) However, in what has become an all-to-common occurrence, discussions imploded after attempts to reduce the agreement to a formalized written document resulted in the introduction of material modifications upon which the Omni and Boone Plaintiffs could not agree. (*See generally id.* at 1–18.) Accordingly, on April 28, 2017, the Boone Plaintiffs filed a motion to enforce the settlement agreement. (Doc. 390 ("**Motion to Enforce**").) The Omni Plaintiffs timely responded (Doc. 391), and, for the reasons set forth below, the Court finds that the Motion to Enforce is due to be granted.

### I.   MOTION TO ENFORCE SETTLEMENT AGREEMENT

**A.   Legal Standards**

---

[2] These subgroups include: (1) the Boone Plaintiffs—C. Hamilton Boone, Lance Grenevicki, Aleksander Komar, the Institute of Facial Surgery Inc., and Physician Assistant Services of Florida, LLC; and (2) the Omni Plaintiffs—Omni Healthcare Inc., Interventional Spine Institute of Florida, Craig Deligdish, Brian Dowdell, Richard Gayles, Stan Golovac, Scott Seminer, and The Pain Institute Inc.

### 1. Judicial Enforcement of Settlement Agreements

Federal district courts have the inherent power to summarily enforce settlement agreements entered into by litigants in a pending case. *See Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987). "In Florida, settlement agreements are favored as an efficient way to settle disputes and as a means to conserve judicial resources[,]" and "[c]ourts will enforce them when it is possible to do so." *BP Prods. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007).

### 2. Contract Formation

"A motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract . . . ." *Conte v. Winn Dixie Stores, Inc.*, No. 3:13-cv-463-MCR-EMT, 2014 WL 4693072, at *2 (N.D. Fla. Sept. 22, 2014). To prove the existence of a contract under Florida law, the propounding party must demonstrate the existence of: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). An essential, or material, term is "[a] contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *Material Term*, BLACK'S LAW DICTIONARY (9th ed. 2009). Of course, the essential terms of any given contract may vary depending on the circumstances of the parties' transaction. *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. 2d DCA 2001). But, at bottom, they "must include the terms specified in an offer to make a contract." *Id.* Therefore, as here, a party seeking to enforce a settlement agreement "has the burden to prove assent by the opposing party and must establish that there was a meeting of the minds or mutual or

reciprocal assent to certain definite propositions." *Id.* "Under the objective standard of assent, [courts] do not look into the subjective minds of the parties; the law imputes an intention that corresponds with the reasonable meaning of a party's words and acts." *Kolodziej*, 774 F.3d at 745.

"As long as an intent to settle essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the [Florida courts]." *Allapattah Servs., Inc. v. Exxon Corp.*, Nos. 05-21338-CIV, 91-0986-CIV, 2007 WL 7756735, at *2 (S.D. Fla. Sept. 26, 2007). Moreover, "[e]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on all the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974).

### 3. Contract Interpretation

"Under Florida law, courts must give effect to the plain language of contracts when that language is clear and unambiguous." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1246 (11th Cir. 2002). "This is so because the terms of a contract provide the best evidence of the parties' intent." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). Thus, "where the language is plain[,] a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions." *Id.*

Ambiguity may exist, however, where a contractual term, is subject to reasonable but different interpretations. *See Arriaga*, 305 F.3d at 1246. "[I]n determining whether a contract is ambiguous, the words should be given their natural, ordinary meaning." *Key*,

90 F.3d at 1549. Florida law also provides rules of construction to discern the meaning of ambiguous contracts. *Id.* at 1246–47. For example, "[t]o construe the contract, one part of an agreement may be resorted to for the explanation of the meaning of the language or another part." *Id.* at 1247. Courts may also review evidence extrinsic to the contract to determine the intent of the parties at the time the contract was made. *Id.* Other rules of construction permit consideration of: (1) the circumstances surrounding the parties at the time of contracting; (2) custom and usage; and (3) public policy concerns. *Id.* Finally, "[w]hen ambiguity in meaning remains after resort to the ordinary rules of construction, an ambiguous term is to be construed against the drafter." *Id.*; *see also Key v. Allstate Ins. Co.*, 90 F.3d 1546 (11th Cir. 1996) ("In general, ambiguities in contracts are construed against their drafters.").

**B.  Analysis**

Upon consideration of the e-mail chain filed in support of the Motion to Enforce, the Court finds that the Boone Plaintiffs have demonstrated the existence of an enforceable contract. Specifically, on **April 3, 2017**, Dr. Deligdish sent the Boone Plaintiffs an e-mail titled "Settlement Offer-Confidential." (Doc. 390-1, p. 1 ("**April 3 E-mail**").) In its entirety, the April 3 E-mail reads as follows:

> It is likely that Judge Dalton will rule on the Motion for Attorneys['] Fees, the Sanctions motion[,] and the motion to compel within the week.
>
> We, the OMNI plaintiffs made an offer to you weeks ago and have yet to receive a response. You continue to be responsible for the Whatley Kallas fees which continue to increase. (see attached statement). Additionally, Cohen Milstein has filed a motion to intervene demanding payment in excess of

> $1,471,000. Based on the most recent distribution statement[,] the Boone plaintiffs are due in total $375,000 if you are willing to settle prior to Judge Dalton's order. This would relieve you of the risk of further sanctions, fees, and costs for the work performed by Whatley Kallas dating back to 8/16, the costs of arbitration, the costs related to your non-monetary damages and the responsibility to pay Cohen and Milstein for their charging lien.
>
> Let me or your attorney know if this offer ($375,000) or the offer made by Whatley Kallas is acceptable to you. Your attorney can communicate with Mike Crosbie directly, who is copied on this email. This offer will be good for 72 hours, or until Judge Dalton rules, whichever comes sooner.

(*Id.*)

On **April 4, 2017**, the Boone Plaintiffs' attorney, Adam S. Levine ("**Mr. Levine**"), responded stating:

> Gentlemen,
>
> Good evening, I apologize for the hour I just got out of class. The Boone Plaintiffs needed some time to talk. The Boone Plaintiffs have carefully considered Dr. Deligdish's offer, below, from April 3, 2017[,] and accepted it. Attached please find a draft settlement agreement attached in both Word and PDF formats. Once a settlement is executed, the Boone Plaintiffs have no objection to requesting that Judge Dalton disburse the funds.
>
> Adam

(*Id.* at 2.)

Based on the foregoing, the Court concludes that an enforceable settlement agreement was created ("**Deligdish-Boone Settlement**"). In particular, the April 3 E-mail offered the Boone Plaintiffs $375,000 in exchange for settling their disputes prior to the issuance of an Order on then-pending motions for attorney fees, sanctions, and to compel

-6-

disbursement of settlement proceeds (Docs. 355, 374, 380) ("**Anticipated Order**"). (*Id.* at 1.) By its terms, the Boone Plaintiffs could accept the Offer by responding to Dr. Deligdish or his attorney, Mike Crosbie ("**Mr. Crosbie**"), within 72 hours or before the Anticipated Order, whichever came first. (*Id.*) The following day, Mr. Levine accepted the Offer on behalf of the Boone Plaintiffs in an email to Mr. Crosbie. (*Id.* at 2.) The consideration for the Deligdish-Boone Settlement was the Boone Plaintiffs' promise to settle existing disputes with the Omni Plaintiffs in exchange for Dr. Deligdish's promise to pay them $375,000 and relieve them of: (1) the risk of further sanctions, fees, and costs for the work performed by the Whatley Kallas law firm dating back to August 16, 2016; (2) the costs of arbitration; (3) the costs related to the Boone Plaintiffs' non-monetary damages; and (4) the responsibility to pay Cohen and Millstein for the charging lien. (*Id.*) Hence the April 3 E-mail specified all material or essential terms applicable to their agreement—subject matter, price, payment, quantity, and duration. *See Material Term*, BLACK'S LAW DICTIONARY (9th ed. 2009).

Nonetheless, the Boone and Omni Plaintiffs continue to bicker over the meaning of the term "further" in the April 3 E-mail. Importantly, Dr. Deligdish stated that acceptance of the Offer "would relieve [the Boone Plaintiffs] of the risk of **further** sanctions, fees, and costs for the work performed by Whatley Kallas dating back to 8/16." (Doc. 390-1, p. 1 (emphasis added).)

In resolving a prior dispute between the Omni and Boone Plaintiffs, the Court held an evidentiary hearing ("**Evidentiary Hearing**") to determine whether the Plaintiffs had agreed to distribute settlement proceeds in proportion to the damages set forth in the

-7-

report of Plaintiffs' expert Hal J. Singer. (*See* Doc. 372, pp. 3–4.) In doing so, the Court stated that the losing party to that dispute would be obligated to pay the costs and fees associated with the Evidentiary Hearing. (*See id.* at 13.) To this end, the Omni Plaintiffs moved for sanctions. (Doc. 355 ("**First Motion for Sanctions**").) The Court later deferred ruling on the First Motion for Sanctions until it received briefing on the costs and fees associated with evidentiary hearing. (Doc. 372, pp. 13–14.) To date, the First Motion for Sanctions remains pending.

The Omni Plaintiffs argue that the term "further" in the Offer excludes the costs and fees associated with the Evidentiary Hearing because the Court had already determined that it would award such amounts. (*See* Doc. 391, pp. 6–8.) However, at the time of the April 3 E-mail, the Court had not yet actually awarded any sanctions, fees, or costs or even determined the amount of such awards. Consequently, the Boone Plaintiffs' interpretation is that "since none had been ordered by the time the Offer was extended or accepted, none would be owed." (Doc. 390, p. 9–10.) The Court agrees. To the extent the Omni Plaintiffs read the Offer to mean that "the only fees and expenses for which the Boone Plaintiffs would be responsible are those awarded by the Court pursuant to any Order on a previously filed motion" (Doc. 391, p. 6), the Court finds that such ambiguity should be construed against the drafter—Dr. Deligdish.

True enough, the Omni Plaintiffs represent that Dr. Deligdish made the Offer directly to the Boone Plaintiffs "without any involvement or prior knowledge of his attorneys, the litigation funder, or even the Omni Plaintiffs other than himself and Omni Healthcare." (Doc. 391, pp. 3.) This representation is supported by Dr. Deligdish's own

-8-

sworn declaration. (Doc. 391-1, ¶ 5.) So by unilaterally extending an Offer that—by its objective terms—released the Boone Plaintiffs of their obligation to pay the costs and expenses of the Court's June 5 Evidentiary Hearing, it appears that—despite his subjective intent—Dr. Deligdish has assumed those monetary obligations himself.

As a final matter, the Boone and Omni Plaintiffs spend a great deal of briefing disputing which proposed settlement draft constitutes the embodiment of their agreement. But in the absence of a modified agreement, Plaintiffs remain bound by the Deligdish-Boone Settlement, as embodied by the April 3 E-mail and its acceptance alone. To be sure, e-mail communications do not need to be reduced to a formal, written settlement agreement to become binding. *See United States ex rel. Doe v. Health First, Inc.*, Case No. 6:14-cv-501-Orl-37DCI (Doc. 142); *see also Khoury v. Tomlinson*, 518 S.W.3d 568, 575–79 (Tex. App. 2017).

## II. REMAINING MOTION FOR SANCTIONS

With the fall of the First Motion for Sanctions, the Court now turns to the Omni Plaintiffs' remaining motion for sanctions against the Health First Defendants.[3] (Doc. 370 ("**Second Motion for Sanctions**").) According to the Omni Plaintiffs, the parties' agreement to settle Plaintiffs' claims in this action stated that "Counsel for the plaintiffs shall arrange for the establishment of an escrow account into which settlement proceeds are to be deposited and from which proceeds may be withdrawn and distributed only pursuant **to stipulation of the plaintiffs** or further order of the Court." (Doc. 370, p. 1

---

[3] Health First, Inc., Holmes Regional Medical Center, Inc., Health First Physicians, Inc., and Health First Health Plans, Inc.

(emphasis added).) Nonetheless, on December 15, 2016, Defendant filed an emergency motion requesting that the Court hold such proceeds in escrow until the resolution of a dispute regarding the settlement in a related *qui tam* action—*United States ex rel. Doe v. Health First, Inc.*, Case No. 6:14-cv-501-Orl-37DCI ("**Qui Tam Action**"). (Doc. 354 ("**Emergency Motion**").) As grounds, the Health First Defendants raised statements allegedly made by Dr. Deligdish to the effect that the settlement of this action and the *Qui Tam* Action were co-dependent. (*Id.*) The Court initially granted the Emergency Motion in part. (Doc. 356 ("**December 21 Order**").) But, upon consideration of the Omni Plaintiffs' later-filed motion to modify the December 21 Order (Doc. 361), the Court clarified that "its embargo on the withdrawal of settlement proceeds from escrow [was] not coextensive with the resolution of pending matters in the related *Qui Tam* Action." (Doc. 372, p. 17.)

Against this backdrop, the Second Motion for Sanctions argues that the Emergency Motion "is objectively frivolous and warrants sanctions under [Rule] 11." (Doc. 370, p. 2.) In support, the Omni Plaintiffs rely on the absence of record evidence that settlement in this action was co-dependent on settlement of the *Qui Tam* Action. (*See id.* at 3–5, 9.)

Federal Rule of Civil Rule 11 provides that sanctions may be imposed against a party who files a pleading that: (1) has an improper purpose; (2) has no reasonable legal basis; or (3) has no reasonable factual basis. *Thomas v. Evans*, 880 F.2d 1235, 1239 (11th Cir. 1989). Under the rule, courts apply an objective standard to determine "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255

(11th Cir. 2003). While the Rule contemplates "some prefiling inquiry into both the facts and the law," it is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. Rather, "the purpose of Rule 11 is to deter frivolous lawsuits"—not "novel legal arguments or cases of first impression." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

In assessing the propriety of Rule 11 sanctions, the U.S. Court of Appeals for the Eleventh Circuit has instructed courts to inquire into: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Id.* "If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The reasonableness of an inquiry may depend on how much time was available, whether the attorney relied on a client for information, or whether he depended on another attorney. *Id.*

The Undersigned is painfully familiar with settlement discussions surrounding both this action and the *Qui Tam* Action. Having reviewed the e-mail communications concerning settlement between the Health First Defendants and the relator[4] in the *Qui Tam* Action, as well as the declaration submitted by the Health First Defendants in response to the Second Motion for Sanctions (Doc. 368-1), the Court does not agree that

---

[4] The relator was Dr. Deligdish.

the Health First Defendants' belief that the settlement of both actions was co-dependent is objectively frivolous. In any event, notwithstanding the grounds raised in the Emergency Motion, the Undersigned later found that holding the settlement proceeds in escrow was the most prudent course of action. (*See* Doc. 372, pp. 14–16.) As such, sanctions against the Health First Defendant are not warranted.

### III.    MOTION TO INTERVENE

Finally, the law firm of Cohen Milstein Sellers & Toll PLLC ("**CMST**") has moved for leave to intervene in this action for the purpose of noticing and adjudicating a charging lien. (Doc. 381 ("**Motion to Intervene**").) On July 28, 2017, U.S. Magistrate Judge Daniel C. Irick issued a Report recommending that the Court grant the Motion to Intervene in part and deny it in part. (Doc. 397 ("**R&R**").) In doing so, Magistrate Judge Irick found that: (1) the Motion to Intervene was timely; (2) "CMST's interest in compensation is one for which protection of the court can properly be sought"; (3) "refusing to allow intervention in this case may . . . impede or impair CMST's ability to protect its claimed interest in the settlement funds"; and (4) "existing parties are not adequately protecting CMST's interests." (*Id.*) Ultimately, the R&R concludes that CMST has established a right to intervene.[5] (*Id.*)

---

[5] In the event that the Court disagrees, the R&R recommends that the Court exercise its discretion to decline permissive intervention. (Doc. 397, pp. 17–18.)

As no objections were filed in the prescribed period, the Court has reviewed the R&R only for clear error.[6] Finding no clear error, the Court finds that the R&R is due to be adopted.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Boone Plaintiff's Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (Doc. 390) is **GRANTED** pursuant to the terms set forth in this Order.

    a. Upon receipt of this Order, the escrow agent at the location where the pertinent settlement funds are held is **AUTHORIZED AND DIRECTED** to distribute $375,000 to Adam S. Levine. Mr. Levine must distribute this amount to the Boone Plaintiffs.

    b. With the exception of the settlement proceeds to which Cohen Milstein Sellers & Toll PLLC claims entitlement (**$611,088.75**), the escrow agent is **AUTHORIZED AND DIRECTED** to distribute the remaining settlement proceeds held in escrow to attorney Joe R. Whatley, Jr. Mr. Whatley may distribute these amounts pursuant to agreement by the Omni Plaintiffs, taking into

---

[6] *See Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-557-T-27EAJ, 2016 WL 355490, at *1 (M.D. Fla. Jan. 28, 2016) (finding that, in the absence of objections, district courts are required to review the report and recommendation of a magistrate judge for clear error); *see also Marcort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (same).

consideration the potential costs and fees forfeited by the Deligdish-Boone Settlement and the portion of fees allocated to each of the Omni Plaintiffs in expert Hal J. Singer's report. The Court declines to retain jurisdiction to settle any remaining dispute amongst the Omni Plaintiffs; they must work out the details between themselves.

2. The Clerk is **DIRECTED** to **TERMINATE** Plaintiffs', Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, MD, Brian Dowdell, MD, Richard Gayles, MD, Stanley Golovac, MD, Scott Seminer, MD, and the Pain Institute, Inc., Motion for Sanctions (Doc. 355).

3. The Court will no longer consider the Omni Plaintiffs' Memorandum in Support of Fee and Cost Award (Doc. 374).

4. Plaintiffs' Motion for Sanctions and Incorporated Memorandum of Law (Doc. 370) is **DENIED**.

5. U.S. Magistrate Judge Daniel C. Irick's Report and Recommendation (Doc. 397) is **ADOPTED, CONFIRMED,** and made a part of this Order.

6. The Motion to Intervene by Cohen Milstein Sellers & Toll PLLC is **GRANTED IN PART AND DENIED IN PART** (Doc. 381) to the extent set forth in the R&R.

7. On or before Friday, **September 8, 2017**, Cohen Milstein Sellers & Toll PLLC may submit briefing on the issue of their entitlement to the remaining settlement proceeds. The Omni Plaintiffs will have fourteen days to

respond. The parties are forewarned that this is the final matter that the Court will adjudicate in this action. The federal claims are long gone. What is left is a merely a contractual dispute between non-diverse parties.

8. The Clerk is **DIRECTED** to **TERMINATE** the following individuals and entities as parties to this action: (1) Institute of Facial Surgery Inc.; (2) C. Hamilton Boone, PA; (3) Aleksander Komar; (4) Lance Grenevicki; (5) Physician Assistant Services of Florida; (6) Health First, Inc.; (7) Holmes Regional Medical Center, Inc.; (8) Health First Physicians, Inc.; (9) Health First Health Plans, Inc.; (10) Michael D. Means; and (11) Jerry Senne.

9. The Clerk is **DIRECTED** to **TERMINATE** attorney Adam Scott Levine as counsel to this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 24, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record