**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

OMNI HEALTHCARE INC., et al.,

*Plaintiffs*,

vs.

HEALTH FIRST, INC., et al.,

*Defendants*.

CASE NO.
6:13-CV-01509-Orl-37DAB

**INTERVENOR COHEN MILSTEIN SELLERS & TOLL PLLC'S
RENEWED MOTION FOR ATTORNEYS' FEES**

On July 28, 2017, U.S. Magistrate Judge Daniel C. Irick recommended that Cohen Milstein Sellers & Toll PLLC ("CMST") be permitted to intervene to pursue its attorney fee interest in the litigation [D.I. 397], and on August 24, the Court adopted this recommendation and granted CMST leave to brief its entitlement to the remaining settlement proceeds of $611,088.75 [D.I. 398]. As we show below, CMST is entitled to a reasonable attorneys' fee, having performed valuable work in the case at our clients' direction, and $611,088.75 is a reasonable fee — indeed, less than reasonable — given the $1.013 million[1] in attorney and paralegal time the firm devoted to this case as lead counsel over a 21-month period of vigorous litigation.

**FACTUAL BACKGROUND**

In 2013, Plaintiffs retained CMST, Morgan & Morgan, P.A., and Epstein Becker & Green to represent them in an antitrust action against Defendant Health First, Inc. and several of its related companies and officers. Plaintiffs each signed an Addendum to Legal Representation

---

[1] In CMST's motion to intervene and supporting declarations, CMST stated that it invested $1,170,491.25 in attorney time prosecuting this case. This revised figure of $1.013 million is limited just to time prior to CMST's withdrawal and does **not** include any time related to resolving this fee dispute.

Agreement whereby they agreed to be jointly represented by the three law firms pursuant to the terms of the Legal Representation Agreement previously entered between Morgan & Morgan and Plaintiffs Deligdish and Omni Healthcare Inc.[2]  (*See* Declaration of Manuel J. Dominguez, attached hereto as Attachment A,  ¶¶ 5-13, Exhibits 2-9)  In addition, Morgan & Morgan, Epstein Becker, and CMST entered into an Associating Attorney Agreement whereby the firms agreed to share the total attorneys' fees recovered in this action in the percentages each firm's hours constituted of the total hours contributed by the three firms.  (*Id*. at ¶¶ 14-15, Exhibit 10.)

Each of the representation agreements at issue—the Legal Representation Agreement, the Addendums to Legal Representation Agreement, and the Associating Attorney Agreement— contained a provision placing sole responsibility for all costs associated with prosecuting this action on Plaintiffs.  (*See* Legal Representation Agreement, Exhibit 1 to Dominguez Decl. at ¶ B(v) ("You agree to pay all costs the Firm incurs in your representation, including but not limited to, court filing fees, service fees, deposition fees, copying expenses, postage, long distance telephone calls, expert witness fees, investigative charges, consulting fees, travel expenses, computer research services, electronic database charges, and any other expense."); Addendums to Legal Representation Agreements, Exhibits 2-9 to Dominguez Decl. at ¶A(ii)(b) (same);  Associating Attorney Agreement, Exhibit 10 to Dominguez Decl. at B(4) ("The firms and Kopit will not be responsible to advance costs in connection with the above representation.").)

---

[2] The Addendums to Legal Representation Agreements were signed by each of the Plaintiffs but the signature blocks for CMST were not signed.  However, even if Plaintiffs sought to challenge the enforceability of these agreements, CMST's signature is not required to make these agreements enforceable against Plaintiffs.  *See State Contracting & Eng'g Corp. v. Condotte Am., Inc*., No. 97-7014-CV, 2004 WL 5500705, at *16 (S.D. Fla. Oct. 26, 2004), *report and recommendation adopted*, 368 F. Supp. 2d 1296 (S.D. Fla. 2005), *amended on reconsideration in part*, No. 97-7014-CIV, 2005 WL 5643877 (S.D. Fla. May 31, 2005), and *aff'd*, 197 F. App'x 915 (Fed. Cir. 2006) (rejecting argument by client in fee dispute that engagement letter could not be enforced because it was not signed by the attorney, stating "At best, this would constitute a defense for [the attorney] if he did not want to be bound by the contract. Clearly, the opposite is true.").

In addition, the Legal Representation Agreement—which was expressly incorporated into each Addendum to Legal Representation Agreement signed by all Plaintiffs—states: "To secure the payment of the Firm's fees and costs incurred under the terms of this Agreement, you <u>hereby confer and grant a charging lien on your claim and any recovery in this case</u>, and a retaining lien on the files and records, as permitted by law, which will be deemed <u>in force and perfected from the date of this Agreement</u>.  (*See* Dominguez Decl., Exhibit 1) (emphases added.)

The Legal Representation Agreement further provided: "If the Firm terminates this Agreement with cause, as defined hereafter, the Firm shall be entitled to payment of reasonable attorneys' fees and costs incurred as set forth below.  'Cause' means your refusal to cooperate with us, your refusal to follow our advice on a material matter, conduct on your part which would make our continuing representation unlawful, unethical, or impracticable; or the occurrence of any fact or circumstance which would make our continuing representation unlawful, unethical, or impracticable."  (*Id*., Exhibit 1 at ¶F(i).)

In reliance on these agreements, CMST performed extensive legal services on behalf of Plaintiffs, including formulating the antitrust theory underpinning Plaintiffs' successful claims against Defendants, interviewing several experts and assisting in the selection of an expert, taking the primary lead in drafting Plaintiffs' complaints, and briefing and arguing Plaintiffs' responses to Defendants' multiple motions to dismiss.  (*Id*. at ¶18.)  These motions to dismiss involved complex and novel issues of antitrust standing which were all decided in Plaintiffs' favor when this Court denied Defendants' motions to dismiss.  [D.I. 105].   In addition, CMST met extensively with all clients, ensured that each client instituted appropriate document preservation measures, met and communicated with various governmental entities, searched for and met with potential replacement counsel after Epstein Becker dropped out, reviewed and produced Plaintiffs' discovery documents, met with the clients about discovery, propounded and

responded to written discovery, and negotiated with Defendants regarding confidentiality issues and the production of electronically stored information.  (*See* Dominguez Decl. ¶19, Exhibit 11 (detailed billing records).)

As Defendants recognized when CMST withdrew, "Mr. Dominguez and Mr. Ruan served as Plaintiffs' lead counsel in this matter [and], more importantly, they have been Defendant's sole and exclusive contacts for discovery-related issues in this matter."  (Defs' Corrected Amended Mot. to Compel Discovery From Plaintiffs [D.I. 73] ¶ 6.)  The Omni Plaintiffs[3] concede as well that CMST served as lead counsel. (*See* Omni Pls' Supplemental Brief in Opposition to Mot. to Intervene at 4 [D.I. 396] (referring to CMST as "lead counsel").)

Prior to its withdrawal (*i.e.*, from inception through November 12, 2014), CMST expended 2,020.12 hours prosecuting this case, representing $1,013,027.40 in lodestar. (Dominguez Decl. at ¶20; Exhibit 11.)

In 2014, Epstein Becker decided to withdraw as counsel and Plaintiffs instructed CMST to find replacement counsel.  (*Id.* at ¶21.)  CMST's extensive search identified two good candidates, and one of them, Thompson Knight LLP, elected to participate.  (*Id.*)

However, when the time came to enter a new legal representation agreement to reflect Thompson Knight's participation, Plaintiffs informed counsel that Plaintiffs were no longer willing to pay litigation costs as provided in the original representation agreement and the subsequent addenda.  Instead, Plaintiffs wanted the law firms to pay such costs.  (*Id.* at ¶22.) CMST attempted to negotiate a compromise, offering to cap Plaintiffs' cost obligation.  But despite CMST's good faith efforts, no compromise could be reached.  (*Id.* at ¶23.)

---

[3] The "Omni Plaintiffs" consist of Omni Healthcare, Inc., Interventional Spine Institute of Florida, Craig Deligdish, Brian Dowdell, Richard Gayles, Stan Golovac, Scott Seminer, and The Pain Institute Inc.

On November 4, 2014, CMST—explicitly citing Plaintiffs' failure to abide by the terms of the representation agreement—filed a motion to withdraw as counsel (the "Motion to Withdraw"). [D.I. 76]. The Omni Plaintiffs themselves admit that CMST withdrew because of a dispute over the payment of litigation costs. (*See* Omni Pls' Supplemental Brief in Opposition to Mot. to Intervene at 4 [D.I. 396].)

The Court granted CMST's motion on November 12, 2014. [D.I. 78]. Soon thereafter, CMST had multiple conversations by phone and email whereby it informed Plaintiffs and their counsel that CMST was entitled to fees from any recovery, that it had a charging lien, and that, although it preferred to resolve the issue without Court intervention, it would take whatever steps were necessary to protect its fee interest. (Dominguez Decl. at ¶26; Exhibit 14.)

Around this time, Plaintiffs obtained litigation funding from a third-party funder and retained Whatley Kallas LLP as new counsel.[4]  Morgan & Morgan continued as counsel for Plaintiffs.

On August 15, 2016, this action proceeded to trial and, shortly after the trial started, a settlement was reached. CMST learned of the settlement from public news sources, and on August 27, 2016, contacted Plaintiffs' counsel, Joseph Whatley of Whatley Kallas, and reminded Plaintiffs and their counsel of CMST's fee interest in the recovery. (*See* Declaration of Daniel Small  at ¶2, attached hereto as Attachment B.) CMST and Plaintiffs' counsel continued to discuss CMST's fee interest for several months via email, letter and telephone. In an effort to avoid burdening this Court with motion practice, CMST offered to accept only $611,088.75 as full payment for the legal services it provided to Plaintiffs. (*Id*. at ¶3.) This compromise amount reflected only the time that CMST devoted to formulating Plaintiffs' antitrust theory, drafting the

---

[4] According to the Omni Pls' Mot. for Order Authorizing Distribution of Undisputed Net Settlement Proceeds and Incorporated Memorandum of Law, Whatley Kallas was formally retained by Plaintiffs on or about December 15, 2014. [D.I. 378]. The same motion references litigation funding by funder "DTC."

amended complaint to reflect that theory, and successfully opposing Defendants' numerous motions to dismiss.  (*Id.*)  This work clearly contributed very significant value to Plaintiffs' case.  CMST believed that its demand was eminently reasonable given that the firm sought no compensation for the nearly half million dollars in additional work that it did for the benefit of its clients.

After CMST engaged in four months of good faith negotiations with Whatley Kallas, a different Plaintiffs' firm, Morgan & Morgan, notified CMST in writing on December 19, 2016 that, in Plaintiffs' view, CMST was entitled to no fees at all.  (*Id*. at ¶4.)  On February 23, 2017, CMST responded to Morgan & Morgan that CMST would seek to enforce its right to attorneys' fees if Plaintiffs did not agree to CMST's $611,088.75 demand by March 10, 2017.  (*Id*. at¶5.)  CMST did not receive a response.  (*Id*. at ¶7.)

On March 7, 2017, the Omni Plaintiffs filed a Motion for Order Authorizing Distribution of Undisputed Net Settlement Proceeds and Incorporated Memorandum of Law [D.I. 378].  In this motion, the Omni Plaintiffs informed the Court of CMST's claimed attorney fee interest and submitted a revised Interim Distribution Statement that specifically withheld the $611,088.75 demanded by CMST from the "undisputed" amount requested to be disbursed.  [D.I. 378].

On March 31, 2017, CMST filed a motion to intervene to protect its attorney fee interest in this matter.  [D.I. 381].  On July 28, 2017, Magistrate Judge Irick recommended that "CMST be permitted to intervene in this case as a matter of right to assert its charging lien."  [D.I. 397].  On August 24, 2017, the Court adopted this recommendation, and granted CMST leave to brief its entitlement to the remaining settlement proceeds of $611,088.75.

## MEMORANDUM OF LAW

It is undisputed that CMST provided valuable legal services to Plaintiffs that significantly contributed to their success in this case.  There are multiple legal theories, discussed below, that entitle CMST to be paid a reasonable fee for these substantial efforts.  Despite CMST's contributions and its legal entitlement to be paid, the Omni Plaintiffs – who directed and benefited from CMST's work – seek a free ride by arguing that CMST's fee request (a) is untimely, and (b) was forfeited when CMST voluntarily withdrew from this case, allegedly without cause.[5]  As discussed below, both arguments fail.

Plaintiffs have been on notice of CMST's fee interest from the outset.  The original Legal Representation Agreement, which was expressly incorporated into the Addendum that added CMST as additional counsel in the case, provides that: "To secure the payment of the Firm's fees and costs incurred under the terms of this Agreement, you hereby confer and grant a charging lien on your claim and any recovery in this case … as permitted by law, which will be deemed in force and perfected from the date of this Agreement."  (Dominguez Decl., Exhibit 1 at ¶C (emphasis added).)  In addition, on multiple occasions after its withdrawal, CMST reminded Plaintiffs and their counsel of its charging lien and its intent to enforce it if necessary.  (*Id*. at ¶26, Exhibit 14.)

Moreover, CMST withdrew with cause after Plaintiffs refused to abide by the contractual provision that made Plaintiffs solely responsible for the costs of prosecuting this case.  (*Id*. at ¶25.)  This refusal created a conflict that necessitated CMST's withdrawal, as the interests of CMST and its attorneys materially limited their ability to represent Plaintiffs.

---

[5] *See, e.g.,* Omni Pls' Response and Incorporated Memo. of Law in Opp. to Mot. to Intervene [D.I. 382] at 1.

For these reasons, CMST is entitled to attorneys' fees in this matter and, therefore, respectfully requests that the Court award it the remaining $611,088.75 as just compensation for its efforts.

### A.    CMST WITHDREW WITH CAUSE WHEN PLAINTIFFS REFUSED TO ABIDE BY A KEY TERM OF THE REPRESENTATION AGREEMENT

In contingency fee matters, an attorney who withdraws prior to a recovery is entitled to attorneys' fees if the withdrawal was necessitated by the client's conduct:

> [W]hen an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation. ... We further hold, however, that if the client's conduct makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar, that attorney may be entitled to a fee when the contingency of an award occurs.

*Faro v. Romani*, 641 So.2d 69, 71 (Fla.1994).

Here, as stated in CMST's motion to withdraw, it was Plaintiffs' conduct that made it necessary for CMST to withdraw.  (Mot. for Leave to Withdraw [D.I. 76] ¶¶ 2-5.)  Each of the representation agreements at issue—the Legal Representation Agreement, the Addendum to Legal Representation Agreement, and the Associating Attorney Agreement—contains a provision that placed sole responsibility for all litigation costs on Plaintiffs.[6]  However, Plaintiffs subsequently informed CMST that, in light of the substantial expert costs then being estimated, they no longer would agree to pay for all of the costs associated with prosecuting this action. (Dominguez Decl. ¶22.)  Despite this repudiation of a clear contract provision, CMST then

---

[6] *See* Legal Representation Agreement, Exhibit 1 to Dominguez Decl. at ¶ B(v) ("You agree to pay all costs the Firm incurs in your representation, including but not limited to, court filing fees, service fees, deposition fees, copying expenses, postage, long distance telephone calls, expert witness fees, investigative charges, consulting fees, travel expenses, computer research services, electronic database charges, and any other expense."); Addendums to Legal Representation Agreements, Exhibits 2-9 to Dominguez Decl. at ¶A(ii)(b) (same);  Associating Attorney Agreement, Exhibit 10 to Dominguez Decl. at B(4) ("The firms and Kopit will not be responsible to advance costs in connection with the above representation.").

attempted to negotiate a cap on Plaintiffs' cost obligation, but no new agreement could be reached.  (*Id*. at ¶23, Exhibit 13.)

Plaintiffs' breach created a conflict of interest that necessitated CMST's withdrawal. CMST had accepted this representation on the basis that Plaintiffs would pay litigation costs. Plaintiffs' subsequent refusal to do so substantially and materially changed the economics of this representation for CMST, creating a substantial risk that CMST's continued representation would be materially limited by CMST's own interests and the personal interests of its lawyers. *See* FL State Bar Rule 4-1.7 ("A lawyer must not represent a client if…there is a substantial risk that the representation of 1 or more clients will be materially limited by…a personal interest of the lawyer."); *Smith & Burnetti, P.A. v. Faulk*, 677 So. 2d 404, 404 (Fla. 2d DCA 1996) (applying *Faro* and awarding attorney fees based upon quantum meruit where law firm had no ethical choice but to terminate its relationship with client due to conflict under FL State Bar Rule 4-1.7).

Since this conflict was created by Plaintiffs' actions and not CMST's, CMST withdrew for cause and is not precluded from seeking reasonable attorneys' fees in this matter.  *See Santini v. Cleveland Clinic Florida*, 65 So. 3d 22, 30 (Fla. 2d DCA 2011) (collecting cases) ("Subsequent cases [to *Faro*] have steadfastly emphasized that the withdrawing attorney forfeits all rights to compensation unless the attorney can show that the client's conduct made the withdrawal necessary."); *Carbonic Consultants, Inc. v. Herzfeld & Rubin, Inc*., 699 So. 2d 321, 323 n.1 (Fla. 3d DCA 1997) (collecting cases) (applying *Faro* and stating "justifiable cause has been found where conduct on the part of the client results in a breakdown in the attorney-client relationship, or demands the attorney's performance of an illegal or unprofessional act.").[7]

---

[7] Inexplicably, the Omni Plaintiffs have falsely stated that it was CMST that wished to renegotiate the allocation of responsibility for costs under the legal representation agreements,   They assert, again falsely, that CMST deemed it "unacceptable" that "the outside law firms could potentially have unlimited responsibility to fund litigation costs."

**B.**     **CMST HAS A VALID CHARGING LIEN AGAINST THE REMAINING SETTLEMENT PROCEEDS**

Charging liens have been recognized under Florida law for over 150 years (s*ee, e.g., Randall v. Archer*, 5 Fla. 438 (1854)) and "[f]ederal courts have always recognized and enforced these liens." *Chancey v. Bauer et al.*, 97 F.2d 293 (5th Cir. 1938).  Charging liens provide equitable rights which ensure that attorneys are paid for the services rendered in securing a judgment or recovery in the suits to which they contribute.  *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So.2d 1383, 1384 (1983).

The Supreme Court of Florida has identified four requirements that must be established to impose a charging lien:

1) An contract between the attorney and the client;

2) An express or implied understanding that payment is contingent upon recovery or will be paid from any recovery;

3) An attempt to avoid payment of fees or a dispute as to the amount owed; and

4) Timely notice of a request for a lien.

*See In re Washington*, 242 F.3d 1320, 1323 (11th Cir. 2001) (citing *Sinclair*, 428 So.2d at 1385).

The first three elements are not credibly in dispute here, as (1) CMST provided legal services pursuant to the representation agreements signed by each Plaintiff and an Associating Attorney Agreement between CMST and Plaintiffs' counsel Morgan & Morgan, and the representation agreements specifically provided that if CMST terminated the  agreements with cause, it would be entitled to its reasonable attorneys' fees and costs, (2) those agreements were contingency fee agreements providing for the payment of attorneys' fees from a recovery, and

_____

(Omni Pls' Response and Incorporated Memo. of Law in Opp. to Mot. to Intervene [D.I. 382] at ¶7.)  This argument is wholly belied by the plain language of the representation agreements, which clearly required Plaintiffs to pay litigation costs.

(3) a dispute has clearly arisen as to CMST's entitlement to those fees.   (*See* Dominguez Decl. ¶¶ 3-13, Exhibits 1-9.)

The fourth element, timeliness, is also met here.  As explained by the Supreme Court of Florida, an attorney is "obligated to notify his clients in some way before the close of the original proceeding that he intended to pursue the charging lien."  *Daniel Mones, P.A.*, 486 So. 2d at 561. The legal services CMST provided to Plaintiffs in this action were governed by the Legal Representation Agreement originally entered into between Morgan & Morgan, P.A., Dr. Craig Deligdish, and Omni Healthcare Inc. when each of the Plaintiffs signed an Addendum to Legal Representation Agreement that associated CMST as additional counsel and specifically incorporated the terms of the Legal Representation Agreement by reference.  (Dominguez Decl., Exhibits 2-9.)

Section C of the Legal Representation Agreement states:

> **Lien for Fees and Costs**. To secure the payment of the Firm's fees and costs incurred under the terms of this Agreement, you <u>hereby confer and grant a charging lien</u> on your claim and any recovery in this case, and a retaining lien on the files and records, as permitted by law, which will be deemed <u>in force and perfected from the date of this Agreement</u>.

(*See* Dominguez Decl., Exhibit 1) (emphases added.)  Thus, Plaintiffs have been on notice of CMST's charging lien since the inception of the legal representation.  *Cf. Schur v. Americare Transtech, Inc.*, 786 So. 2d 46, 48 (Fla. 3d DCA 2001) (finding no timely notice where attorney did not pursue the charging lien before entry of final judgment, and the contingency fee agreement did not give notice that a charging lien would result in the event of non-payment).

In addition, shortly after withdrawing from this case, CMST advised both Dr. Deligdish and Plaintiffs' counsel that CMST had a charging lien in this case and that it intended to enforce it if necessary.  (*See* Dominguez Decl., ¶ 26, Exhibit 14.)  Such notice is sufficient to preserve the right to later enforce a charging lien. *See, e.g., Baker & Hostetler, LLP v. Swearingen*, 998

So. 2d 1158, 1161 (Fla. 5th DCA 2008) ("[A]n attorney attempting to enforce a charging lien must **notify his or her client <u>in some way</u>** before the conclusion of the original proceeding that he or she intends to pursue the charging lien.") (emphases added); *In re MacNeal*, 393 B.R. 805, 811-12 (Bankr. S.D. Fla. 2008) (noting that former clients in fee dispute had "actual notice" of the assertion of a charging lien by former counsel and noting that the court's determination regarding the sufficiency of notice "should be colored by considerations of contextual equity"); *State Contracting & Eng'g Corp.*, 2004 WL 5500705, at *15 (holding that attorney's notice was sufficient because, although he did not immediately file his charging lien at the time of settlement, he had previously placed client on notice that he intended to seek the Court's intervention to obtain his disputed fee).

The timeliness of CMST's notice of charging lien is further demonstrated by *Minks v. Polaris Industries, Inc*., Case No. 6:05-cv-1894-Orl-31KRS, 2011 WL 3320507 (M.D. Fla. Aug. 2, 2011). There, the plaintiff argued that his former counsel's notice of charging lien was untimely because it was filed months after entry of final judgment. The court nonetheless found the notice timely, explaining that the timeliness requirement is really an issue of jurisdiction— if notice is not given before entry of final judgment or an order dismissing the case, the trial court loses jurisdiction to enforce the charging lien in the original action. However, because the court had specifically retained jurisdiction over the issue of fees, the post-judgment notice was timely. *Id*. at *2; s*ee also Baker & Hostetler*, 998 So. 2d at 1161–62 (holding that attorneys could pursue charging lien despite giving notice after final judgment where the court had specifically reserved its jurisdiction to determine attorneys' fees).

Here, CMST gave notice of its charging lien multiple times long before entry of judgment. But even if CMST had not, like the courts in *Minks* and *Baker & Hostetler*, the Court here specifically reserved jurisdiction to allocate the settlement proceeds among Plaintiffs and

attorneys' fees among counsel.  [D.I. 350] at ¶¶ 3, 9.  Moreover, while these post-judgment proceedings were ongoing, CMST moved to intervene to protect its fee interest, attaching yet another notice of charging lien.  The Court ruled that CMST's intervention was timely.  [D.I. 398].  Thus, even if CMST's legal representation agreement had not granted it a charging lien from the outset, and even if, shortly after it withdrew, CMST had not stated its intent to enforce its charging lien, CMST's notice of a charging lien at the time of its intervention motion would be timely.

Even after the four elements required to impose a charging lien are met, a charging lien cannot be enforced until the occurrence of the contingency—*i.e.*, a recovery by the plaintiff; otherwise, there is nothing to which the charging lien can attach.  *See Rosenberg v. Levin*, 409 So.2d 1016, 1021 (Fla.1982) (holding that an action upon a charging lien in a contingency fee arrangement must be deferred until "the successful occurrence of the contingency.").

There remains $611,088.75 in settlement proceeds in an escrow account subject to the Court's control, from which the Court can satisfy CMST's charging lien.  The legal representation agreements provide that, in the event CMST withdraws with cause, CMST will be entitled to payment of reasonable attorneys' fees and costs.  (Dominguez Decl., Exhibit 1.)  As discussed in the Declaration of Paul Amundsen (attached hereto as Attachment C), $611,088.75 is well below the reasonable value of CMST's services provided in this case.  (Amundsen Decl. ¶23-29.)  Therefore, CMST respectfully requests that $611,088.75 be awarded to it as reasonable compensation for the valuable services it rendered to its clients.

## C.   CMST IS ENTITLED UNDER QUANTUM MERUIT TO RECOVER THE REASONABLE VALUE OF SERVICES IT RENDERED TO PLAINTIFFS

Under Florida law, a contingency fee lawyer discharged without cause prior to the occurrence of the contingency or conclusion of the matter is entitled to recover the reasonable

value of the services rendered, limited by the maximum allowable fee under the attorney's contract with the plaintiff.  *Rosenberg*, 409 So.2d at 1021.[8]  This same rule also applies in situations where an attorney withdraws with cause as a result of the client's conduct.  *See Faro v. Romani*, 641 So.2d 69, 71 (Fla.1994) (holding that contingency fee attorney still eligible for fee when he withdraws because the client's conduct made continued performance either legally impossible or would cause the attorney to violate an ethical rule); *Santini*, 65 So. 3d at 30 (collecting cases) ("Subsequent cases [to *Faro*] have steadfastly emphasized that the withdrawing attorney forfeits all rights to compensation unless the attorney can show that the client's conduct made the withdrawal necessary."); *Carbonic Consultants*, 699 So. 2d at 323 n.1 (collecting cases) (applying *Faro* and stating "justifiable cause has been found where conduct on the part of the client results in a breakdown in the attorney-client relationship, or demands the attorney's performance of an illegal or unprofessional act."); *Smith & Burnetti, P.A.*, 677 So. 2d at 404 (applying *Faro* and awarding fee based upon quantum meruit where law firm withdrew due to conflict under FL State Bar Rule 4-1.7).

In determining the reasonable value of the attorney's services, the court must consider the "totality of the circumstances surrounding the professional relationship between the attorney and client." *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368 (Fla. 1995).  The discharged lawyer's hours are only a part of that analysis.  *Id*. at 369.  The factors set forth in Rule 4-1.5 of the Rules Regulating the Florida Bar, although not an exhaustive list, may be considered:

(1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[8] Generally, quantum meruit damages may not be awarded where the rights of the parties are described in a written contract. *Corn v. Greco*, 694 So. 2d 833, 834 (Fla. 2d DCA 1997).  However, courts routinely apply quantum meruit to attorney fee disputes—even where there was a written representation agreement. *See, e.g., Rosenberg v. Levin*, 409 So. 2d 1016, 1021 (Fla. 1982) (discussed herein).

(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee, or rate of fee, customarily charged in the locality for the legal services of a comparable or similar nature;

(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(8) Whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

*Id*. at 368-69 (quoting FL ST BAR Rule 4-1.5).

In addition, "the fee agreement itself,…actions taken by the attorney or client before or after discharge, and the benefit actually conferred on the client may be relevant to that determination [of a reasonable fee]."  *Id*. at 369.

The services provided by CMST in this antitrust action include analyzing and briefing novel and complex issues—as demonstrated by the voluminous briefing on the motions to dismiss—which required special skill and expertise to perform.  This work laid the groundwork upon which Plaintiffs' case was built and contributed significantly to the exceptional result that was achieved.  As discussed in the Amundsen Declaration, the reasonable value of CMST's services provided in this case, based on the totality of the circumstances, is well above the

$611,088.75 sought here.  (Amundsen Decl. ¶¶ 23-29.)    Therefore, CMST respectfully requests

that $611,088.75 be awarded to it as payment of its attorneys' fees in this case.[9]

### D.    CMST IS ENTITLED TO RECOVER FOR MORGAN & MORGAN'S BREACH OF  THE ASSOCIATING ATTORNEY AGREEMENT

CMST's fee request is also supported by Morgan & Morgan's obligation to share fees

with CMST under the Associating Attorney Agreement.

In order to prevail on a breach of contract claim under Florida law, a plaintiff must prove:

(1) the existence of a contract; (2) breach of the contract; and (3) damages resulting from that

breach.  *Certain Underwriters at Lloyd's of London, UK Subscribing to Policy No.*

*B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.*, Case No. 616CV258ORL37GJK,

2017 WL 3034069, at *4 (M.D. Fla. July 18, 2017) (citing *Rollins, Inc. v. Butland*, 951 So.2d

860, 876 (Fla. 2d DCA 2006)).  "In addition, in order to maintain an action for breach of

contract, a claimant must also prove performance of its obligations under the contract or a legal

excuse for its nonperformance."  *Rollins*, 951 So. 2d at 876.

CMST, Morgan & Morgan, and Epstein Becker entered into an Associating Attorney

Agreement which provided in relevant part: "Morgan, Cohen, and Kopit [of Epstein Becker]

shall each be entitled to receive a percentage (%) of the total attorney's fees recovered, which

percentage shall be calculated as the percentage that each firm's man hours constitutes of the

total man hours contributed by all three (3) firms."  (Dominguez Decl., Exhibit 10 at ¶B(1).)

Furthermore, the Legal Representation Agreement states: "The Firm [Morgan & Morgan] shall

---

[9] The fact that Plaintiffs—who subsequently hired substitute counsel (Whatley Kallas) and entered into another legal representation agreement with them—have already paid fees to its other attorneys is of no consequence.  When a client enters into a second contingent fee contract with its new counsel, the client is nonetheless responsible for paying both counsel.  *See, e.g., Adams v. Fisher*, 390 So.2d 1248, 1251 (Fla. 1st DCA 1980) ("A client may end up paying fees in excess of the original contingent fee, once to the discharged attorney in quantum meruit and again to the substituted attorney on a new contingent fee contract.").

be responsible to pay attorneys' fees to any associated attorney from the final disbursement of proceeds to the Firm." (*Id*., Exhibit 1 at ¶E.)

Morgan & Morgan did not pay CMST anything from the recovery in this case as required by the Associating Attorney Agreement and, as a result, CMST has been damaged.  CMST is entitled to attorneys' fees under this agreement, further supporting CMST's right to receive the $611,088.75 in undistributed settlement funds.

**E.   WHATLEY KALLAS HAS BEEN UNJUSTLY ENRICHED BY CMST'S PROVISION OF LEGAL SERVICES**

Whatley Kallas has been unjustly enriched by CMST's provision of legal services in this matter.  Whatley Kallas benefited from CMST's services which contributed to the successful resolution of this case and the resulting substantial attorneys' fees received by Whatley Kallas. CMST, therefore, is entitled to a portion of Whatley Kallas's fee recovery under an unjust enrichment theory, further supporting CMST's claim for the $611,088.75 that remain in escrow.

The elements of a claim for unjust enrichment under Florida law are: (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  *Fito v. Attorneys' Title Ins. Fund, Inc*., 83 So.3d 755, 758 (Fla. 3d DCA 2011).

Here, CMST performed extensive legal services to prosecute this case as lead counsel for 21 months, including formulating the antitrust theory underpinning Plaintiffs' successful claims against Defendants, taking the primary lead in drafting Plaintiffs' complaints, and fully briefing and arguing Plaintiffs' responses to Defendants' multiple motions to dismiss.  (Dominguez Decl. at ¶18-20, Exhibits 11-12.)  Whatley Kallas, in entering the case as substitute counsel and continuing to prosecute the matter, accepted and retained the benefit of CMST's legal services.

For all of the reasons stated herein, it would be inequitable for Whatley Kallas to retain these benefits without paying CMST the reasonable value thereof. *See, e.g., Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 85 So. 3d 1112, 1114–15 (Fla. 4th DCA 2012) (upholding award of attorneys' fees under theory of unjust enrichment where the trial court found that the requesting attorneys were partially responsible for the result achieved).

**WHEREFORE**, CMST prays this Court to enter an order awarding CMST attorneys' fees in the amount of $611,088.75.


DATED:  September 18, 2017     Respectfully submitted,


      /s/ Manuel J. Dominguez
     Manuel J. Dominguez (FL Bar 54798)
     Cohen Milstein Sellers & Toll PLLC
     2925 PGA Boulevard
     Suite 200
     Palm Beach Gardens, FL 33410
     Telephone: (561) 515-1431
     Facsimile:  (212) 838-7745
     jdominguez@cohenmilstein.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide notification to all counsel of record.

/s/ Manuel J. Dominguez
Manuel J. Dominguez

**19**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

OMNI HEALTHCARE INC., et al.,

*Plaintiffs,*

vs.

HEALTH FIRST, INC., et al.,

*Defendants.*

CASE NO.
6:13-CV-01509-Orl-37DAB

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Magistrate Judge Daniel Irick's order of September 13, 2017, and in compliance with Local Rule 3.01(g) and Section II.A. of the Case Management and Scheduling Order for this action, the parties, Cohen Milstein Sellers & Toll ("CMST"), through Manuel J. Dominguez, and the Omni Plaintiffs, through Howard Miles and Deborah Winegard of Whatley Kallas, met on September 15, 2017, via telephone conference, to discuss if the parties could agree in whole or in part to CMST's entitlement to fees, the hours being presented by CMST to support its fee request, and the hourly rates used by CMST to calculate its lodestar. The parties discussed each of the three issues separately, but were unable to come to an agreement, complete or partial, on any of the issues.

I also responded to the following questions from Mr. Miles and gave the following answers:

- Mr. Miles asked whether CMST is moving the Court for attorney fees greater than the $611,088.75 being held by the Court. CMST, as set forth in its motion for fees, is respectfully requesting that the Court award it the remaining $611,088.75 in settlement proceeds.

- Mr. Miles asked if our motion was seeking to bring a complaint or cause of action against Morgan and Morgan or Whatley Kallas.  In the motion, CMST is not bringing a cause of action or complaint against Morgan and Morgan or Whatley Kallas.  The motion sets forth the factual and legal grounds that support the award of $611,088.75 to CMST as just compensation for its efforts in this matter.


DATED:  September 18, 2017                  /s/ Manuel J. Dominguez
                                            Manuel J. Dominguez