UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OMNI HEALTHCARE, INC., *et al.*,

        Plaintiffs,

v.                               **CASE NO. 6:13-cv-1509-Orl-37DCI**

HEALTH FIRST, INC., *et al.*,

        Defendants.

_____/

## PLAINTIFFS', OMNI HEALTHCARE, INC., AND CRAIG DELIGDISH, RESPONSE IN OPPOSITION TO INTERVENOR'S RENEWED MOTION FOR ATTORNEY FEES

Plaintiffs Omni Healthcare, Inc. ("Omni"), and Craig Deligdish, M.D. ("Dr. Deligdish") (collectively the "Omni plaintiffs"), respond in opposition to the intervenor's, Cohen Milstein Sellers & Toll PLLC ("CMST"), renewed motion for attorney fees. The Court should deny the request for attorney fees. If it does not, the Court should significantly reduce the amount to be awarded.

### I.    PROCEDURAL AND FACTUAL BACKGROUND

On December 29, 2012, Omni and Dr. Deligdish entered into a Legal Representation Agreement (the "Legal Representation Agreement") with Morgan & Morgan, P.A. ("M&M"). In July 2013, the Omni plaintiffs executed an addendum to the Legal Representation Agreement. Under the addendum, the plaintiffs agreed to M&M associating other law firms in this case. The associating law firms were Epstein Becker & Green ("EBG") and CMST, and M&M was to pay the attorney fees of the associating law firms.[1] The addendum was the first written agreement

---

[1] This agreement was executed by other plaintiffs in addition to the Omni plaintiffs.

that included CMST.[2] On September 27, 2013, the plaintiffs' filed the complaint in this case.[3] (Doc. 1). On October 25, 2013, M&M, CMST, and EBG executed an Associating Attorney Agreement ("AAA"). (Exhibit "A"). The AAA provided a mechanism for determining the fee split between the firms.

In early 2014, after executing the AAA, Mr. Kopit of EBG was diagnosed with a terminal illness. (Exhibit "B," Oliver Aff. at ¶ 8). EBG asked to be relieved of responsibility for plaintiffs' representation. *Id.* M&M and CMST began discussions with the law firm of Thompson & Knight, LLP ("Thompson & Knight"), to substitute in as counsel for EBG. (Oliver Aff. at ¶ 9).

In July 2014, Mr. Byrd left M&M. Mr. Oliver from M&M substituted in his place. (Oliver Aff. at ¶ 9). When Mr. Oliver contacted Mr. Dominguez to discuss moving forward, Mr. Dominguez conveyed that CMST deemed the Legal Representation Agreement unacceptable and was unwilling to move forward unless the parties renegotiated. (Oliver Aff. at ¶¶ 10; Exhibit "C," Kancilia Aff. at ¶ 3). It was CMST, not the Omni plaintiffs, who wished to renegotiate the terms of the Legal Representation Agreement. *Id.* In late July 2014, the Omni plaintiffs retained John Kancilia of Gray Robinson to represent them in the negotiation of CMST's proposed cooperation agreement and modifications to the Legal Representation Agreement. (Kancilia Aff. ¶ at 2; Exhibit "D," Deligdish Aff. at ¶ 11).

On August 21, 2014, Mr. Dominguez, Mr. Katz of Thompson & Knight, and Mr. Oliver met with Dr. Deligdish and Mr. Kancilia to negotiate the terms of the proposed cooperation agreement. (Oliver Aff. at ¶ 13; Kancilia Aff. ¶ at 5; Deligdish Aff. at ¶ 12). Under the terms of the proposed agreement, CMST would assume primary responsibility for many aspects of the

---

[2] CMST had been recording time since January. Thus, its statement about accepting the representation "on the basis that Plaintiffs would pay litigation costs" (Doc. 402, p.9) is inaccurate.

[3] Tucker Byrd of M&M was designated as lead counsel in the original scheduling order of June 5, 2014.

Omni litigation and portions of the Legal Representation Agreement would be modified, including the calculation of attorney fees and allocation and advancement of costs between the firms and the Omni plaintiffs. (Oliver Aff. at ¶ 11; Deligdish Aff. ¶ 12). CMST, however, was unwilling to assume primary responsibility as lead counsel and refused to accept certain liability for costs. (Deligdish Aff. at ¶ 13; Oliver Aff. at ¶ 15). In contrast, Omni and Dr. Deligdish wanted the costs for the Omni plaintiffs capped and a commitment that they would be represented on any counterclaims and on appeal. *Id.* Ultimately, the negotiations resulted in an impasse. *Id.*

After the August 21, 2014 meeting, Mr. Dominquez advised Mr. Oliver that CMST was voluntarily withdrawing from representing the plaintiffs. Dr. Deligdish and Omni understood that CMST was voluntarily withdrawing due to the disagreement related to the proposed cooperation agreement and attempted modifications to the Legal Representation Agreement. (Deligdish Aff. at ¶ 15).

On November 4, 2014, CMST moved to voluntarily withdraw. The Court granted CMST's motion on November 11, 2014.  (Doc. 78). At the time that CMST withdrew, there were pending motions to compel and for sanctions directed against the Omni plaintiffs for failing to comply with discovery including failure to produce documents identified in their initial disclosures.[4] (Docs. 69 & 74). In granting CMST's motion to withdraw, the Court was aware of the pending motions because it ordered Mr. Oliver to respond within fourteen days. (Doc. 78). CMST's withdrawal left the Omni plaintiffs scrambling to obtain substitute counsel with healthcare antitrust expertise. (Oliver Aff. at ¶¶ 18–19; Deligdish Aff. at ¶ 17). At or about the time of CMST's withdrawal, Mr. Oliver had a conversation with Mr. Dominguez, during which

---

[4] CMST left these issues pending when it voluntarily withdrew from the case.

3

Mr. Dominguez conceded that CMST simply determined to pursue other cases where it did not face uncertain exposure to costs. (Oliver Aff. at ¶¶ 21–22). Ultimately, on December 15, 2014, the Omni plaintiffs retained Whatley Kallas LLP ("WK") to represent it in this case. (Exhibit "E," Whatley Aff. at ¶ 2; Deligdish Aff. at ¶ 18). Section 3(d) of the Retention Agreement included a representation that all prior retention agreements had been terminated and that no counsel other than M&M was entitled to any fees. (Whatley Aff. at ¶ 6). The Omni plaintiffs, who were represented by Mr. Kancilia in negotiating the WK Retention Agreement, understood that, based on CMST's voluntary withdrawal, prior retention agreements were terminated and that no fees were due to previous counsel other than M&M and Whatley Kallas going forward. (Deligdish Aff. at ¶ 20).

On February 2, 2015, Omni sent CMST a check for its costs incurred in prosecuting the lawsuit, with language stating "Full and Final Payment." (Deligdish Aff. at ¶ 21; Exhibit "F," a copy of the check). CMST cashed the check. *Id.* In February 2015, the Omni plaintiffs and M&M entered into a Modified Agreement ("the Modified Agreement") that states in part:

> The Cohen Milstein firm attempted to renegotiate the Legal Representation Agreement with Omni, and the Additional Clients, and when such efforts on the part of Cohen Milstein proved unsuccessful, Cohen Milstein elected to withdraw . . . the Firm, Omni and the Additional Clients also attempted unsuccessfully to negotiate a tri-partite fee agreement between the Firm, Cohen Milstein and Thompson & Knight.

(Deligdish Aff. at ¶ 22; Exhibit "G," Modified Agreement).

On August 16, 2016, the trial began, but the parties reached a settlement shortly after opening statements. (Doc. 326). The same day, the Court dismissed the case with prejudice subject to a 60-Day Order granting the right of any party to move to enter a final judgment or, on good cause shown, to reopen the case. (Doc. 329). The Court granted motions to extend this deadline multiple times so the parties could finalize the terms of the settlement agreement.

(Docs. 332, 334, 339). In addition, the Court ordered the defendants to transfer the settlement proceeds to an escrow agent and retained jurisdiction to determine the allocation of the settlement proceeds among the plaintiffs. (Doc. 350).

## II.   ARGUMENT

CMST's motion for attorney fees should be denied because CMST is not entitled to fees after it voluntarily withdrew as the Omni plaintiffs' counsel early in this litigation. Even if the Court determines that CMST's withdrawal was necessary, CMST failed to give proper, timely notice to perfect its charging lien. Moreover, CMST's proposed attorney fees lack support in any of the parties' agreements related to the distribution of attorney fees. Awarding CMST its proposed attorney fees would result in an unfair and disproportionate distribution.[5] Last, CMST's proposed attorney fees, including the rates and number of hours,[6] are unreasonable.

### A.   CMST Forfeited the Right to Attorney Fees

A party's rights and obligations to a contingency fee contract are governed by state law. *Lewis v. Haskell Slaughter Young & Rediker, LLC*, 582 F. App'x 810, 813 (11th Cir. 2014). Charging liens are a state law issue, and as such, courts apply state law to determine the applicability of a charging lien. *In re Summit View, LLC*, No. 8:11-cv-724-T-24, 2011 WL 3268367, at *4 (M.D. Fla. Aug. 1, 2011), *aff'd*, 472 F. App'x. 900 (11th Cir. 2012).

### 1.   CMST Voluntarily Withdrew as Counsel in this Case

CMST voluntarily withdrew from representing the Omni plaintiffs following CMST's commencement of unsuccessful negotiations with the Omni plaintiffs and other attorneys

---

[5] After CMST withdrew, the Omni plaintiffs' counsel litigated this matter through extensive discovery, multiple discovery-related hearings, summary judgment, *Daubert* motions and a *Daubert* hearing, mediations, and settlement negotiations.

[6] Many of the hours that CMST claims it worked occurred well before CMST was retained under the addendum to the Legal Representation Agreement.

regarding the Legal Representation Agreement. The Florida Supreme Court, in *Faro v. Romani*, held that when representation is based on contingency and an attorney voluntarily withdraws prior to the occurrence of the contingency, the attorney "forfeits all rights to compensation." 641 So. 2d 69, 71 (Fla. 1994); *see also Santini, M.D. v. Cleveland Clinic Fla.*, 65 So. 3d 22, 29 (Fla. 4th DCA 2011); *Depena v. Cruz*, 884 So. 2d 1062, 1063 (Fla. 2d DCA 2004); *Calley v. Woodruff*, 751 So. 2d 599, 601 (Fla. 2d DCA 1998); *Carbonic Consultants, Inc. v. Herzfeld & Rubin, Inc.*, 699 So. 2d 321, 323 (Fla. 3d DCA 1997) ("an attorney retained on a contingent basis who voluntarily withdraws will be held to have forfeited any right to compensation."). There are two limited exceptions to this rule: (1) "if the client's conduct makes the attorney's continued performance of the contract either legally impossible" or (2) "would cause the attorney to violate an ethical rule of the Rules Regulating the Florida Bar." *Faro*, 641 So. 2d at 71; *see also Calley*, 751 So. 2d at 601 ("the two enumerated exceptions in *Faro* are the *only circumstances* that justify a finding that the attorney was entitled to the fee") (emphasis added). In addition, the Eleventh Circuit recently indicated that entitlement to compensation after withdrawal requires "egregious, intentional client conduct that frustrates the ability of a lawyer to complete representation." *Lewis*, 582 F. App'x at 822 (applying Alabama state law but citing the Florida Supreme Court's decision in *Faro v. Romani* in support of this proposition).

In this case, CMST has not argued, nor can it argue, that representing the Omni plaintiffs became legally impossible. In addition, CMST cannot demonstrate that the Omni plaintiffs' conduct was egregious. Therefore, CMST must show that continued representation of the Omni plaintiffs would have caused it to violate Florida's Rules of Professional Conduct. *Santini*, 65 So. 3d at 30.

In its motion, CMST fails to mention Rule 4-1.16, of the Rules Regulating the Florida Bar, which is the provision outlining the grounds for an attorney's withdrawal. Rule 4-1.16 divides the grounds as mandatory (subsection (a)) and permissive (subsection (b)). Here, Rule 4-1.16(a)(1) is the only relevant provision that might justify mandatory withdrawal. Rule 4-1.16(a)(1), however, requires a showing that continued representation of a client would result in a violation of the Rules of Professional Conduct or law. As the *Faro* decision and Rule 4-1.16(a) make clear, CMST is only entitled to compensation for a contingent fee if it demonstrates that its withdrawal was necessary because of such a violation. *Carbonic Consultants, Inc.*, 699 So. 2d at 323. CMST has failed to make this showing.

Importantly, CMST admitted on the record that its withdrawal was optional and permissive. (Doc. 76). When Mr. Dominguez filed his motion for leave to withdraw, he based his withdrawal on the permissive grounds of Rule 4-1.16(b)(3), not the mandatory withdrawal provision, and specifically cited the comments to the rule entitled "Optional Withdrawal." *Id.* The comment CMST cited states that "[a] lawyer *may* withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs . . . ." *Id.* (emphasis added). The only rule CMST cites is Rule 4-1.7 regarding conflicts of interest, but CMST fails to demonstrate how the negotiations regarding costs amounted to a conflict of interest under that rule. Nothing in the rule, or any authority cited by CMST, suggests that a conflict of interest arises in the context of a cost dispute, especially one that was self-created.

In addition, CMST failed to meet its burden to show that withdrawal was necessary because of the Omni plaintiffs' conduct. *Carbonic Consultants, Inc.*, 699 So. 2d at 323. While CMST conclusively states that the Omni plaintiffs refused to pay the litigation costs, the only

support it cites is Mr. Dominguez's self-serving declaration. There is no evidence that the Omni plaintiffs refused to pay anything or otherwise breached the terms of the Legal Representation Agreement. Further, CMST's motion contradicts Mr. Dominguez's declaration by admitting that it voluntarily entered into negotiations with the Omni plaintiffs and other attorneys regarding the cost allocations, but the parties were unable to reach an agreement. (Doc. 402 at 9).

CMST fails to mention that it deemed the Legal Representation Agreement unacceptable and sought to modify it. (Oliver Aff. at ¶¶ 10–11, 14; Kancilia Aff. at ¶¶ 3, 6; Deligdish Aff. at ¶¶ 10, 13). During the negotiations, CMST refused to assume a lead counsel position, to accept any liability for costs, and to agree to represent the Omni plaintiffs on appeal. *Id.* CMST also refused to agree to cap the Omni plaintiffs' liability for costs. *Id.* In contrast to CMST's assertion, the evidence shows that CMST's withdrawal was the result of a mutual desire to amend the Legal Representation Agreement for a number of reasons and a voluntary choice to withdraw after failed negotiations. As a result of CMST's voluntary withdrawal, CMST has forfeited all rights to compensation.

## 2.  CMST Failed to Perfect the Charging Lien

In order to perfect a charging lien, an attorney must provide timely notice. Timely notice requires that the attorney "*file* a notice of lien or otherwise pursue the lien in the *original action.*" *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986) (emphasis added); *see also Summit View*, 2011 WL 3268367, at *4; *Levine v. Gonzalez*, 901 So. 2d 969, 974 (Fla. 4th DCA 2005); *Heller v. Held*, 817 So. 2d 1023, 1026 (Fla. 4th DCA 2002).

The charging lien must be filed *before* the case goes to final judgment or is dismissed. *Citizens & Peoples Nat. Bank of Pensacola v. Futch*, 650 So. 2d 1008, 1015 (Fla. 1st DCA 1994). CMST filed its motion to intervene, with a notice of charging lien attached, on March 31,

2017, seven months after the Court entered an Order of Dismissal with Prejudice. (Docs. 329, 381). CMST's failure to give timely notice requires a finding that the charging lien was not perfected.

As an excuse for its unreasonable delay, CMST submits that it was only aware of its *"potential interest"* in this action and did not have an accrued interest until after the case settled. If CMST's position is accepted, all attorneys under a contingency fee agreement would be permitted to wait until after the matter is resolved to assert a charging lien.[7] This is simply not the law. CMST's inadequate excuse for its delay demonstrates a fundamental misunderstanding of Florida law.[8]

Rather, it is well established that timely notice must be provided by filing a notice of the charging lien before the close of the original proceeding through *"settlement, entry of final judgment or dismissal of the action." Flynn v. Sarasota Cty. Pub. Hosp. Bd.*, 169 F. Supp. 2d 1363, 1369 (M.D. Fla. 2001) (finding the notice of charging lien was untimely when filed over two months after the mediated settlement) (emphasis added); *see also Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A. v. Chernak*, 991 So. 2d 875, 879 (Fla. 4th DCA 2008) ("Perfection of a charging lien typically occurs before the outcome of the case is known."); *Baker & Hostetler, LLP v. Swearingen*, 998 So. 2d 1158, 1161–62 (Fla. 5th DCA 2008) ("unless jurisdiction is properly reserved by the trial court, a notice of an attorney's charging lien must generally be filed before the lawsuit has been reduced to judgment or dismissed pursuant to settlement in order to be timely"); *Levine*, 901 So. 2d at 973–74 ("because the charging lien itself

---

[7] As set forth above, attorneys that withdraw under a contingency fee agreement generally forfeit their right to recover fees, except in rare circumstances.

[8] This excuse is also contradicted by the attorney fees that CMST claims it is due. CMST attempts to claim fees under a lodestar analysis, not under a contingency fee agreement. Thus, the fee that CMST claims it is due did not depend on the recovery in this case but on the value of the work it claims it performed in the case.

was not filed prior to the notice of voluntary dismissal, it was not perfected because '[i]n order to be 'timely,' notice of an attorney's charging lien must be filed 'before the lawsuit has been reduced to judgment or dismissed pursuant to settlement.'"); *Brody v. Broward Cty. Sheriff's Office*, 137 So. 3d 610, 611 (Fla. 4th DCA 2014) ("A trial court lacks jurisdiction to entertain a charging lien where it has not been timely perfected; that is, filed before the trial court lost jurisdiction through settlement, dismissal or final judgment."); *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1269 (S.D. Fla. 2012) ("In order to be 'timely,' notice of an attorney's charging lien must be filed 'before the lawsuit has been reduced to judgment or dismissed pursuant to settlement.'"); *Heller*, 817 So. 2d at 1025–26 (same).

In *Bruton*, the attorney did not file any "notice" of his charging lien until after he was notified by the plaintiff's counsel that the case had been resolved. 916 F. Supp. 2d at 1269. Applying Florida law, the *Bruton* Court found that "such a notice does not timely perfect a right to impose an equitable charging lien. To do so, [the attorney] had to serve his notice shortly after his discharge from the case or, at the very least, before the resolution of the case." *Id.*

Similar to *Bruton*, CMST did not file any notice of the charging lien until after the parties reached a settlement and the Court dismissed the case with prejudice. More specifically, CMST waited twenty-nine months after its withdrawal and seven months after the parties settled to file the instant motion. In CMST's own words, it was "aware of its *potential* interest in this action at the time of its withdrawal as counsel" in November of 2014. CMST should have filed a notice of charging lien at that time, or at any time prior to the resolution of this case. Under Florida law, CMST's delay has resulted in untimely notice and it cannot perfect its right to impose a charging lien in this action. *Bruton*, 916 F. Supp. 2d at 1264; *Flynn*, 169 F. Supp. 2d at 1369; *Baker &*

10

*Hostetler, LLP*, 998 So. 2d at 1161–62; *Levine*, 901 So. 2d at 973–74; *Richman*, 991 So. 2d at 879; *Brody*, 137 So. 3d at 611.

Numerous courts have refused to impose a charging lien where the notice was given subsequent to judgment. *See Flynn*, 169 F. Supp. 2d at 1369 (charging lien untimely when filed three months after judgment and two months after the mediated settlement of all remaining issues and claims); *see also Schur v. Americare Transtech, Inc.,* 786 So.2d 46, 48 (Fla. 3d DCA 2001) (charging lien untimely where counsel failed to pursue before entry of final judgment); *Galitz v. Edghill,* 113 B.R. 783, 785 (Bankr. S.D. Fla. 1990) (charging lien untimely where notice filed eighteen days after entry of final judgment and court did not retain jurisdiction to impose charging lien).

As set forth above, CMST did not, and cannot, perfect its rights to a charging lien because the case has long been settled, and the Court dismissed the case seven months prior to CMST's notice. (Docs. 329, 381). Thus, the Court should deny CMST's motion.

### 3.  CMST is Not Entitled to Quantum Meruit Recovery

"Under the 'modified quantum meruit' rule adopted by the Florida Supreme Court, an attorney employed under a contingency contract who is discharged *without cause* before the contingency has occurred can recover only the value of his services rendered prior to discharge, *limited by the maximum contract fee.*" *Rosenthal, Levy & Simon, P.A. v. Scott*, 17 So. 3d 872, 874 (Fla. 1st DCA 2009) (emphasis added). As a result of CMST's voluntary withdrawal, it forfeited all rights to attorney fees, including under quantum meruit. *Faro*, 641 So. 2d at 71. Yet even if the Court finds otherwise, the attorney fees that CMST claims entitlement to go above and beyond the limits of the AAA, as is explained in the next section. Furthermore, CMST relies solely on its lodestar analysis, which is not proper for calculating a quantum meruit award.

Rather, in determining an award under quantum meruit, an equitable remedy, the Court considers the totality of the circumstances and requires that the award be fair to both the lawyer *and client*. *Santini*, 65 So. 3d at 33. As a result, the conventional lodestar approach focusing on time reasonably spent and a reasonable hourly rate are factors to be considered but are not determinative.

The Court must take into account the totality of circumstances and award the *actual value* of services rendered to the Omni plaintiffs.[9] *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 3d 366, 369 (Fla. 1995). In doing this, the Court considers all relevant factors. *Morgan & Morgan, P.A. v. Guardianship of McKean*, 60 So. 3d 575, 578 (Fla. 2d DCA 2011). Here, CMST withdrew while the case was still in its infancy and without responding to outstanding discovery requests. The Omni plaintiffs had to scramble to find new counsel that could respond to the discovery before sanctions were entered against them. (Docs. 69 & 74). WK was forced to rapidly scan documents and retain fifty contract attorneys to respond to discovery at a cost of $302,051.[10] CMST did not provide $611,088.75, or anywhere close to $611,088.75, worth of value to the Omni plaintiffs in this case.

## B.  CMST's Proposed Attorney Fees Are Inconsistent with the Agreement

Even if the Court concludes that CMST was discharged without cause or entitled to quantum meruit recovery, its claimed attorney fees lack support in the AAA and under Florida law. CMST contends, in part, that it is entitled to attorney fees from the Omni plaintiffs because

---

[9] "It is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." *In re Summit View, LLC*, No. 8:11-cv-724-T-24, 2011 WL 3268367, at *4 (M.D. Fla. Aug. 1, 2011), *aff'd*, 472 F. App'x. 900 (11th Cir. 2012). CMST's work did not produce a positive judgment or settlement; instead, it was the work of M&M and WK that provided such a result.

[10] The additional help was needed because, at the February 5, 2015 hearing on the motions to compel, Judge Baker informed counsel for WK that, although it was not involved when the discovery issues arose, WK took the case as it found it and ordered production of all documents by March 9, 2015. (Doc. 110). Judge Baker denied the motion for attorney fees but advised WK that it was "on probation."

of M&M's alleged breach of the AAA. (Doc. 402 at 16). CMST fails to explain how the Omni plaintiffs would be responsible for a breach of contract claim between the associating law firms when they were not a party to that agreement. In addition, M&M, after entering into a superseding legal representation agreement, continued to represent the Omni plaintiffs throughout the entire litigation. CMST offers no basis for its argument that M&M was required to act in accordance with an earlier legal representation agreement that CMST breached by voluntarily withdrawing from the case. And if CMST's rights arise from the AAA, its fee request should be based on the AAA's formula. Yet CMST has offered no evidence of the fee it would be entitled to under the AAA from the Omni plaintiffs.

Moreover, CMST's proposed attorney fee award is arbitrary and fails to comply with the terms of the AAA and Florida law. Florida law requires that CMST's fees comply with, or at least not exceed, the fee allocation outlined in the AAA. *See In re Willhelm*, 298 B.R. 464, 468 (Bankr. M.D. Fla. 2003) ("The quantum meruit recovery cannot exceed the maximum contingent fee due under the agreement."); *Santini*, 65 So. 3d at 32 (stating that it is unacceptable for an attorney discharged without cause to assert a charging lien in excess of what he bargained for); *See Rosenberg v. Levin*, 409 so 2d 1016, 1021 (Fla. 1982) (holding that "for the attorney to receive a fee greater than he bargained for under the terms of his contract . . . [is] unacceptable").

First, the AAA provides that the joint representation, including hours expended, commenced on April 1, 2013. (AAA Exhibit "A" § A(3)). CMST, however, records many hours from January through July 2013, when it been retained by the plaintiffs.[11] (Doc 402-1 at 77, CMST's Exhibit 11). Second, CMST completely ignores the language in the AAA governing the allocation of fees among the associating law firms. The AAA provides that each firm is entitled

---

[11] Or are inconsistent with the agreed dates of service in the AAA.

to *a shared percentage* of the total attorney fees recovered by the Omni plaintiffs. (AAA Exhibit "A," § B(1)). If CMST believes that it was entitled to a percentage of the fees recovered, it should have raised the issue with M&M in a timely and proper manner. Or it should have provided the fee calculation pursuant to the AAA in its motion.

Instead, CMST waited until it learned of the settlement in this case on the news, and then requested an arbitrary amount of attorney fees — a disproportionately large amount when compared to M&M's fee for serving as counsel for the entire case — without consideration of the actual fees recovered by M&M or CMST's percentage of the "total man hours contributed." As a result, the Court should deny CMST's motion for attorney fees because it requests attorney fees far in excess of what it bargained for.

## C. CMST's Proposed Attorney Fees are Unreasonable

It is important to remember the tasks for which CMST seeks $611,088.75[12] – drafting a complaint that would survive dismissal. In large measure, CMST failed. It claims it took nine months to draft the initial complaint. That should have been enough to get it right. But CMST did not. Shortly thereafter, and before serving any defendants, CMST filed an amended complaint.

CMST failed to get the amended complaint right. The Court *sua sponte* dismissed the amended complaint, labeling it a "shotgun pleading." So CMST drafted a second amended complaint. That too was dismissed, albeit on motions to dismiss. It wasn't until the fourth try that

---

[12] That CMST elected not to seek fees for other work it claims to have performed is irrelevant to the determination of whether the $611,088.75 is a reasonable fee. *See, e.g., Indyne, Inc. v. Abacus Tech. Corp.*, 2013 WL 11312471 *15 (M.D. Fla. Dec. 6, 2013)(noting applicant claimed fewer hours than those billed, but further reducing total hours by 25%). CMST merely concluded, as have the Omni plaintiffs, that CMST's other activities added no value.

CMST was able to draft a complaint that survived. So, to get to a pleading that was legally-cognizable, CMST claims to have racked up fees of more than *$600,000.* That is astonishing.[13]

Given the page limitations associated with this response and the Court's familiarity with the calculation of a reasonable fee for attorney services set forth in *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) and related authority, Omni instead highlights the deficiencies in the CMST fee submission. In summary, they include (1) hourly rates well above the prevailing market, (2) a lack of billing judgment, and (3) excessive billing. (Exhibit "H," Hill Aff.).

**Hourly Rates:** The hourly rates sought by CMST are unreasonable. CMST provides the Declaration of Paul H. Amundsen in support of its fee claim. Mr. Amundsen asserts the hourly rates are reasonable based, in part, on his "experience in Florida, including South and Central Florida." (Doc. 402-3 at 11). That statement shows a fundamental misunderstanding of the Florida legal market. As the Court knows, the Central and South Florida legal markets are very different. Attorneys in Miami, Fort Lauderdale, and West Palm Beach charge and receive considerably higher rates. Even Tampa supports higher rates than Orlando. The hourly rate in the community is perhaps the most critical factor in this analysis, yet CMST virtually ignores it. *See, e.g.*, *Martin v. Univ. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990).

To the extent Mr. Amundsen speaks to a specific hourly rate, he only mentions a "blended hourly rate of approximately $302.50." But that statement is misleading. He divides the $611,088 by the ***total number*** of hours recorded (2020), not the hours relating to the fees sought. The Summary Report shows CMST seeks $611,088.75 for 1,243.1 hours. That amounts to an average rate of approximately *$491.58* per hour. (Hill Aff., p. 15).

---

[13] This amount should leave the Court "with a strong and unrefuted sense that the time . . . claimed is simply too large." *Corwin v. Walt Disney World Co.*, No. 6:02-cv-1377-Orl-19KRS, 2008 WL 754697, at *26 (M.D. Fla. Mar. 18, 2008).

The specific hourly rates CMST seeks to recover – rates that Mr. Amundsen ignores – range from $245.00 to $765.00 per hour. Neither the Summary Report nor the time detail attached to Mr. Amundsen's Declaration identifies the seniority or status (i.e., partner, associate, paralegal, law clerk) of any of the timekeepers. Thus, the reader is left to speculate about each timekeeper's relative level of experience. Without that information, the Court cannot conclude whether the hourly rate of a timekeeper is appropriate in relation to other CMST timekeepers.

Additionally, and more importantly, the CMST submission makes it difficult to compare the timekeepers' rates to their equivalent professionals in the prevailing market. This is an important omission, as CMST has no attorneys resident in Central Florida. It appears that one lawyer, Mr. Dominguez, practices in Florida. The others are presumably from CMST's New York or Washington, D.C. offices. That the CMST timekeepers hale from distant, more expensive markets is evident from the extraordinary hourly rates they seek for work performed in 2013 and 2014. Mr. Dominguez, whose rates range from $620.00–$675.00, and Mr. Ruan,[14] whose rates range between $480.00 and $500.00, recorded the vast majority of the total hours.[15] Those hourly rates far exceed the rates awarded by this Court for sophisticated litigation. (Hill Aff., pp. 12-16); *see also Backjoy Orthotics, LLC v. Forvic Int'l Inc.,* No. 6:14-cv-249-Orl-41TBS, 2017 WL 3037497 *5–7 (M.D. Fla., June 12, 2017) (hourly rates for intellectual property cases); *Indyne, Inc. v. Abacus Tech. Corp.*, No. 6:11-cv-137-Orl-22DAB, 2013 WL 11312471 *20 (M.D. Fla. Dec. 6, 2013), *adopted as modified Indyne, Inc. v. Abacus Tech. Corp.*, 2014 WL 1400658 (M.D. Fla. Feb. 25, 2014).

---

[14] According to time entries by Hiba Hafiz on 3/3/14 and 3/4/14, Mr. Ruan may well have been an associate at CMST.

[15] As noted elsewhere, many of those hours were spent on research and writing that should have been handled by a junior attorney.

Lack of Billing Judgment:  A significant number of the CMST time entries indicate a lack of billing judgment. Overall, the method of the fee submission (carving out complaint and motion to dismiss time without identifying the time entry or task) makes it very difficult to tell if CMST seeks to recover for a particular time entry, or part of a time entry, given the lack of specificity in the Summary Report. Additionally, many of the entries show a lack of billing discipline.

For example, although CMST fails to identify the specific time entries supporting its claim for attorney fees, a cursory review reveals multiple instances of block billing, particularly by Mr. Ruan. Examples can be found at entries by Mr. Ruan for the following dates:  3/28/13, 4/4/13, 4/29/13, 6/19/13, 8/23/13, 10/10/13, 10/25/13, 11/19/13, 3/7/14, 3/12/14, 3/19/14, 5/1/14, 5/21/14, and 7/29/14.

Other examples of poor billing judgment exist. Between July 11 and July 25, 2014, CMST timekeeper Joshua Ripley recorded approximately fifty-six hours, including 14.25 hours to "review[] complaint and motion to dismiss for Omni antitrust case." He spent another forty hours or so researching and writing a memorandum on the "recoverability of expert fees under FDUPTA [sic] for Omni antitrust case." Every time entry is identical, and CMST has failed to explain why this timekeeper was reviewing a complaint he did not draft, or why they now seek to recover for research unrelated to the complaint.

CMST also fails to explain why it used twelve timekeepers on this matter, particularly in light of the fact that two other law firms, M&M and EBG, were also working on the complaint. This method of staffing inevitably led to wasted time and duplication of efforts. For example, beginning February 27, 2014, more than a year after CMST began recording time, Hiba Hafiz

started billing on the matter. CMST's fee application is silent about the necessity to bring in another timekeeper who was unfamiliar with the case.

CMST apparently seeks to recover for clerical tasks. For example, Mr. Twigg billed .5 hours to "look into address" for CMST's clients. On January 18, 2013, Mr. Twigg charged $61.25 for "add[ing] files to Filesite." On August 5, 2014, Mr. Twigg charged another $62.50 for entering attorney time.

Mr. Dominquez and Mr. Ruan billed for travel to and from Orlando and Melbourne on multiple occasions, including a trip on April 30, 2014. On July 29, 2014, Mr. Ruan billed for following tasks: "Prepare for travel to Florida; call airlines, rental car agency, hotel, etc. to try and [sic] cancel reservations without penalty. . . ."

The time entries show staffing was "top heavy" with the more expensive lawyers handling tasks better suited for less expensive attorneys. Mr. Dominguez and Mr. Ruan combined to bill almost 1,100 of the 1,243 hours for which CMST seeks fees. By contrast, the less expensive timekeepers (and, again, the reader has no idea of their position or experience) billed only ninety-seven hours. And the detailed entry contains many instances of office conferences between attorneys with vague descriptions such as "status."

Accordingly, the Court should reduce the number of hours submitted by CMST as indicated in Mr. Hill's Affidavit percent to account for its lack of billing judgment. *See, e.g., Lil' Joe Wein Music, Inc. v. Jackson*, No. 1:07-cv-1205-LJM-JMS, 2008 WL 268817, *13 (S.D. Fla. July 1, 2008); *Indyne*, 2013 WL 11312471 at *20 (reducing one firm's time by 25% and another's by 10%).

Excessive Billing:   Mr. Amundsen suggests that a "significant portion" of Mr. Dominguez's and Mr. Ruan's practice was "devoted to prosecuting this one case." The Summary

Report, though, shows Mr. Dominguez is seeking to recover for 160 hours, or one solid month of work. Mr. Ruan, on the other hand, recorded nearly 1,000 hours. That amount of time on pleading issues should cause even the most gullible observer to raise an eyebrow. And much of Mr. Ruan's time was spent on tasks more properly handled by a junior (or less expensive) attorney.

Beginning on February 18, 2014, Mr. Ruan spent 18.75 hours reviewing the motions to dismiss. Starting March 9, 2014,[16] Mr. Ruan billed 13.5, 10.0, 8.75, 14.5, 13.75, and 18.25 hours over consecutive days on the response to the motions to dismiss. Between March 17th and 20th, 2014, Mr. Ruan recorded an additional fifty-six hours on the response.[17] Outside of preparing for a trial, those sorts of hours are remarkable. In total, Mr. Ruan recorded 380 hours in connection with writing the response to the motions to dismiss.

An impetus for excessive billing might have resulted from the formula for splitting attorney fees spelled out in the AAA. According to that agreement, the three firms were to record hours worked at various agreed hourly rates to determine the numerator and denominator for setting each firm's percentage of a fee award. Because no hourly-rate client existed, and because each firm was rewarded more if they billed more, there was no reason not to bill as much as possible. In all events, the fees CMST seeks are unreasonable under the circumstances. (Hill Aff., p. 22).

WHEREFORE, the Omni plaintiffs respectfully request that this Court enter an Order denying CMST's Renewed Motion for Attorneys' Fees and for such further relief as the Court

---

[16] March 9th was a Sunday. On Saturday March 8th, Mr. Ruan billed 6.5 hours.

[17] The detailed billing records also contain two identical entries for Mr. Ruan on May 1, 2014 and two on May 7, 2014. Thus, the Court should also deduct seventeen hours at a rate determined reasonable by the Court from any award.

deems is warranted, or in the alternative, the Omni plaintiffs request that the Court reduce the fee

award to $240,263.50.

Dated: October 16, 2017.

*Respectfully submitted,*

*/s/ Michael D. Crosbie*
MICHAEL D. CROSBIE, ESQ.
Florida Bar No. 72575
SHUTTS & BOWEN LLP
300 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Telephone: 407-835-6796
Facsimile: 407-849-7275
Email: mcrosbie@shutts.com
*Attorney for Omni Healthcare Inc.,*
*and Craig Deligdish*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Michael D. Crosbie*
Michael D. Crosbie, Esq.

ORLDOCS 15674287 5

20