# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**OMNI HEALTHCARE INC.,
INTERVENTIONAL SPINE
INSTITUTE OF FLORIDA, CRAIG
DELIGDISH, C. HAMILTON BOONE,
PA, BRIAN DOWELL, RICHARD
GAYLES, STAN GOLOVAC, LANCE
GRENEVICKI, ALEKSANDER
KOMAR, SCOTT SEMINER,
INSTITUTE OF FACIAL SURGERY
INC., THE PAIN INSTITUTE INC. and
PHYSICIAN ASSISTANT SERVICES
OF FLORIDA, LLC,**

          **Plaintiffs,**

**v.**                                                            **Case No:  6:13-cv-1509-Orl-37DCI**

**HEALTH FIRST, INC., HOLMES
REGIONAL MEDICAL CENTER, INC.,
HEALTH FIRST PHYSICIANS, INC.,
HEALTH FIRST HEALTH PLANS,
INC., MICHAEL D. MEANS and
JERRY SENNE,**

          **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration after an evidentiary hearing on the

following motion:

| | |
|---|---|
| **MOTION:** | **INTERVENOR COHEN MILSTEIN SELLERS & TOLL PLLC'S RENEWED MOTION FOR ATTORNEY FEES (Doc. 402)** |
| **FILED:** | **September 18, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

I. **Introduction**

The issue before the Court represents the latest, and perhaps final, chapter in this contentious antitrust case.  At the beginning of this case, Plaintiffs were represented by attorneys from several law firms, including Cohen Milstein Sellers & Toll, PPLC (CMST).  CMST withdrew from the case nearly two years before the case settled.  The Court subsequently granted CMST leave to intervene so it could demonstrate that it is entitled to recover attorney fees for the work its counsel performed in the case.  While CMST's arguments purportedly entitling it to attorney fees in this case have shifted during the course of its intervention, at base CMST argues that it is entitled to collect attorney fees because its counsel withdrew from the case with cause due to Plaintiffs' anticipatory breach of the representation agreement.  According to CMST, Plaintiffs' anticipatory breach: 1) made it legally impossible for CMST to perform its responsibilities under the representation agreement; and 2) would have, if CMST continued representing Plaintiffs, caused CMST to violate Rule 4-1.7(a)(2) of the Rules Regulating the Florida Bar.  In opposition to CMST's fee request, Plaintiffs Dr. Craig Deligdish and Omni Healthcare, Inc. (collectively, the Omni Plaintiffs) argue that Plaintiffs' conduct did not give CMST cause to withdraw, and, thus, pursuant to the decision in *Faro v. Romani*, 641 So.2d 69 (Fla. 1994), CMST is not entitled to recover attorney fees.  The credible evidence demonstrates that Plaintiffs' conduct did not give CMST cause to withdraw from the case, but instead demonstrates that CMST voluntarily withdrew based primarily on an unsubstantiated belief that Plaintiffs would not abide by their agreement to pay 100% of the costs of the litigation.  Thus, the undersigned finds that, pursuant to *Faro*, CMST is not entitled to recover attorney fees for the work its counsel performed in this case.

## II.    **Background**

Plaintiffs instituted this antitrust action in September 2013, at which time they were represented by attorney Tucker H. Byrd from the law firm Morgan & Morgan, P.A. (Morgan & Morgan), attorneys Manuel J. Dominguez and Matthew W. Ruan from CMST, and attorney William G. Kopit from the law firm Epstein Becker & Green, PC (EBG).  Docs. 1 at 60; 10; 15.

Messrs. Dominguez and Ruan moved to withdraw from representing Plaintiff in November 2014, and Mr. Kopit moved to withdraw in February 2015.  Docs. 76; 107.  Those motions were granted, and Plaintiff secured substitute counsel from the law firm Whatley Kallas, LLP.  Docs. 78; 89; 108.

The case proceeded to trial in August 2016, and, on the second day of trial, the parties settled the case.  Docs. 325; 326.

CMST learned of the settlement shortly after it occurred and contacted Plaintiffs' counsel demanding payment of its attorney fees for the work it performed in the case.  Doc. 381-3 at 6-8.  CMST offered to accept a total of $611,088.75 – a fraction of its claimed lodestar – in satisfaction of its claim for attorney fees.  *Id*. at 6.  Plaintiffs and their counsel rejected the offer, arguing that CMST was not entitled to collect any attorney fees.  *Id*. at 10-11.  Plaintiffs, nevertheless, withheld from distribution the amount sought by CMST: $611,088.75.  Doc. 378-2 at 4.

In light of the rejection of CMST's demand for attorney fees, CMST moved to intervene in this case to assert a charging lien against the settlement proceeds.  Doc. 381.  The Omni Plaintiffs opposed the request.  Doc. 382.  The undersigned entered a report recommending that CMST's motion be granted to the extent that it "be permitted to intervene in this case as a matter of right to assert its charging lien," and that the motion be denied in all other respects.  Doc. 397 at 18.  The

Court adopted the report and granted CMST's motion to intervene to the extent recommended in the report.  Doc. 398 at 14.

CMST filed a Motion for Attorney Fees (the Motion), arguing that it is entitled to recover the amount withheld from distribution – $611,088.75 – for the work its counsel performed in this case.  Doc. 402.  Specifically, CMST claims that it is entitled to recover that amount through its charging lien, as well as through alternate theories of recovery, including quantum meruit, breach of contract, and unjust enrichment.  *Id*. at 10-18.  The Omni Plaintiffs filed a response in opposition to the Motion.  Doc. 406.  CMST filed an authorized reply.  Doc. 409.  The undersigned held an evidentiary hearing on the Motion.  *See* Docs. 410; 411; 417.

### III.   **The Evidentiary Hearing**

At the evidentiary hearing, CMST, which proceeded first, presented the testimony of Mr. Byrd of Morgan & Morgan (at the times relevant to this case), William Katz of Thompson & Knight, LLP (Thompson & Knight), and Messrs. Dominguez and Ruan of CMST.  Through that testimony, CMST also admitted a number of exhibits.  *See* Doc. 418.  The Omni Plaintiffs presented the testimony of David Oliver of Morgan & Morgan (at the times relevant to this case), John Kancilia of Gray Robinson, P.A., and Dr. Craig Deligdish.  The Omni Plaintiffs admitted a number of exhibits as well.  *See* Doc. 419.  The following relevant evidence – much of which is uncontroverted – was presented during the evidentiary hearing:

In late 2012, prior to the initiation of this case, Dr. Deligdish and other Plaintiffs began negotiating the terms of a representation agreement with Mr. Byrd, then of Morgan & Morgan.  The negotiations touched upon various issues, including costs, which Mr. Byrd initially estimated to be between $250,000.00 and $500,000.00.

On January 4, 2013, Plaintiffs and Morgan & Morgan entered into a contingency fee representation agreement (the Agreement), which contained the following provision concerning payment of costs:

> **You agree to pay all costs the Firm incurs in your representation** including, but not limited to, court filing fees, service fees, deposition fees, copying expenses, postage, long distance telephone calls, expert witness fees, investigative charges, consulting fees, travel expenses, computer research services, electronic database charges, and any other expense.  The Firm will obtain prior client approval before incurring any costs that exceed $1000 per each charge.  The Firm will periodically bill you for costs.  Any unpaid costs shall accrue interest at the rate of 6.0% per annum on the outstanding balance.  These costs and accrued interest will be deducted from your portion of the recovery in the case (the amount remaining after subtracting the attorneys' fee owed under this Agreement) before final disbursement of proceeds to you.  You also agree to pay $50,000 as a cost deposit to the Firm to be applied against the above cost items, and such other deposits as the Firm deems reasonably necessary.

Doc. 418-1 at 2-3 (emphasis added).  The Agreement also contained the following provision concerning withdrawal of counsel:

> At any time, upon written notice, the Firm, with or without cause, may terminate the representation under this Agreement.  If the Firm terminates this Agreement with cause, as defined hereafter, the Firm shall be entitled to payment of reasonable attorneys' fees and costs incurred as set forth below.  "Cause" means your refusal to cooperate with us, your refusal to follow our advice on a material matter, conduct on your part which would make our continuing representation unlawful, unethical, or impracticable; or the occurrence of any fact or circumstances which would make our continuing representation unlawful, unethical, or impracticable.

*Id*. at 3.  The Agreement, as a final matter, provided that it shall be "governed by, construed, and enforced in accordance with the laws of the State of Florida."  *Id*. at 4.

Following the execution of the Agreement, Plaintiffs, with Mr. Byrd's assistance, sought to retain additional counsel with antitrust litigation experience.  Plaintiffs eventually retained Mr. Kopit from EBG and Messrs. Dominguez and Ruan from CMST.

In July 2013, prior to the case being filed, Plaintiffs and Morgan & Morgan entered into an addendum to the Agreement (the Addendum), in which Plaintiffs agreed to be jointly represented

by Morgan & Morgan, EBG, and CMST.  Doc. 418-2 at 1.  The Addendum contained the following

provision concerning payment of costs, which is largely identical to the provision contained in the

Agreement:

> **You agree to pay all costs the Firms incur in your representation** including, but
> not limited to, court filing fees, service fees, deposition fees, copying expenses,
> postage, long distance telephone calls, expert witness fees, investigative charges,
> consulting fees, travel expenses, computer research services, electronic database
> charges, and any other expense.  The Firms will obtain prior client approval before
> incurring any costs that exceed $1000 per each charge.  The Firms will periodically
> bill you for costs.  Any unpaid costs shall accrue interest at the rate of 6.0% per
> annum on the outstanding balance.  Any unpaid costs and accrued interest will be
> deducted from your portion of the recovery in the case (the amount remaining after
> subtracting the attorneys' fee owed under this Agreement) before final
> disbursement of proceeds to you.  To the extent reasonably practicable, shared costs
> among clients shall be allocated among those jointly represented clients on a pro
> rata basis based upon the amount of each clients' claim as reasonably estimated as
> a percentage of the total amount of all the clients' claims.  For example, if your
> claim is for $1 Million, and total amount of all claims is $100 million, then your
> pro rata share of shared costs would be One Percent (1%).  Otherwise, costs
> incurred for the benefit of one party shall be assessed to that party alone.

*Id*. at 1-2 (emphasis added).  The Addendum did not address the provision concerning withdrawal

of counsel, and, thus, pursuant to the terms of the Addendum the withdrawal provision contained

in the Agreement remained in effect.  *Id*. at 2.[1]

Plaintiffs filed this case in September 2013, and it seemingly proceeded without issue until

Mr. Kopit fell ill sometime in early 2014.  *See* Doc. 418-4 at 1-2.  Mr. Kopit's illness necessitated

his and EBG's withdrawal.[2]  In light of that impending withdrawal, Plaintiffs and their remaining

counsel sought additional counsel to take the place of Mr. Kopit and EBG.

---

[1] Morgan & Morgan, EBG, and CMST executed an "Associating Attorney Agreement" in October 2013, in which they agreed how an award of fees would be divided amongst them in the event Plaintiffs prevailed.  Doc. 418-2 at 43-45.  This agreement bears little, if any, significance to the issue before the Court and, thus, there is no need to discuss the agreement further.

[2] The timing of Mr. Kopit and EBG's motion to withdraw from the case (Doc. 107) appears to be inconsequential, as the uncontroverted evidence establishes that Plaintiffs and their counsel –

In May 2014, Dr. Deligdish and Mr. Dominguez contacted attorney Mr. Katz from Thompson & Knight to determine whether Thompson & Knight would be interested in representing Plaintiffs alongside Morgan & Morgan and CMST.  Mr. Katz expressed interest in representing Plaintiffs but insisted that Thompson & Knight would agree to represent Plaintiffs only if the representation agreement involving Thompson & Knight contained provisions addressing the defense of counterclaims, representation on appeal, and the monetary value of non-monetary relief.  These demands ultimately led to negotiations between Plaintiffs, who retained Mr. Kancilia to negotiate on their behalf, and the law firms – Morgan & Morgan, CMST, and Thompson & Knight (collectively, the Law Firms) – about the creation and execution of a new representation agreement.  However, during this time, the Agreement and Addendum (collectively, the Representation Agreements) remained in full force and effect.

In June 2014, Plaintiffs and the Law Firms began exchanging proposed representation agreements.  The proposed agreements contained the provisions sought by Thompson & Knight as well as an increase of the contingency fee from 30% to 33% in the event the case was resolved in Plaintiffs' favor prior to the commencement of trial.  *See* Docs. 418-3 at 4-24; 418-4 at 10-20.

Plaintiffs expressed various concerns during negotiations, including a concern about the rising estimate of the costs, which increased to nearly $3,000,000.00, and for which Plaintiffs bore sole responsibility based on the terms of the Representation Agreements.  These and other issues were addressed in August 2014, during an in-person meeting between Plaintiffs and counsel from each of the Law Firms.

---

particularly Messrs. Dominguez and Ruan – knew that Mr. Kopit would be withdrawing from the case well in advance of the date that he actually filed his motion to withdraw.  *See* Doc. 418-4 at 2.

On August 27, 2014, following that in-person meeting, Plaintiffs sent the Law Firms a proposed representation agreement, in which Plaintiffs proposed limiting their liability to the first $750,000.00 in costs and split the liability to pay all costs in excess of $750,000.00 evenly between Plaintiffs and the Law Firms. Doc. 419-4 at 6. The Law Firms rejected this offer, with Thompson & Knight and Morgan & Morgan unwilling to accept any responsibility for costs.

On September 15, 2014, the Law Firms sent Plaintiffs a proposed representation agreement, in which Plaintiffs would be liable for the first $1,000,000.00 in costs and 80% of all costs in excess of $1,000,000.00, with CMST being liable for the other 20% of costs in excess of $1,000,000.00. Doc. 418-11 at 11-12. Plaintiffs did not immediately respond to this proposal, which caused the Law Firms, particularly CMST and Thompson & Knight, to grow concerned about Plaintiffs' willingness to pay costs and assist counsel in responding to pending discovery and other matters.

That said, at no time did Plaintiffs state that they would fail to honor the obligations under the Representation Agreements to pay all costs, and at no time did Plaintiffs actually fail to honor their obligations under the Representation Agreements. Dr. Deligdish testified credibly and directly that he never stated that he would not pay costs or would not otherwise honor his obligations under the Representation Agreements. In fact, this litigation eventually moved forward without CMST, and Plaintiffs did honor their obligations under the Representation Agreements (which remained in effect as to Morgan & Morgan) and used the assistance of a litigation finance company to do so. At best, according to Messrs. Dominguez and Ruan, Dr. Deligdish, on behalf of Plaintiffs, "indicated" and "made it very clear" in some vague, non-specific ways that Dr. Deligdish was not going to pay costs, and, thus, it was the belief of counsel at CMST that Dr. Deligdish (and Plaintiffs) would not pay costs going forward.

Mr. Dominguez also testified that Plaintiffs had failed to pay invoiced costs, but could not specify the amount or the timing of the invoices that were allegedly in arrears.  Messrs. Dominguez and Ruan further testified that Dr. Deligdish had gone "radio silent" for some period of time in 2014.  Dr. Deligdish testified without contradiction that, in May 2014, his office received a single, $17,000.00 invoice from CMST related to costs.  Dr. Deligdish explained that his office receives hundreds of invoices, and, consequently, he did not become aware of the May 2014 invoice until sometime after CMST withdrew.  Dr. Deligdish paid the May 2014 invoice in full in February 2015.  Doc. 418-19.  There is no evidence that CMST sent any other invoice, sent any letter or email following up on that invoice, or called Plaintiffs in reference to the invoice.  Messrs. Dominguez and Ruan also testified that Plaintiffs failed to cooperate in the discovery process, although no evidence corroborating this claim – such as a letter or email – was produced by CMST, and Dr. Deligdish denied that allegation.

On October 7, 2014, Mr. Katz sent Dr. Deligdish an email stating, in relevant part:

> I have talked to John Dominguez and both he and I are concerned about the continued delay in getting a new engagement agreement signed.  We sent the last draft to John Kancilia on September 15[, 2014] and are still waiting for a response. John and I are of the view that if we don't have a signed agreement by this Friday, October 10, [2014,] we're out.  We can't keep waiting.

Doc. 419-6 at 1.  The parties were unable to reach an agreement by October 10, 2014.  As a result, Thompson & Knight withdrew its interest in joining the case, and, in late October 2014, Messrs. Dominguez and Ruan served Plaintiffs with a notice of their intent to withdraw.

On November 4, 2014, Messrs. Dominguez and Ruan filed a motion to withdraw.  Doc. 76.  Messrs. Dominguez and Ruan sought to withdraw because "Plaintiffs . . . failed to substantially fulfill an obligation to . . . counsel regarding counsel's services and . . . have been given reasonable warning that . . . counsel would withdraw unless that obligation was fulfilled."  *Id.* at ¶ 3.  In the

motion to withdraw, counsel did not specifically describe the "obligation" Plaintiffs allegedly failed to satisfy.  *See* Doc. 76.  Instead, Messrs. Dominguez and Ruan claimed that they were permitted to withdraw from the case pursuant to Rule 4-1.16(b)(3) of the Rules Regulating the Florida Bar[3] and, in support, cited to the comment to that rule, which provides that "[a] lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court cost or an agreement limiting the objectives of the representation."  *Id*. at ¶¶ 4-5.  The motion was unopposed and the Court granted the motion on November 12, 2014.  Doc. 78.

## IV.    Discussion

The Court permitted CMST to intervene in this case "to assert its charging lien."  Docs. 397 at 18; 398 at 14.  Thus, the undersigned will first address CMST's request to recover pursuant to its charging lien, and then address its request to recover pursuant to the alternate theories of recovery asserted in the Motion, i.e., quantum meruit, breach of contract, and unjust enrichment.

As a preliminary matter, however, the undersigned must place CMST's shifting legal theory in this matter in context.  In the Motion, CMST relied primarily upon *Faro* in arguing that it is entitled to recover attorney fees.  Doc. 402 at 8-9.  Although CMST also argued that it properly asserted its charging lien, there was no indication in the Motion that CMST's charging lien argument was intended to be an argument that the Agreement was somehow exempt from scrutiny under *Faro*.  Indeed, *Faro* involved a charging lien.  In its reply, CMST somewhat retreated from its reliance on *Faro*, arguing that it was entitled to recover attorney fees pursuant to the withdrawal provision of the Agreement.  Doc. 409 at 1-3.  In that reply, and citing *Faro*, CMST made the

---

[3] The undersigned notes that this is not the same provision of the Rules Regulating the Florida Bar that CMST now relies upon in the Motion.

ambiguous assertion that: "CMST is entitled to recover attorney fees under both the terms of the representation agreements and Florida law." *Id.* at 3.  It was unclear to the undersigned whether CMST was asserting two, alternative theories of recovery or if CMST was asserting that it was entitled to attorney fees because its withdrawal complied both with the terms of the Agreement and with *Faro* – compliance with each being necessary to obtain the requested fees.  On December 29, 2017, in preparation for the evidentiary hearing, the undersigned held a status conference during which CMST seemingly conceded that *Faro* governs this matter.  *See* Doc. 412.  But, by the conclusion of the evidentiary hearing itself, CMST had altered its position, arguing that it was entitled to attorney fees based solely on the terms of the Agreement.  To be sure, CMST also argued that it was entitled to attorney fees under *Faro*, but CMST claimed that its withdrawal need not fall within the exception articulated in *Faro* in order for CMST to obtain a fee – a position supported by no legal authority cited by CMST.  In other words, CMST ultimately argued that it is entitled to attorney fees solely on the basis of the "for cause" withdrawal provision of the Agreement, regardless of whether CMST's actual withdrawal from this case is one that would allow for the collection of attorney fees as set forth in *Faro*.  The undersigned finds that this most recent argument is waived and relief is due to be denied to the extent it is premised on that argument because: 1) it was not raised in the Motion; 2) the Omni Plaintiffs did not have an opportunity to brief that argument; and 3) CMST did not support that argument with a memorandum of law pursuant to Local Rule 3.01(a).

CMST had other shifting arguments.  In the Motion, CMST asserted that Plaintiffs breached the Representation Agreements solely by demonstrating an unwillingness to pay costs. But at the evidentiary hearing, CMST presented evidence and argued that Plaintiffs also breached the Representation Agreements by an unwillingness to assist counsel in responding to pending

discovery and other matters.  Further, at the evidentiary hearing, CMST raised for the first time the concept that Plaintiffs anticipatorily breached – as opposed to breached – the Representation Agreements.  The undersigned finds that these most recent arguments are also waived and relief is due to be denied to the extent it is premised on those arguments because: 1) they were not raised in the Motion; 2) the Omni Plaintiffs did not have an opportunity to brief those argument or prepare to offer evidence as to them; and 3) CMST did not support those arguments with a memorandum of law pursuant to Local Rule 3.01(a).

Nevertheless, in this Report, in an abundance of caution and despite CMST's initial concession in the Motion that *Faro* applies, the undersigned will address CMST's most recent arguments.

## A.  The Charging Lien

CMST argues that the evidence demonstrates that it had cause, as defined under the Agreement, to withdraw from the case because Plaintiffs anticipatorily breached the Representation Agreements by demonstrating an unwillingness to pay costs and an unwillingness to assist counsel in responding to pending discovery and other matters.  CMST argues that this conduct: 1) made it legally impossible for CMST to perform its responsibilities under the Representation Agreements; and 2) would have, if CMST continued representing Plaintiffs, caused CMST to violate Rule 4-1.7(a)(2) of the Rules Regulating the Florida Bar.  Thus, CMST argues that it is entitled to enforce its charging lien and recover its attorney fees.

The Omni Plaintiffs, on the other hand, argue that *Faro* governs whether CMST is entitled to recover attorney fees for the work its counsel performed in this case.  Specifically, the Omni Plaintiffs argue that the evidence demonstrates that Plaintiffs' conduct did not give CMST cause to withdraw.  Further, the Omni Plaintiffs argue that nothing Plaintiffs did made it legally

impossible for CMST to continue performing under the Representation Agreements, or would have caused CMST to violate Rule 4-1.7(a)(2) of the Rules Regulating the Florida Bar.  Thus, the Omni Plaintiffs argue that CMST is not entitled to enforce its charging lien and, thus, not entitled to recover its attorney fees.

The decision in *Faro* governs this matter.[4]  The issue presented in *Faro* was whether "an attorney who voluntarily withdraws in a contingent fee case before the happening of the contingency is entitled to a fee."  *Faro*, 641 So.2d at 70.  There, the Florida Supreme Court considered its prior decision in *The Florida Bar v. Hollander*, 607 So.2d 412 (Fla. 1992), in which it held that "any contingency fee contract which permits the attorney to withdraw from representation without fault on the part of the client or other just reason, and purports to allow the attorney to collect a fee for services already rendered would be unenforceable and unethical."  *Id*. at 71 (quoting *Hollander*, 607 So.2d at 415).  The holding of *Faro* is as follows:

> We hold that when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation. . . .  We further hold, however, that if the client's conduct makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar, that attorney may be entitled to a fee when the contingency of an award occurs.

> The record in this case cannot support a finding that Faro breached the attorney contract or legally caused it to be breached. Nor does it support a finding that his conduct placed Romani in an ethical dilemma. Romani abandoned his right to any compensation when he withdrew from his contingent fee contract, and thus is not entitled to recover a fee.

641 So. 2d at 71.  Thus, in *Faro*, the Florida Supreme Court held that "when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits **all** rights to compensation."  *Id*. (emphasis added).  The Florida Supreme Court carved out

---

[4] There is no dispute that Florida law governs this matter.

a limited exception to this general rule, holding "that [the] attorney may be entitled to a fee when the contingency of an award occurs" "if the client's conduct makes the attorney's continued performance of the contract either [a] legally impossible or [b] would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar." *Id*.

CMST essentially argues that the holdings in *Faro* and *Hollander* do not prohibit an otherwise enforceable and ethical withdrawal provision – which CMST argues exists in the Agreement – from governing counsel's entitlement to recover attorney fees for work counsel performed prior to withdrawing from the case.[5]  CMST, however, cites no authority to support this interpretation of *Faro* and *Hollander*, nor has the undersigned's review of *Faro*'s and *Hollander*'s progeny revealed any decision supporting CMST's argument.  Further, the holding in *Faro* undermines CMST's argument.  Indeed, in *Faro*, the Florida Supreme Court held that an attorney forfeited "all rights" to compensation unless the conditions set forth in the exception to that general rule exist.  The undersigned finds that all means all, and includes any right CMST had under the Agreement to obtain a fee.  Further, the *Faro* decision does not expressly or impliedly state that a contingency fee agreement may provide additional exceptions to or supersede the general rule that an attorney who withdraws from representing a client on his or her own volition prior to the occurrence of the contingency forfeits all rights to compensation, and the undersigned finds that such an interpretation would contravene the holding in *Faro*.  Thus, the undersigned finds that *Faro* governs whether CMST is entitled to recover attorney fees for the work its counsel performed in this case.  *See Aldar Tobacco Grp., LLC v. Am. Cigarette Co., Inc.*, 577 F. App'x 903, 907 (11th

---

[5] As discussed earlier, this argument was initially raised at the evidentiary hearing during CMST's closing argument.

Cir. 2014) ("In Florida, case law governs an attorney's right to recover fees under a contingency agreement when an attorney withdraws.").[6]

Under *Faro*, the threshold issue is whether Plaintiffs' conduct caused CMST to withdraw. *Faro*, 641 So.2d at 71.  CMST argues that Plaintiffs anticipatorily breached the Representation Agreements.[7]  "An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future." *Alvarez v. Rendon*, 953 So.2d 702, 709 (Fla. 5th DCA 2007).  "Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." *Mori v. Matsushita Elec. Corp. of Am.*, 380 So.2d 461, 463 (Fla. 3d DCA 1980).  Here, CMST argues that Plaintiffs' anticipatory breached stems from their: 1) unwillingness to pay costs; and 2) unwillingness to assist counsel in responding to pending discovery and other matters.[8]  CMST argues that this conduct gave it cause to withdraw while maintaining its right to attorney fees if the contingency occurred.  The credible evidence does not support CMST's argument.

### 1. Costs

CMST argues that Plaintiffs anticipatorily breached the Representation Agreements by demonstrating an unwillingness to pay costs.  In support, CMST points to Plaintiffs' concerns about rising cost estimates, their proposals to limit their liability for costs, and their alleged failure

---

[6] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

[7] Although CMST initially asserted that Plaintiffs actually breached the Representation Agreements, the undersigned finds that CMST conceded at the evidentiary hearing that there was no actual breach, and, regardless, the undersigned finds that there was no credible evidence presented that Plaintiffs actually breached the Representation Agreements.

[8] As discussed earlier, the second argument was initially raised at the evidentiary hearing during CMST's closing argument.

to timely pay invoices.  The undersigned, as discussed below, finds that the credible evidence demonstrates that Plaintiffs' statements and actions relating to the payment of costs did not constitute an anticipatory breach of the Representation Agreements.

Plaintiffs' concern about the rise in estimated costs cannot reasonably be interpreted as an anticipatory breach of the Representation Agreements.  There is no dispute that Plaintiffs voiced concern about the rising cost estimates.  That said, at no time did Plaintiffs state that they would fail to honor the obligations under the Representation Agreements to pay all costs, and at no time did Plaintiffs actually fail to honor their obligations under the Representation Agreements.  Dr. Deligdish testified credibly and directly that he never stated that he would not pay costs as required by the Representation Agreements.  In fact, this litigation eventually moved forward without CMST, and Plaintiffs did honor their obligations under the Representation Agreements (which remained in effect as to Morgan & Morgan) and used the assistance of a litigation finance company to pay costs as required by those agreements.  At best, according to Messrs. Dominguez and Ruan, Dr. Deligdish, on behalf of Plaintiffs, expressed concern over the rising costs and then eventually "indicated" and "made it very clear" that he was not going to pay costs.  Thus, it was the belief of counsel at CMST that Dr. Deligdish (and Plaintiffs) would not pay costs going forward.  That belief was unfounded.  Further, after observing the testimony of Messrs. Dominguez and Ruan, the undersigned finds that their testimony was not entirely credible in regards to their conclusory statements that Dr. Deligdish breached or anticipatorily breached the Representation Agreements. Indeed, although their testimony, often via leading questions, contained statements that Dr. Deligdish "indicated" and "made it very clear" that he was not going to pay costs, their testimony was otherwise vague, non-specific, and lacked any actual details that would support those conclusions.

On the other hand, Dr. Deligdish testified credibly that he never stated that he or Plaintiffs would cease paying costs. In addition, Dr. Deligdish testimony is consistent with the testimony of Messrs. Katz, Oliver, and Kancilia; each of whom testified that Plaintiffs never stated that they would stop paying costs. Dr. Deligdish's testimony is also consistent with the documentary evidence presented at the hearing. Specifically, none of the correspondence from Dr. Deligdish or Mr. Kancilia states or even suggest that Plaintiffs would cease paying costs. Further, in an internal memorandum drafted by Mr. Ruan on October 22, 2014, Mr. Ruan stated that Dr. Deligdish confirmed that Plaintiffs were getting "cold feet" about paying costs, but did not mention that Dr. Deligdish stated that Plaintiffs would stop paying costs. Doc. 418-13 at 1. This evidence runs counter to the testimony of Messrs. Dominguez and Ruan, and is consistent with Dr. Deligdish's testimony. Thus, having considered the testimonial and documentary evidence presented at the hearing, the undersigned finds that Plaintiffs – including Dr. Deligdish – did not state, threaten, imply, or otherwise "indicate" that they would cease paying costs.

Having made that finding, the question remains as to whether Plaintiffs' stated concern about the rising cost estimates could reasonably be viewed as an anticipatory breach of the Representation Agreements. The simple answer is no. Plaintiffs were initially informed by counsel that costs would range between $250,000.00 and $500,000.00. This estimate, however, grew exponentially as the case progressed. It is unlikely that any client would simply remain silent in the face of such an increase in costs. Thus, Plaintiffs' concern about the rising cost estimates, unlike CMST's interpretation thereof, was well-founded. Plaintiffs' concern, however, did not equate to a "distinct, unequivocal, and absolute" repudiation of their responsibility to pay costs. Plaintiffs, while concerned, were attempting to address the issue through various means, such as renegotiating the cost provision (Doc. 419-4 at 6), seeking a clearer understanding of the estimated

costs (Doc. 419-6 at 1-2), and seeking litigation financing, which they eventually obtained shortly after CMST's withdrawal.  These actions do not suggest that Plaintiffs were unwilling to pay costs, but, instead, demonstrate their intent to ensure they can cover the increasing costs.  Thus, on this record, the undersigned finds that Plaintiffs' concern about the rising costs did not constitute an anticipatory breach of the Representation Agreements.

Second, Plaintiffs' proposal to limit their liability for costs cannot reasonably be interpreted as an anticipatory breach of the Representation Agreements.  Plaintiffs and the Law Firms agreed to negotiate a new representation agreement in light of Thompson & Knight's request to include several provisions in the Representation Agreements.  The Law Firms sought to include various provisions, including provisions addressing counterclaims, appeals, the monetary value of non-monetary relief, and an increase of the contingency fee in the event the case was resolved in Plaintiffs' favor prior to trial.[9]  In light of Plaintiffs' concern about the rising cost estimates, they proposed to limit their liability for costs.  This proposal was reasonable.  Further, the fact that Plaintiffs' proposal was made while Plaintiffs and the Law Firms were negotiating a new representation agreement militates against a finding that Plaintiffs' proposal demonstrated an intent to breach the Representation Agreements.  Moreover, CMST could have taken solace in the fact that if the negotiations fell through, which they did, Plaintiffs were still liable to pay all costs because the Representation Agreements remained intact.  In spite of this fact, CMST elected to

---

[9] The Representation Agreements set the contingency fee at 30% in the event the case was resolved in Plaintiffs' favor prior to trial.  Doc. 418-1 at 2.  The Law Firms sought to increase that contingency fee to 33% because that was Morgan & Morgan's standard rate at the time the Representation Agreements were executed; the Law Firms allegedly proposed to amend what they viewed as a scrivener's error.  CMST, as a result, attempted to downplay the significance of the proposed change to the contingency fee.  The undersigned, however, is not persuaded, because Plaintiffs negotiated and agreed to a contingency fee of 30% and any increase thereof would invariably reduce Plaintiffs' recovery.

withdraw.  Thus, on this record, the undersigned finds that Plaintiffs' proposal to limit its liability for costs did not constitute an anticipatory breach of the Representation Agreements.

Finally, Plaintiffs' alleged failure to timely pay costs cannot, on this record, reasonably be interpreted as an anticipatory breach of the Representation Agreements.  Mr. Dominguez testified that CMST sent Plaintiffs several invoices for costs and Plaintiffs failed to timely pay those costs.  Mr. Dominguez, however, could not recall any details about the invoices sent to Plaintiffs, including the date and amount of the invoices.  Further, CMST provided no documentary evidence – such as the invoices or communications about the invoices – to support Mr. Dominguez's testimony.  On the other hand, Dr. Deligdish testified without contradiction that, in May 2014, his office received a single, $17,000.00 invoice from CMST related to costs.  Dr. Deligdish explained that his office receives hundreds of invoices, and, consequently, he did not become aware of the May 2014 invoice until sometime after CMST withdrew.  Dr. Deligdish paid the May 2014 invoice in full in February 2015.  Doc. 418-19.  Further, Dr. Deligdish testified that Mr. Dominguez never raised any concerns about Plaintiffs' failure to timely pay any invoices.  The undersigned finds Dr. Deligdish's testimony credible, because he, unlike CMST and Mr. Dominguez, provided detailed testimony that was otherwise uncontroverted by any specific evidence provided by CMST.  Likewise, the undersigned finds Mr. Dominguez's testimony not credible on this issue and not supported by the evidence.

Thus, in light of the foregoing, the undersigned finds that the evidence demonstrates that CMST sent one invoice to Dr. Deligdish in May 2014, which Dr. Deligdish subsequently paid in full following CMST's withdrawal.  There is no credible evidence that CMST told Dr. Deligdish – or any of the other Plaintiffs – that there was an outstanding invoice, that the invoice needed to be paid within a certain amount of time, or that CMST would withdraw if the invoice was not paid.

The undersigned would expect there to be some documentary evidence, perhaps an email, containing some discussion about the invoice at issue, but CMST provided no such evidence.  The lack of such evidence belies CMST's argument that they viewed Dr. Deligdish's alleged failure to timely pay the invoice as a sign that Dr. Deligdish – and the other Plaintiffs – would not pay costs.

Further, the Representation Agreements did not set forth a deadline by which Plaintiffs were required to pay invoiced costs.  The Representation Agreements, instead, envisioned counsel paying for costs, invoicing Plaintiffs, and then Plaintiffs paying those invoices, plus interest that accrues thereon at 6% per annum.  Doc. 418-1 at 2-3.[10]  Thus, the timing of Dr. Deligdish's payment cannot reasonably be viewed as an anticipatory breach of the Representation Agreements, because the timing of said payment did not, in fact, breach any aspect of the Representation Agreements.

## 2.  Litigation Support

CMST argues that Plaintiffs anticipatorily breached the Representation Agreements by demonstrating an unwillingness to assist counsel in responding to discovery and other matters.  Messrs. Katz and Dominguez testified that Plaintiffs failed to provide prompt responses to some of their proposed representation agreements, which caused them to become concerned about Plaintiffs' willingness to assist them in responding to discovery and other matters.  The undersigned finds that, based on the evidence presented, their belief that Plaintiffs were unwilling to assist counsel in the prosecution of the case unfounded.  First, Mr. Dominguez gave conclusory and non-specific testimony on this issue, and failed to provide any details or specific examples of

---

[10] Plaintiffs and counsel could have included a deadline to pay invoiced costs in the Representation Agreements (or even the invoice), but did not do so.  In fact, the proposed representation agreements contained just such a deadline.  *See* Doc. 419-6 at 6 (proposing payment of invoiced costs be made within 30 days of invoice).

Plaintiffs' alleged failures to assist counsel.  Second, CMST provided no documentary evidence – such as communications discussing discovery responses – to support Mr. Dominguez's testimony. The undersigned would expect there to be some documentary evidence, perhaps an email, containing some discussion about the discovery issues and Plaintiffs failure to assist with discovery, but CMST provided no such evidence.  Mr. Dominguez's vague testimony and the lack of documentary evidence supporting his testimony belies CMST's suggestion that Plaintiffs were consistently failing to assist counsel in the prosecution of this case.  Further, the record contains no evidence that CMST threatened to withdraw based on Plaintiffs' perceived unwillingness to assist counsel in responding to discovery and other matters.  The lack of such evidence further belies CMST's belief that Plaintiffs were unwilling to assist counsel in the prosecution of the case. Thus, on this record, the undersigned finds that CMST has failed to demonstrate that Plaintiffs' alleged lack of responsiveness constituted an anticipatory breach of the Representation Agreements.

### 3.  No Cause to Withdraw

In summary, the undersigned finds that Plaintiffs' conduct did not give CMST cause to withdraw.  Specifically, CMST failed to demonstrate that Plaintiffs anticipatorily breached the Representation Agreements.  The evidence, instead, demonstrates that CMST's belief that Plaintiffs were neither going to pay costs nor assist in the prosecution of the case was premature and proved to be unfounded.  Further, the evidence demonstrates that CMST withdrew because the parties failed to enter into a new representation agreement.  Doc. 419-6 at 1.  In light of the foregoing, the undersigned finds that CMST has failed to demonstrate that its withdrawal was necessitated by Plaintiffs' conduct.  Because Plaintiffs did not breach or anticipatorily breach the agreement – and did not refuse to pay costs – CMST was in no danger of violating its ethical

obligations and was legally capable of performing under the Representation Agreements. Therefore, CMST is not entitled to enforce its charging lien and recover its attorney fees. As in *Faro*, "the record in this case cannot support a finding that [Plaintiffs] breached the attorney contract or legally caused it to be breached. Nor does it support a finding that [their] conduct placed [CMST and their counsel] in an ethical dilemma. [CMST and their counsel] abandoned [their] right to any compensation when [they] withdrew from [the] contingent fee contract, and thus [are] not entitled to recover a fee." 641 So. 2d at 71.

### B.  Quantum Meruit, Breach of Contract, and Unjust Enrichment.

CMST also seeks to recover its attorney fees via several alternate theories of recovery, including quantum meruit, breach of contract, and unjust enrichment. Doc. 402 at 13-18. CMST, however, only sought leave to enforce its charging lien in this Court, not to assert alternate theories of recovery, Doc. 381 at 7, and the Court granted CMST leave to intervene for the sole purpose of enforcing its charging lien, Docs. 397 at 18; 398 at 14. Thus, the Court did not permit CMST to intervene to assert any alternate theories of recovery. *See Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1322 (11th Cir. 1983) (noting that Federal Rule of Civil Procedure 24(b) permits a court to condition intervention). Therefore, the undersigned finds that CMST is not permitted to assert any alternate theories of recovery.

Further, even if the Court were to consider these alternate theories of recovery, they are meritless because *Faro* makes clear that if the exceptions detailed therein are not met then an attorney who voluntarily withdraws from representing a client prior to the occurrence of the contingency "forfeits **all** rights to compensation." *Faro*, 641 So.2d at 71 (emphasis added). Therefore, CMST's request to recover pursuant to alternate theories of recovery – quantum meruit, breach of contract, and unjust enrichment – are due to be denied. *See Eakin v. United Tech. Corp.*,

998 F. Supp. 1422, 1429 (S.D. Fla. 1998) (explaining that if counsel withdrew prior to the occurrence of the contingency without consent or justification, he or she would not be entitled to attorney fees "under any theory of compensation") (citing *Faro*, 641 So.2d at 71).

### V.   Conclusion

Accordingly, it is **RECOMMENDED** that the Motion (Doc. 402) be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 28, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy